**RABINOWITZ, LUBETKIN & TULLY, LLC**
293 Eisenhower Parkway, Suite 100
Livingston, NJ 07039
(973) 597-9100
Jay L. Lubetkin, Esq.
*Counsel to Jay L. Lubetkin,*
*Chapter 7 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>CIRCLE 10 RESTAURANT, LLC,<br><br>Debtor. | Case No. 13-14820 (RG)<br><br>Chapter 7<br><br>Honorable Rosemary Gambardella |

**APPLICATION FOR ENTRY OF ORDER**
**APPROVING SALE OF LIQUOR LICENSE**

The Application of Jay L. Lubetkin, Chapter 7 Trustee (the "Trustee") for the bankruptcy estate for Circle 10 Restaurant, LLC (the "Debtor"), by and through his attorneys, Rabinowitz, Lubetkin & Tully, L.L.C., for the entry of an Order approving the sale of that New Jersey Class C retail plenary consumption liquor license bearing license number 0710-33-020-007 to Onyx Equities III, LLC on behalf of an entity to be formed, for $500,000, or such other higher and better offeror free and clear of vendors' charges, violations, restrictions, liens, liquor bills, claims, interests, and encumbrances, such to attach to the proceeds of sale, respectfully shows unto the Court as follows:

1.   On March 8, 2013, the Debtor filed a Voluntary Petition pursuant to the provisions of Chapter 7 of the United States Bankruptcy Code.

2.   On March 11, 2013, Jay L. Lubetkin was appointed Chapter 7 Trustee for the Debtor, and on March 13, 2013, the Trustee filed pleadings seeking entry of an Order authorizing the retention of Rabinowitz, Lubetkin & Tully, L.L.C. as counsel to the Trustee.

3. The Debtor previously operated a Mexican themed restaurant known as "Margarita's" located at 372 West Mount Pleasant Avenue, Livingston, New Jersey.

4. The Debtor stopped operating on or before September 30, 2012, and prior to the commencement of its bankruptcy proceeding, substantially all of its personalty was foreclosed upon by its secured creditor.

5. As a result, the Debtor's primary remaining asset for liquidation for the benefit of creditors is its Class C retail plenary consumption liquor license bearing license number 0710-33-020-007.

6. In connection with his appointment as Chapter 7 Trustee, and recognizing the existence of the liquor license for sale for the benefit of creditors, on March 28, 2013, the Chapter 7 Trustee obtained a Bankruptcy Court authorizing the retention of A. Atkins Appraisal Corp. to appraise the liquor license. Mr. Atkins' appraisal is attached hereto as Exhibit "A," and evidences a forced sale value of the liquor license of $400,000.

7. Also immediately after his appointment as the Chapter 7 Trustee, the Trustee had significant communications with counsel for the Debtor, who advised that prior to the commencement of the bankruptcy proceeding, the Debtor and its landlord, Lim Chew Corp., who in addition to its capacity as landlord, was also was the owner of the liquor license prior to its purchase by the Debtor, discussed the prospect of the landlord's purchase of the liquor license from the Debtor. Such pre-petition discussions did not result in an agreement for purchase, yet Lim Chew's counsel continues to express to the Trustee his client's interest in reacquiring the liquor license.

8. Additionally, shortly after his appointment as Chapter 7 Trustee, the Trustee was contacted by Onyx Equities III, LLC, who either in its own capacity or through an affiliate, is the

owner of the "Towne Center" mixed use retail/residential real estate development in the center of Livingston, New Jersey, expressing its interest in the purchase of the liquor license.

9. Ultimately, the Trustee and Onyx Equities III (the "Purchaser"), LLC negotiated and executed an Agreement to Purchase Alcoholic Beverage License (the "Agreement"), a copy of which is attached hereto as Exhibit "B," which subject to Bankruptcy Court approval, evidences Purchaser's desire to buy the liquor license for $500,000, free and clear of vendors' charges, violations, restrictions, liens, liquor bills, claims, interests, and encumbrances, such to attach to the proceeds of sale.

10. By the within Application, the Trustee respectfully requests Court approval of the Agreement.

11. The Chapter 7 Trustee respectfully submits that consummation of the Agreement for the sale of the Debtor's liquor license is a reasonable and appropriate exercise of the Trustee's business judgment.

12. Firstly, the Trustee shows that the purchase price set forth in the Agreement of $500,000 is greater than the appraised forced sale value of the liquor license according to the Trustee's duly retained appraiser.

13. Secondly, the Trustee shows that neither he nor the Purchaser, has engaged in any conduct which would serve to chill competitive bidding or which otherwise impairs the interests of the bankruptcy estate. In particular, the Trustee shows that he has advised Lim Chu Corp., the Debtor's former landlord and the former owner of the subject liquor license, of the availability of the liquor license for sale, has copied Lim Chu Corp. on the pleadings respecting the bidding procedures and sale noticing procedures, and has invited Lim Chu Corp. to fully participate in the sale hearing. Similarly, the Trustee was contacted by a principal of the Eastman Companies,

3

a significant real estate developer in Livingston, New Jersey, who also expressed an interest in the purchase of the liquor license. Like with Lim Chu Corp., the Trustee has provided notice of the bidding and sale procedures Application to the Eastman Companies, and invites it to also fully participate in the sale hearing.

14. The Trustee further shows that by providing notice of the within sale Application to all creditors and parties in interest of the within bankruptcy estate, the availability of the Debtor's liquor license for purchase will be adequately and appropriately publicized.

15. The Trustee shows that he has no prior relationship with the Purchaser.

16. The Trustee submits that the proposed sale of the Debtor's liquor license to the Purchaser, or such other higher and better offeror who is a qualified bidder under the terms of the Court's Order entered prior to the sale hearing date, satisfies the standards of In re Abbots Dairies of Pennsylvania, Inc., 788 F.2d 143 (3rd Cir. 1986).

17. The Trustee further shows that the Purchaser is a good faith Purchaser pursuant to the provisions of 11 U.S.C. § 363(m), and is entitled to protections set forth therein as a result thereof.

18. Accordingly, the Chapter 7 Trustee respectfully requests entry of the Order submitted herewith approving the sale of the Debtor's liquor license to the Purchaser and for other related relief.

**WHEREFORE,** Jay L. Lubetkin, Chapter 7 Trustee, by and through his proposed counsel, Rabinowitz, Lubetkin & Tully, L.L.C., respectfully requests entry of the Order submitted herewith approving the sale of the Debtor's liquor license to the Purchaser for

$500,000, free and clear of vendors charges, violations, restrictions, liens, liquor bills, claims, interest and encumbrances, such to attach to the proceeds of sale.

                                        **RABINOWITZ, LUBETKIN & TULLY, L.L.C.**
                                        *Attorneys for Chapter 7 Trustee*

                                        By: /s/ Jay L. Lubetkin
                                              JAY L. LUBETKIN

DATED: April 11, 2013

F:\Client_Files\A-M\Circle 10\Sale - Application.doc

5

# EXHIBIT A

# A. ATKINS APPRAISAL CORP.
### 122 Clinton Road
### Fairfield, New Jersey 07004

ALAN ATKINS  
e-mail: atkinsappraisal@aol.com

Tel. 973) 227-1900  
Fax 973) 227-5502

April 8, 2013

Jay L. Lubetkin, Esq.  
Rabinowitz Lubetkin & Tully, LLC  
293 Eisenhower Parkway, Suite 100  
Livingston, NJ 07039

Re: Circle 10 Restaurant, LLC d/b/a Margarita's  
Case No. 13-14820/RG

Dear Mr. Lubetkin:

Pursuant to your request, A. Atkins Appraisal Corporation prepared the following appraisal of the liquor license at Forced Sale Value (Liquidation Value) in reference to the above matter.

Forced Sale Value (Liquidation Value) is defined as the gross value that could be realized at an auction sale of the items appraised. The Forced Sale Value takes into consideration the current market trends and marketability.

The liquor license to be appraised is a Plenary Retail Consumption Liquor License, located at 372 West Mount Pleasant Avenue, New Jersey. License No. 0710-33-020-007.

The following is a current breakdown of the quantity and types of licenses issued by the town of Livingston.

| Qty. | Type |
|------|------|
| 4  | No. 31 Club Licenses |
| 1  | No. 36 Hotel/Motel License |
| 11 | No. 33 Plenary Retail Consumption Licenses |
| 4  | No. 44 Plenary Retail Distribution Licenses |

## A. ATKINS APPRAISAL CORPORATION

Re: Circle 10 Restaurant, LLC d/b/a Margarita's
Page 2

The town of Livingston, which is located in Western Essex County, is approximately 14 square miles with an estimated population of 29,366 (2010 US Census). One of the Plenary Retail Consumption License, which had been a "Pocket License" for approximately 3 years was just sold and had a Person to Person license transfer on March 12, 2013.

Based on this and our other research, it is our opinion that this liquor license has a Total Forced Sale Value of $ 400,000.00 (four hundred thousand dollars). We are prepared to provide any further information pertaining to the development of this appraisal should you require such.

We have not investigated the title to or any liabilities against the assets appraised. A. Atkins Appraisal Corporation, its officers and employees have no interest or contemplated future interest in the property appraised. The fee for this appraisal is not contingent upon the values expressed nor is any guarantee or liability to be assumed or implied.

Very truly yours,
A. ATKINS APPRAISAL CORPORATION

By: _____
ALAN ATKINS - President

AA:sg

# EXHIBIT B

AGREEMENT TO PURCHASE
ALCOHOLIC BEVERAGE LICENSE

THIS AGREEMENT, made on this 8th day of April, 2013, by and between Jay Lubetkin, Esq, Bankruptcy Trustee for Circle 10 Restaurant, LLC., a New Jersey Limited Liability Company, with an address of 293 Eisenhower Parkway, Livingston, NJ 09309 (hereinafter called "SELLER" or "TRANSFEROR") and Onyx Equities III, LLC On Behalf Of An Entity To Be Formed, with an address at 900 Route 9 North | Suite 301, Woodbridge, NJ 07095 (hereinafter called "PURCHASER", "BUYER" or "TRANSFEREE").

WITNESSETH:

WHEREAS, the Seller is the owner of a State of New Jersey Class C Retail Plenary Consumption License bearing License # 0710-33-020-007, issued by the governing body of the Town of Livingston, hereinafter referred to as the "License", which License is currently an asset in a Chapter 7 Bankruptcy proceeding, Case No. 13-14820, and the Seller is desirous of selling the License to Purchaser; and

WHEREAS, the Purchaser is willing to purchase and acquire the License subject to the terms and conditions of this Agreement and the contingencies contained herein.

NOW, THEREFORE, in consideration of the mutual covenants, promises and conditions contained herein and for other good and valuable consideration the parties agree as follows:

1. <u>PURCHASE PRICE</u>: The Seller shall sell to Purchaser and the Purchaser shall buy from Seller the License for the sum of FIVE HUNDRED THOUSAND ($500,000.00) DOLLARS. An earnest money deposit in the amount of ONE HUNDRED THOUSAND ($100,000.00) DOLLARS, to be applied on account of the purchase price, shall be deposited in escrow with Seller's attorney, as Escrow Agent, upon execution of this Agreement by all parties. Failure by Purchaser to deposit the earnest money with Seller in a timely fashion shall result in automatic termination of this Agreement, no notice being required. The Escrow Agent shall place the deposit in a non-interest bearing Trust Account and the deposit shall be applied to the purchase price at the time of closing. The balance of the Purchase Price, FOUR HUNDRED THOUSAND ($400,000.00) DOLLARS, shall be paid at Closing by Certified or Attorney's Trust Check or by wire transfer. If this Agreement is terminated in accordance with or on account of the failure of one or more of the contingencies stated in paragraph 2 or the warranties stated in paragraph 3(a) through (d) hereof, the said earnest money deposit shall be returned to

Purchaser and neither party shall have any further obligations arising therefrom.

2. CONTINGENCIES: This Agreement shall be and is hereby made contingent upon the following conditions:

(a) The Purchaser shall promptly and diligently within Fifteen (15) days after a Bankruptcy Court order approving this Agreement (the "Sale Order") becomes a final non-appealable order make an application to the governing body of the Town of Livingston and the New Jersey Division of Alcoholic Beverage Control ("NJABC"), and be granted all requisite governmental approvals necessary (including but not limited to any "distance restriction" waivers or variances) for the Person-to-Person transfer to the Purchaser or to Purchaser's designee and the Place-to-Place Transfer of the Liquor License to the premises located at 1100-1800 Town Center Way, Livingston, New Jersey or in the alternative, at Purchaser's discretion, 277 Eisenhower Parkway, Livingston, New Jersey free and clear of restrictions, special conditions or limitations within one hundred eighty (180) days from the date of a timely filed application.

(b) Approval by the Bankruptcy Court of the Breakup Fee and the Required Bidding Increments (each as defined hereafter) pursuant to a Bankruptcy Court Order (the "Sale Procedures Order").

(c) Approval by the Bankruptcy Court of the transfer of the License free and clear of restrictions, special conditions or limitations and all vendors' charges, violations, restrictions, liens, liquor bills, claims (as defined in section 101(5) of title 11 of the United States Code (the "Bankruptcy Code")), interests and encumbrances to Purchaser by a final, non-appealable Sale Order. The terms of the Sale Order shall be subject to the approval of the Purchaser in its sole and absolute discretion.

3. SELLER OBLIGATIONS AND REPRESENTATIONS: Seller makes the representations set forth below and agrees that it will make the same representations at the time of closing as follows:

(a) Seller agrees that the Purchaser is the "stalking horse" bidder whose offer Seller shall present to the Bankruptcy Court for approval.

(b) That based on information currently available to Seller the License is currently inactive but otherwise in good standing, and has not been revoked or invalidated and is not currently suspended or to be suspended at such time in the future that it might become active. That the License was last actively used on or prior to March 8, 2013 and has not been used since



that date; but that it has been annually renewed since that date.

(c) If the contingencies in this Agreement will cause the closing to extend beyond the current expiration date of the License, i.e., June 30, 2013, Seller will timely file the proper and appropriate application to renew the License for the 2013-2014 License Year, and will pay the requisite fees therefor. Such fees, however, will be prorated at the time of closing and Purchaser shall reimburse Seller for the fees governing the part of the license year from the date of closing to June 30, 2014.

(d) Seller will seek to obtain entry of the Sale Order from the Bankruptcy Court to the Purchaser as soon as practicable but in no event later than 45 days from the Effective Date (as defined below) of this Agreement;

4. WARRANTIES OF PURCHASER: Purchaser makes the representations set forth below and agrees that it will make the same representations at the time of closing as follows:

(a) That Purchaser is solvent and has the funds available for the acquisition of the License in the manner contemplated in this Agreement.

(b) That if Purchaser is an entity, its officers, directors and shareholders or members have never been arrested, indicted or convicted of any crime, or accused of violating any law which would disqualify Purchaser as an applicant for a beer, wine and liquor license for plenary retail distribution, or for any other license with regard to the operation of the business.

5. SPECIAL PROVISIONS:

A. SALE PROCEDURES ORDER PROVISIONS: The Sales Procedures Order must, at a minimum, contain the following provisions:

1. Purchaser shall be entitled to the Breakup Fee in the amount of up to $30,000 (the "Break-Up Fee"), in the event that Bankruptcy Court determines that the Purchaser is not the winning bidder for the License. The Break-Up Fee shall be entitled to an administrative priority under the Bankruptcy Code and shall be paid to Purchaser no later than 5 days after Seller closes the transfer of the License to another party.

2. Bidding increments above the Purchaser's offer shall, subject to the approval of the Bankruptcy Court, be as follows: The first required minimum overbid shall be in the amount of $60,000 and each subsequent bid shall thereafter be in the amount of not less than $30,000 per bid.

3. The sales procedures may not be modified except upon agreement of

the Purchaser, or Order of the Bankruptcy Court.

4. The Seller shall seek and acquire entry by the Bankruptcy Court of the Sales Procedures Order approving the Breakup Fee and the Required Bidding Increments as soon as practicable but in no event later than 45 days from the Effective Date (as defined below) of this Agreement unless Purchaser agrees to an extension of time.

B. SALE ORDER PROVISIONS: The Sale Order must, at a minimum, contain the following provisions:

a. The transfer of the License to the Purchaser shall be free and clear of all vendors' charges, violations, restrictions, liens, liquor bills, claims (as defined in section 101(5) of the Bankruptcy Code), interests and encumbrances.

b. The Purchaser is deemed a good-faith purchaser of the License entitled to the protection of Bankruptcy Code §363(m) with respect to the transaction contemplated by the Agreement.

c. The sale of the License to the Purchaser does not violate the requirements of Bankruptcy Code §363(n).

d. The Seller and Purchaser are authorized and directed to take all actions and execute all documents necessary and appropriate to effectuate the sale of the License to the Purchaser.

e. The Seller is authorized and empowered to take any and all actions necessary to implement the terms of this order.

f. The Seller and the Purchaser are authorized to amend or modify the Agreement without further order of the Court, provided that any such amendments or modifications are non-material and do not have an adverse effect on the Seller or Seller's estate.

6. EFFECTIVE DATE: The effective date of this Agreement shall be the date of the last signing or initialing of this Agreement.

7. CLOSING: The closing of the transaction shall take place at the office of Frank J. Mandia, Jr., Esquire, Stone Mandia, LLC, 685 Neptune Boulevard, Neptune, NJ 07753 not later than 15 days following the approval of the transfer of the License to the Purchaser or its designee and to 1100-1800 Town Center Way or to 277 Eisenhower Parkway. The parties also agree that the Closing may be conducted as an escrow closing via the overnight mailing of documents and wiring or overnight mailing of funds pursuant to an Escrow Closing Agreement which is

mutually agreed upon by the parties.

8. TERMINATION: In the event the closing of this transaction does not take place within one hundred eighty (180) days from the filing of a timely transfer application, by reason of the failure of any contingency as set forth in paragraph 2 of this Agreement, either party shall have the right to terminate this Agreement by written notice to the other party. In such event, the earnest money deposit shall be returned to Purchaser and this Agreement shall become null and void and the parties shall thereupon be relieved of any further obligations hereunder.

Notwithstanding the foregoing paragraph, if the application for transfer of the license is pending but has not been acted upon by the governing body of the Town of Livingston and the NJABC, the parties agree that this Agreement shall be extended for an additional two (2) sixty (60) day periods (the "Extension Periods") to allow time for the approval process to be completed. In the event that the person to person and place to place transfer application has not been approved by the Town of Livingston and the NJABC within said Extension Period, then either party may cancel this transaction or Purchaser shall receive a return of its deposit monies.

9. BROKERS: The parties mutually acknowledge that no real estate broker or agent was involved in this transaction. Based upon the aforesaid warranty and representation, each party agrees to defend, indemnify and hold the other party harmless from and against any and all claims for finder's fees or brokerage, commissions or other compensation which may at any time be asserted against the indemnified party founded upon a claim that the substance of the aforesaid representation of the indemnifying party is untrue, or founded upon the acts of the indemnifying party, together with any and all losses, damages, costs and expenses, including reasonable attorneys' fees and disbursements and expert fees, relating to such claims or arising there from or incurred by the indemnified party in connection with this indemnification provision. In the event that by settlement or otherwise any monies or other consideration is awarded to or turned over as a result of a commission claim, it is the intention of the parties hereto that the indemnifying party shall be solely responsible therefor. The provisions of this Paragraph shall survive the Closing.

10. BULK SALES LAW: Each party agrees to waive compliance by the other with the requirements of the bulk transfer provisions of the New Jersey Uniform Commercial Code, if applicable..

Seller acknowledges that Purchaser may file and obtain a "Tax Clearance

Certificate" pursuant to N.J.S.A. 33:1-17.1 and 54:50-28, and Seller agrees to cooperate with Purchaser in attempt to obtain a "Tax Clearance Certificate" (Seller's New Jersey Tax Identification Number is 273249186) but shall have no obligation respecting such other than to satisfy the contingencies in Paragraph 2 above.

11. TAXES: The Seller shall be solely responsible for any tax liability resulting from the sale of the License to Purchaser. Seller shall indemnify and hold Purchaser harmless from all claims of tax liability as a result of the sale of the License described herein up to the amount of the Purchase Price, and such claim shall be entitled to be treated as an allowed administrative expense claim and may be paid without further court approval. In the event that the claim for tax liability exceeds the Purchase price, Buyer or Seller may terminate this Contract, all deposit monies shall be returned to the Buyer and the parties shall be free of further liability to each other.

12. COMMUNICATION FROM GOVERNMENTAL AUTHORITIES: Seller shall serve upon Purchaser a copy of any notice received from the Division of Alcoholic Beverage Control; the Bureau of Alcohol, Tobacco & Firearms; the Town of Livingston or any other governmental entity with regard to the License within seven (7) days of receipt thereof.

13. NOTICES: Every notice or other communication which any party hereto is required or desires to give any other party hereto shall be in writing and shall be sent by mailing the same by registered or certified mail postage prepaid, return receipt requested or by facsimile, or by Email as follows:

If to Buyer:    Frank J. Mandia, Jr., Esq.
                Stone Mandia, LLC
                685 Neptune Boulevard
                Neptune, NJ 07753
                Tel. 732-774-0800
                Fax 732-775-7637
                Email: fjm@stonemandia.com

With Copy to:

Mark S. Lichtenstein, Esq.
CROWELL & MORING LLP
590 Madison Avenue, 20th Floor
New York, NY 10022
T: (212) 895-4267
F: (212) 895-4201
Email: mlichtenstein@crowell.com

If to Seller:   Jay Lubetkin, Esq.
                Rabinowitz, Lubetkin & Tully, PC
                293 Eisenhower Parkway
                Livingston, New Jersey 09309
                Tel. 973-597-9100, Ext. 105
                Fax: 973-597-9119
                Email:JLubetkin@rltlawfirm.com

14. METHOD OF SERVICE: Every notice or other communication sent in the manner aforesaid shall be deemed to have been given when the same shall be deposited in the United States mail, properly addressed as aforesaid, with full postage prepaid or by facsimile or by Email to either party's attorney.

15. ENTIRE AGREEMENT AND MODIFICATIONS: This Agreement supersedes any prior or contemporaneous agreements, negotiations, proposals or representations whether written or oral relating to the sale and purchase of the License; and it alone represents the full, final and complete understanding of the parties and all prior representations and agreements are merged herein. Once properly executed by all parties, this Agreement may not be changed or terminated orally by either party without the prior written consent of the other party. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their successors and assigns.

16. LAWS GOVERNING: This Agreement shall be governed by and be construed and enforced in accordance with the laws of the State of New Jersey. Any disputes regarding the transaction provided for herein shall be heard and determined by the United States Bankruptcy Court for the District of New Jersey.

17. CONFIDENTIALITY: Other than disclosing the existence of this transaction to the Bankruptcy Court and to the Debtor's creditors in connection with the private sale of the License in the Bankruptcy Court subject to higher and better offers, prior to the closing, no party shall make any public disclosure of the identity of the Purchaser, provided, however, that any party may make such disclosures as are reasonably necessary to its officers, directors, members, partners, attorneys and accountants, or unless required by law.

18. NONWAIVER: The failure of the Seller or Purchaser to insist upon strict performance of any of the covenants or conditions of this Agreement shall not be construed as a waiver by such party of any of its rights or remedies under this Agreement and shall not be construed as a waiver, relinquishment or failure of any such covenants, conditions or options.

19. SUBJECT HEADINGS: The subject headings at the beginning of each paragraph are provided for convenience only and are not intended to modify or amplify the text of the paragraph.

20. COUNTERPARTS: This Agreement to Purchase may be executed and delivered in counterparts, each of which, when so executed and delivered, shall constitute an original, fully enforceable counterpart for all purposes.

## SIGNATURE PAGE FOR AGREEMENT TO PURCHASE

## ALCOHOLIC BEVERAGE LICENSE

between Jay Lubetkin, Esq, Bankruptcy Trustee for Circle 10 Restaurant, LLC, (hereinafter called "SELLER" or "TRANSFEROR") and Onyx Equities III, LLC On Behalf Of An Entity To Be Formed, (hereinafter called "PURCHASER", "BUYER" or "TRANSFEREE").

IN WITNESS WHEREOF, the parties have caused these presents to be executed and sealed as of the day, month and year first written above.

WITNESS:

Jay Lubetkin, Esq, Trustee
For Circle 10 Restaurant, LLC

By: _____
Jay Lubetkin, Esq - Trustee

_____

WITNESS:

Onyx Equities III, LLC

By: _____
John Saraceno, Member

_____

## CONSENT OF ESCROW AGENT

The Undersigned, named as Escrow Agent in the foregoing Agreement, hereby agrees to act as said Escrow Agent and to hold and disburse the monies to be paid under the Agreement in accordance with the provisions thereof.

DATED: 4/8, 2013

_____
Jay Lubetkin, Esquire