**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>CIRCLE TEN RESTAURANT, LLC,<br><br>Debtor. | Case No. 13-14820 (RG)<br><br>Chapter 7 |

**LIM CHEW CORP.'S COMBINED BRIEF IN OPPOSITION TO CHAPTER 7 TRUSTEE'S (I) MOTION FOR ORDER CONFIRMING REJECTION BY OPERATON OF LAW OF RIGHT OF FIRST REFUSAL AGREEMENT, OR ALTERNATIVELY, REJECTION OF INTEGRATED LEASE AGREEMENT, RIGHT OF FIRST REFUSAL, AND OTHER AGREEMENTS, IF ANY, ARISING OUT OF THAT OCTOBER 20, 2010, TRANSACTION BETWEEN THE DEBTOR AND LIM CHEW CORP. AND (II) MOTION TO SELL CLASS C RETAIL PLENARY <u>CONSUMPTION LIQUOR LICENSE.</u>**

Connell Foley LLP
85 Livingston Avenue
Roseland, New Jersey  07068
(973) 535-0500
*Attorneys for Lim Chew Corp*

*On the Brief*:
Stephen V. Falanga, Esq.
Philip W. Allogramento III, Esq.

2924421-03

## TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ......................................................................................................... 3

LEGAL ARGUMENT ................................................................................................................ 7

    POINT I.  THE RIGHT OF FIRST REFUSAL AND THE PROMISSORY NOTE ARE NOT CAPABLE OF REJECTION. .................................................................. 7

    POINT II.  REJECTION IS UNNECESSARY AS SPECIFIC PERFORMANCE ORDERING THE TRANSFER OF THE LIQUOR LICENSE IS WARRANTED ........................................................................................................ 10

    POINT III.  THE TRUSTEE LACKS THE AUTHORITY TO SELL THE LIQUOR LICENSE. ........................................................................................................ 14

    POINT IV.  LIM CHEW HAS NOT WAIVED ANY OF ITS RIGHTS UNDER THE RIGHT OF FIRST REFUSAL OR THE PROMISSORY NOTE .................... 17

CONCLUSION ........................................................................................................................ 18

2924421-03

**PRELIMINARY STATEMENT**

Lim Chew Corp. ("Lim Chew"), a creditor of the debtor, Circle 10 Restaurant, LLC (the "Debtor"), objects to the motion filed by Jay L. Lubetkin, the Chapter 7 Trustee (the "Trustee") seeking an Order Confirming Rejection By Operation of Law of Right of First Refusal Agreement, or Alternatively, Rejection of Integrated Lease Agreement, Right of First Refusal Agreement and Other Agreements, if any, Arising out of that October 20, 2010 Transaction between the Debtor and Lim Chew Corp. (the "Motion to Reject"). The Motion to Reject is directly connected to the Trustee's ongoing attempt to sell the Liquor License[1] presently held by the Debtor pursuant to 11 U.S.C. § 363 (the "Sale Motion"), to which Lim Chew has previously objected [Dkt. # 33]. Both the Motion to Reject and the Sale Motion are an unfair attempt by the Trustee to accomplish something that the Debtor did not have the right to do outside of bankruptcy, namely transfer the Liquor License to a third party without regard for the equitable and legal rights of Lim Chew to acquire the same. For reasons of equity and law, Lim Chew respectfully requests that this Court not permit this to occur.

While it is Lim Chew's position that the Liquor License should not be considered property of the estate without consideration of its limitations under the Right of First Refusal and the Promissory Note -- Lim Chew also does not believe that the Trustee has the right to reject either agreement. The terms and nature of these agreements are not executory as of the Petition Date and, therefore, are not subject to rejection by either operation of law or the Motion to Reject. Neither the Right of First Refusal nor the Promissory Note was disclosed by the Debtor as an executory contract in its Schedules and the Trustee makes little attempt to demonstrate why the Right of First Refusal is executory in nature and absolutely no attempt to show how the

---

[1] The "Liquor License" refers to that specific Class C Retail Plenary Consumption Liquor License formerly held by Lim Chew and presently assigned to the Debtor under specific terms of use, including terms concerning the return of the same to Lim Chew.

1

Promissory Note is executory. In the instance of the Right of First Refusal, as conceded by the Trustee, none of the conditions precedent to Lim Chew exercising its right of first refusal were in existence at the time of the bankruptcy filing. As such, there could be no breach of the Right of First Refusal by either party and, therefore, this agreement does not meet the basic definition of an executory contract. Additionally, as the Debtor did not need to do anything under the Promissory Note other than accept money from Lim Chew to retake title to the Liquor License, the Promissory Note too cannot be deemed executory in nature.

If *arguendo*, the Court were inclined to strain the language of the Right of First Refusal and/or the Promissory Note to somehow find them to be executory in nature, Lim Chew is still entitled to specific performance to acquire the Liquor License. Since upon information and belief there is no liquor license available in Livingston, New Jersey for Lim Chew to purchase, the Liquor License at issue is a unique right for which there is no viable alternative in terms of monetary damages[2]. The damage caused by the Trustee's failure to accept payment from Lim Chew for the Liquor License is not subject to calculation and the damage caused to Lim Chew cannot just be reduced to a "claim" under the Bankruptcy Code. Therefore, in the absence of a viable alternative of money damages, specific performance is warranted and there is no reason for the Court to enter an order rejecting the Right of First Refusal or Promissory Note.

Accordingly, Lim Chew requests that the Court deny both the Motion to Reject and the Motion to Sell as the agreements related to the Liquor License are not executory as of the petition date and, accordingly, cannot be rejected either by mechanism of law or motion of the Trustee.

---

[2] To the extent that this damage amount is somehow calculable – something that Lim Chew asserts is impossible -- it should be the burden of the Trustee to show that its rejection of the Right of First Refusal and/or Promissory Note would actually benefit the Estate as a whole, rather than just multiply the size of the creditor body many times over.

2924421-03

## STATEMENT OF FACTS[3]

Lim Chew is the owner of a certain piece of real property located at 372 West Mount Pleasant Avenue, Livingston, New Jersey 07039 (the "Property"). The Property is zoned for commercial use and is presently outfitted for use as a restaurant. Lim Chew has owned the Property[4] for approximately forty years and, during that time, has either held title to a liquor license in connection with the Property or has granted its various restaurant tenants temporary use of the same for the duration of their respective leases.

**The Lease, Promissory Note and Right of First Refusal.**

On or about, October 20, 2010, Lim Chew and the Debtor entered into a certain Lease Agreement (the "Lease") by which Lim Chew agreed, *inter alia*, to lease the Property to the Debtor for Debtor's operation of a restaurant at the Property. The Lease was for an initial period of ten (10) years, with two subsequent options to extend the lease period for five (5) years. In connection with Lim Chew's agreement to lease the Property to the Debtor, Lim Chew also agreed to transfer the Liquor License to the Debtor, which Lim Chew did so solely for purposes of facilitating restaurant operations at the Property. As part of the agreement to transfer the Liquor License, the Debtor was required to pay Lim Chew an initial payment and thereafter make monthly payments pursuant to the terms of a certain promissory note (the "Promissory Note"). In particular, the Promissory Note provided for Debtor to make an initial payment of One Hundred Thousand Dollars ($100,000.00) (the "Liquor License Initial Payment") and make monthly payments of principal and interest in eighty-four (84) equal payments of $8,044.54. Under the terms of the

---

[3] The facts set forth herein have previously been presented to the Court in Lim Chew's opposition to the Motion to Sell. They have been reproduced at length herein as they are equally relevant to the Court's analysis of the Motion to Reject.

[4] When Lim Chew originally purchased the Property it was a bar and had a liquor license associated with it. It was a major factor in Lim Chew's purchase of the Property that it had a liquor license.

3

Promissory Note (which was an exhibit to the Lease and incorporated by reference therein), upon a Event of Default, the Debtor was required to transfer the Liquor License to Lim Chew on agreed-upon terms and conditions.

In addition, in connection with Lim Chew's agreement to lease the Property and transfer the Liquor License to the Debtor for the duration of this lease, the Debtor and Lim Chew also entered into a certain agreement styled Right of First Refusal Agreement ("Right of First Refusal") (when taken together with the Lease and the Promissory Note, the "Lease Agreement") which provided that should certain events occur – a "Triggering Event" -- the Debtor was required to transfer the Liquor License to Lim Chew on agreed-upon terms and conditions. The Right of First Refusal defines a "Triggering Event" as whenever:

a. [the Debtor] offers to sell the [Liquor License] to a third party (other than a Permitted Assignee, [as defined therein]);

b. [the Debtor] receive[s] an offer following bona fide arms length negotiations from a ready, willing and able unrelated third party to purchase the [Liquor License] which offer . . . [the Debtor] desires to accept; or

c. the Term of the Lease . . . expires or the Lease is terminated for any reason.

The Right of First Refusal provides that should a Triggering Event occur, Lim Chew would be entitled to exercise the option to retake title to the Liquor License for the price of the *lesser* amount of:

a. The Third Party Offer Price (if any),

b. the sum of . . . $100,000.00, and . . . the original principal amount payable under the Promissory Note . . . [(i.e., $500,000.00)], and

c. the sum of . . . $100,000.00, and . . . the total principal payments made by the [Debtor] under the [Promissory] Note through the date of the transfer of the [Liquor] License . . ..[5]

---

[5] In essence, the formula provides for Lim Chew to repay the Debtor what it had actually paid to acquire the Liquor License from Lim Chew.

4

The requirement that the Debtor transfer the Liquor License to Lim Chew upon termination of the lease of the Property or other Event of Default was a material precondition for Lim Chew's agreement to execute the Lease Agreement and transfer the Liquor License to the Debtor. Lim Chew would not have agreed to lease the Property and transfer the Liquor License to the Debtor in the absence of the Debtor's obligation to transfer the Liquor License to Lim Chew at the conclusion of the Lease arrangement. Following the execution of the Lease Agreement, the Debtor was granted possession of the Property as a tenant and, upon information and belief, transfer of title to the Liquor License from Lim Chew to the Debtor was approved by the Township of Livingston.

**Abandonment of the Property and Breaches of the Lease and Promissory Note.**

In or about December 2011, Lim Chew agreed that the Debtor could defer making three (3) monthly payments under the Promissory Note, with said payments to be added to the end of the payment schedule under the Promissory Note. In or about April 2012, the Debtor began missing payments due to Lim Chew under the Promissory Note. Thereafter, in or about September 2012, the Debtor unilaterally and without prior notice to Lim Chew, elected to close its restaurant operation at the Property and stopped making payments to Lim Chew under the Lease and Promissory Note.

The Debtor's actions and inactions resulted in various breaches/defaults under the terms of the Lease and Promissory Note. Despite written notice of its breaches/defaults, the Debtor failed to cure any of the breaches/defaults.

The Debtor thereafter unilaterally chose to voluntarily vacate the Property in or about January 2013, but did not agree to transfer the Liquor License back to Lim Chew Pursuant to the Lease Documents.

5

**Refusal of Debtor to Transfer Liquor License Back to Lim Chew**

Upon abandonment of the Property, Lim Chew requested that the Debtor return the Liquor License to Lim Chew consistent with the Lease Agreement. Instead of complying with the terms of the Lease Agreement, the managing member of the Debtor, Neal Erman, refused to return the Liquor License to Lim Chew for the price previously agreed to in the Lease Agreement. Mr. Erman thereafter threatened to place the Debtor into bankruptcy unless Lim Chew agreed to pay a substantially higher price for the Liquor License than Lim Chew was otherwise contractually obligated to pay the Debtor. Upon information and belief, Mr. Erman sought to wrongly compel Lim Chew to pay an excessive price for the Liquor License so that he could apply the funds in excess of what was owed to the Debtor to other debts of the Debtor, including those debts of the Debtor that he personally guaranteed.

Lim Chew ultimately refused to accept the terms sought by Mr. Erman.

**Declaration of Bankruptcy, Motion to Sell Liquor License and Motion to Reject**

On March 8, 2013 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 7 of title 11 of the United States Bankruptcy Code. On March 11, 2013, Jay L. Lubetkin was appointed as Chapter 7 Trustee of the Debtor's estate. On April 11, 2013, the Trustee filed the Motion to Sell the Liquor License. On May 20, 2013, the Trustee filed the Motion to Reject.

**LEGAL ARGUMENT**

**POINT I**

**THE RIGHT OF FIRST REFUSAL AND THE PROMISSORY NOTE ARE NOT CAPABLE OF REJECTION.**

As Lim Chew has previously submitted to this Court, neither the Right of First Refusal nor the Promissory Note (which both contain the requirement of the Debtor to transfer the Liquor License to Lim Chew) are executory in nature and, therefore, they are not capable of rejection by the Trustee.  Neither Lim Chew nor the Debtor have described these agreements as executory contracts – indeed, the Debtor after analyzing all of its assets and liabilities chose not to describe the Right of First Refusal and the Promissory Note as executory in its Schedules.  As non-executory contracts, neither the automatic rejection of executory contracts in chapter 7 cases under §365(d) nor the present Motion to Reject can serve as the basis to deny Lim Chew its right to re-acquire the Liquor License.

The ability of the Trustee to reject the Right of First Refusal or the Promissory Note are inherently based upon whether these agreements can be considered executory contracts.  While the term "executory contract" is not defined in 11 U.S.C. §365, the Third Circuit has defined an executory contract for purposes of § 365 as "a contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other." *Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*, 872 F.2d 36, 39 (3d Cir. 1989) (citations omitted); *see also In re Columbia Gas Sys. Inc.*, 50 F.3d 233, 239 (3d Cir. 1995) ("Unless both parties have unperformed obligations that would constitute a material breach if not performed, the contract is not executory under § 365."). "The time for testing whether there are

7

material unperformed obligations on both sides is when the bankruptcy petition is filed." *In re Columbia Gas*, 50 F.3d at 240.

Under New Jersey state law, a right of first refusal, or first right to buy, has been held to not be a true option, but rather a valuable prerogative. *Mazzeo v. Kartman*, 234 N.J. Super. 223, 229 (App. Div. 1989)(holding that a preemptive option to repurchase land was valid if exercisable within a reasonable time). It limits the right of the owner to dispose freely of his property by compelling him to offer it first to the party who has the right to buy. *Id.* Nor may the owner accept an offer made to him by a third party in violation of the right of first refusal.

While the caselaw on how bankruptcy courts should handle the rejection of a right of first refusal and the related concept of options is unsettled throughout the country, the issue present before the Court today is a matter of first impression. That being said, case law exists that provides that a right of first refusal is not an executory contract when no sale is pending at the time of the bankruptcy filing. *See In re Robert L. Helms Construction & Dev., Inc.*, 139 F.3d 702 (9th Cir. 1998); *In re Bergt*, 214 B.R. 17 (Bankr. D. Alaska 1999). In the case of promissory notes, the law is more settled; typically a note is not an executory contract if the only performance that remains is repayment. *See e.g., In re Air Vermont, Inc.*, 47 B.R. 540 (Bankr. D. Vt. 1985)

In *Helms*, the debtor had granted the former owner of real property an option to buy back part of the property upon certain terms. The underlying bankruptcy court had ruled that the optionee's interest in the real property was executory and could be rejected in the seller's bankruptcy. *Helms*, 139 F.3d at 703. On appeal, the B.A.P. reversed the bankruptcy court's decision and held that the option was executory and explained that:

> . . . we look to outstanding obligations at the time the petition for relief is filed and ask whether both sides must still perform. Performance due only

8

>if the optionee chooses at his discretion to exercise the option doesn't count unless he had chosen to exercise it. An option may on occasion be an executory contract, for instance, where the optionee has announced that he is exercising the option, but not yet followed through with the purchase at the option price. The question thus becomes: at the time of filing, does each party have something it must do to avoid materially breaching the contract? Typically, the answer is no; the optionee commits no breach by doing nothing. *Id*. at 706.

In *In re Bergt*, which relied in part upon *Helms*, the bankruptcy court examined the unsettled history of the treatment of rights of first refusal in bankruptcy and held that a right of first refusal in the possession of a non-debtor is no more than an unexercised option and could not be rejected by the debtor when, on the date of the petition, the party with the right of first refusal had no duties which it could fail to perform. 241 B.R. at 36. *Bergt* therefore draws the bright line that if a right of first refusal is not triggered on or before the petition date by the existence of a potential sale, then neither party has any duties to perform and the right of first refusal cannot be considered executory[6].

Here, on the Petition Date, the Debtor did not yet have a *bona fide* offer to purchase the Liquor License (i.e., no Triggering Event existed). As such, under the terms of the Lease Agreement, neither the Debtor nor Lim Chew had any duty relative to the Right of First Refusal. It was only after the Petition Date, when the Trustee had been appointed and had begun negotiating for the sale of the Liquor License that the right of first refusal and its related obligations spring into life. On the Petition Date, Lim Chew did not have any duties which it needed to perform. If Lim Chew did nothing on the Petition Date, whether or not an offer existed, there could be no breach by Lim Chew under the Right of First Refusal by refraining from action.

---

[6] *Bergt* also concluded that the rejection concept of § 365 is not an avoiding power which repudiates, cancels or terminates a right of first refusal. 241 B.R. at 36.

9

Under the Promissory Note, the Debtor is obligated because of its default to transfer the Liquor License to Lim Chew. Upon the occurrence of, *inter alia*, a payment default under the Promissory Note or an Event of Default under the Lease, Lim Chew is immediately entitled to acquire the Liquor License on the same terms that the Debtor acquired it for under Section 2.4 of the Lease. The Debtor need not take any affirmative action for this right to spring to life. In this case, the terms are simply that Lim Chew is permitted to acquire the Liquor License for what the Debtor paid for it and thereafter apply for the transfer to the ABC. The Debtor is required to do little more than accept payment.

Under similar circumstances, however, the First Circuit essentially ignored the rejection argument altogether and concluded that the rejection should not serve to alter the contractual obligation to return a liquor license at the end of a lease term as this right was akin to a property right in something held by the Debtor that was unaltered by the Bankruptcy Code. *See In re The Ground Round, Inc.*, 482 F.3d 15 (1st Cir. 2007).

Accordingly, as neither the Right of First Refusal nor the Promissory Note are executory as of the petition date, the Trustee's Motion to Reject should be denied.

## POINT II

### REJECTION IS UNNECESSARY AS SPECIFIC PERFORMANCE ORDERING THE TRANSFER OF THE LIQUOR LICENSE IS WARRANTED.

The unique nature of the Liquor License and the lack of a viable alternative remedy for Lim Chew render specific performance appropriate under the circumstances. While Lim Chew asserts *supra* that rejection of the Right of First Refusal and the Promissory Note is not warranted under the circumstances, rejection does not serve to prevent Lim Chew from seeking specific performance to regain title to the Liquor License and, therefore, the Motion to Reject should be denied.

10

Rejection of an executory contract does not serve to invalidate, rejudicate, repeal or avoid an executory contract. *In re Walnut Associates*, 145 B.R. 489, 494 (Bankr. E. Dist. Pa. 1992). Rather, the only effect of rejection is that the executory contract at issue is not assumed and the non-debtor thereto cannot make an administrative claim against the debtor's estate if the debtor fails to fulfill the obligations of the contract. *Id* (citations omitted). Instead, rejection the non-debtor party is typically limited in its breach claims to the treatment accorded to the debtors general unsecured creditors. *Id.* However, if the non-debtor party has the option of specific performance under applicable state law, "it means that the non-debtor should be able to enforce the contract against the [d]ebtor, irrespective of [its] rejection of it." *Id.*

The Third Circuit has further refined this exception to the typical monetary claims that arise upon the rejection of an executory contract. While many equitable remedies can be reduced to monetary claims as the term is defined under 11 U.S.C. § 101(5), the Third Circuit has determined that the proper analysis is to determine whether or not monetary damages are a "viable alternative" to the equitable remedy sought. *In re Ben Franklin Hotel Assocs.*, 186 F.3d 301, 306 (3rd Cir. 1999) (Court of Appeals refused to enjoin party from pursuing its equitable demand to reinstate its partnership interest in Debtor which was engaged in a unique business venture). Accordingly, where losses cannot be properly measured nor adequately compensated for an award of monetary damages, as in the case of a unique business opportunity, then the Court may permit enforcement of an equitable remedy against a debtor. *See id.*

Under applicable New Jersey law, "specific performance is an equitable remedy that is appropriate when the legal remedy of compensation is inadequate or incalculable." *In re Nickels Midway Pier, LLC*, 341 B.R. 486, 499 (D. N.J. 2006); citing *Fleisher v. James Drug Stores*, 1 N.J. 138, 146-147 (1948). In the context of liquor licenses, the Supreme Court of New Jersey

11

has found that agreements to transfer such licenses are specifically enforceable. *Kalogeras v. 239 Broad Avenue, L.L.C.*, 202 N.J. 349 (2010). In the bankruptcy context, the question then becomes, whether monetary damages are a "viable alternative" in the specific case of rejection of this normally allowed equitable remedy.

In *In re Ben Franklin Hotel Assocs.*, the Court was faced with a party seeking an equitable demand for reinstatement of a partnership interest in the debtor, a limited partnership that was formed to own and redevelop a landmark hotel. 186 F.3d at 301-302. Instead of applying a blanket determination that any equitable remedy could be converted into a monetary claim under the Bankruptcy Code, the Court analyzed the unique nature of the relief sought and found that under applicable state law, the loss of a unique business opportunity is generally not possible to remedy by way of money damages. *Id.* at 307. The Third Circuit went on to analyze several cases, including one involving, as here, a restaurant and liquor business:

> In *Cochrane v. Szpakowski* . . . for example, the Supreme Court of Pennsylvania **affirmed an award of specific performance of a contract for the sale of a restaurant and liquor business**. In doing so, the court cited the unique qualities of the business and the fact that future profits would be impossible to ascertain accurately . . . the Supreme Court explained: '**there are no other premises nor is there any other restaurant which is exactly like the one involved here, and it would, for all practical purposes, be impossible for . . . [appellee] to prove what money he would lose if . . . [appellant] were permitted to breach this contract**." *Id* (emphasis added, internal citations omitted).

The Third Circuit ultimately reasoned that since the debtor's business owned and operated a unique commercial property, damages flowing from the loss of the partnership interest in the debtor would be difficult to calculate with any sufficient degree of certainty. *See id* at 308. In the absence of the ability to calculate with certainty the monetary damages that would result from a denial of specific performance, the Third Circuit ruled that the party's claim for equitable

12

relief was not a "claim" under the Bankruptcy Code and it would not enjoin the equitable relief sought. *Id.*

In New Jersey, as in Pennsylvania, there are occasions when specific performance is the only adequate remedy at law. For example, in *Fleischer*, the Supreme Court of New Jersey was faced with a demand for specific performance to remedy the expulsion of a buyer of a retail pharmacy from seller's chain operations. The Supreme Court, in deciding whether specific performance was warranted, noted that the business had a "peculiar and special value" and that its earning power was dependent upon the availability of specialty merchandise only available from the defendant. *Fleischer* at 1 N.J. 147. Because of this unique source for goods, "it would not be feasible to measure by legal rules the damages consequent upon the destruction or substantial deterioration of complainant's business" and, moreover, compensation at law "however ascertained, would not be a just and reasonable substitute for the subject matter of the contract under review." *Id*. Ultimately, the Supreme Court held that damages recoverable to the complainant were not adequate and that complainant had a right to seek specific performance from the defendants. *Id* at 8.

Here, as in *In re Ben Franklin*, the Court is faced with a claim that if Lim Chew is not entitled to specific performance it will be extremely difficult, if not impossible, to calculate monetary damages. As the Liquor License is a unique commercial right – *i.e.* it is the only liquor license available for to Lim Chew to purchase in Livingston, New Jersey – Lim Chew does not believe that its loss of the same can be calculated with any reasonable certainty. It should go without stating that if something is unique and otherwise unavailable, no amount of money can simply make Lim Chew whole if its equitable and legal rights are denied. Additionally, merely assigning the value of Lim Chews lost rights based upon the price that the Liquor License has

13

been auctioned for does little to account for the sweeping damages that will occur to Lim Chew's business and the value of its property, now and in the future, by no longer having access to the Liquor License. It is not just a matter of Lim Chew going out to purchase another liquor license for its restaurant property; as none are available for any price. Under applicable law, this Court need not engage in tortured legal gymnastics to convert something into a monetary claim where such a calculation is wildly speculative at best. Simply put, there is no viable alternative to specific performance requiring that the Liquor License be transferred back to Lim Chew.

Accordingly, as the relief sought by the Motion to Reject will not serve to benefit the Debtor's Estate, Lim Chew respectfully requests that the same be denied by the Court.

## POINT III

### THE TRUSTEE LACKS THE AUTHORITY TO SELL THE LIQUOR LICENSE.

The Trustee should not be permitted to sell or otherwise transfer the Liquor License free and clear of Lim Chew's contractual and equitable right to acquire the same pursuant to the Lease Agreement. At most, the Debtor possesses temporary legal title to the Liquor License for the duration of the existence of its restaurant operations at the Property owned by Lim Chew – a restaurant operation that has now ceased to exist -- and a right to restore the Liquor License to Lim Chew when such operations end.

While § 363 of the Bankruptcy Code generally permits a debtor to sell property "free and clear of any interest in such property . . .," this provision is not intended to replace state law and does not give a debtor the right to sell something that it does not have a right to sell outside of bankruptcy. In *Butner v. United States*, 440 U.S. 48, 54 (1979), the Supreme Court emphasized that "Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law." The Supreme Court then went on to instruct that: "Property interests are

created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. Uniform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving a windfall merely by reason of the happenstance of bankruptcy." *Id*. at 55, 99 S. Ct. at 918 (citations and internal quotations omitted). Accordingly, the *Butner* Court concluded that, absent a countervailing federal interest, "the basic federal rule is that state law governs." *Id*. at 57.

Courts applying the *Butner* analysis have relied on its holding to conclude that a trustee in bankruptcy is bound by the same limitations as the debtor noting that "once a property interest has passed to the estate, it is subject to the same limitations imposed upon the debtor by applicable nonbankruptcy law." *In re American Freight Sys., Inc.*, 179 B.R. 952, 960 (Bankr. D. Kan. 1995); *see also In re Transcon Lines*, 58 F.3d 1432, 1438 (9th Cir. 1995) (noting that "nonbankruptcy law defines the nature, scope, and extent of the property rights that come into the hands of the bankruptcy estate"), *cert. denied sub nom. Gumport v. Sterling Press, Inc.*, 516 U.S. 1146 (1996); *In re Sanders*, 969 F.2d 591, 593 (7th Cir. 1992) ("[A] bankruptcy trustee succeeds only to the title and rights in property that the debtor had at the time she filed the bankruptcy petition."); *In re FCX, Inc.*, 853 F.2d 1149, 1153 (4th Cir. 1988) ("The estate under § 541(a) succeeds only to those interests that the debtor had in property prior to commencement of the bankruptcy case."); *In re Bishop College*, 151 B.R. 394, 398 (Bankr. N.D.Tex. 1993) (holding that a bankrupt's estate receives trust assets "subject to any restrictions imposed by state law, pre-petition").

2924421-03

The case of *In re The Ground Round, Inc.*, 482 F.3d 15, 18 (1st Cir. 2007) from the United States Court of Appeals for the First Circuit is on all fours with the case at bar. In Ground Round, the Court of Appeals was confronted with the issue of a chapter 11 debtor attempting to sell a liquor license subject to an agreement that required the return of a liquor license at the end of the termination of the lease for a set price. The First Circuit concluded that "the formal structure of a bona fide transaction is not lightly to be disregarded in bankruptcy" and found that while the debtor may have had legal title to the liquor license, it had an obligation to restore the license to the original holder of the same at the end of its lease. *In re The Ground Round, Inc.*, 482 F.3d at 18; *see also* 11 U.S.C. § 541(d). Applying equitable principals applicable in bankruptcy, the First Circuit focused on the substance of the transfer of the liquor license to the debtor, rather than the title ownership of the same, and found that the parties had always intended for the license to return to its original holder. In so holding, the First Circuit concluded that if the landlord had been allowed to do so under state law, the landlord would likely have structured the transaction as a lease of the liquor license rather than a sale. 482 F.3d. 21.

In the case at bar, as in *Ground Round¸* the Debtor possesses (at most) temporary title to the Liquor License and is bound to return the Liquor License to Lim Chew in accordance with the Lease Agreement. The Debtor's ownership interest in the Liquor License was always conditioned upon its obligation to transfer the Liquor License back to Lim Chew upon conclusion of the its restaurant operations. To find otherwise merely by action of the Debtor filing for bankruptcy would necessarily destroy the intentions of the parties to this Lease Agreement and would serve to convey a windfall upon the Debtor (and those who co-signed for certain of its debts) that it was never intended to possess.

In the absence of a specific provision of the Bankruptcy Code overriding Lim Chew's right to repurchase the Liquor License, New Jersey law clearly provides that Lim Chew may specifically enforce the Debtor's obligation to transfer the Liquor License to Lim Chew under the Lease Agreement and a mere monetary damages claim is not sufficient. *See Kalogeras v. 239 Broad Avenue, L.L.C.*, 202 N.J. 349 (2010)(holding that specific performance of an agreement to transfer a liquor license was proper and enforceable under New Jersey law).

Accordingly, the Court should not permit the relief sought in the Motion to Sell as the Trustee does not have the right to sell the Liquor License, an asset that it only holds subject to the rights of Lim Chew, free and clear of all claims and interests.

## POINT IV

### LIM CHEW HAS NOT WAIVED ANY OF ITS RIGHTS UNDER THE RIGHT OF FIRST REFUSAL OR THE PROMISSORY NOTE.

Lim Chew has previously provided the Court with a comprehensive response [Dkt. # 42] to the Trustee's argument that Lim Chew has somehow waived its rights to seek the return of the Liquor License by engaging in settlement discussions with the Debtor and the Trustee – an argument that Lim Chew believes is simply without merit. Lim Chew expressly incorporates its previously filed response as if set forth at length herein.

17

## **CONCLUSION**

For the foregoing reasons, Lim Chew respectfully requests that the Court determine that the Trustee may not avoid Lim Chew's equitable and legal rights to the Liquor License by way of rejection by act of law or motion and, accordingly, deny the relief presently sought by the Trustee in both the Motion to Reject and the Motion to Sell.

        CONNELL FOLEY LLP
        85 Livingston Avenue
        Roseland, N.J. 07068
        (973) 535-0500
        *Attorneys for Connell Foley LLP*

BY:   */s/ Stephen V. Falanga*
       Stephen V. Falanga (SF-6414)

DATE:   June 13, 2013