## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Case No. 13-14820 (RG) |
| CIRCLE 10 RESTAURANT, LLC, | Chapter 7 |
| Debtor. | |

**TRUSTEE'S SUPPLEMENTAL BRIEF IN REPLY TO LIM CHEW CORP.'S COMBINED BRIEF IN OPPOSITION TO TRUSTEE'S (I) MOTION FOR ORDER CONFIRMING REJECTION BY OPERATION OF LAW OF RIGHT OF FIRST REFUSAL AGREEMENT, OR ALTERNATIVELY, REJECTION OF INTEGRATED LEASE AGREEMENT, RIGHT OF FIRST REFUSAL, AND OTHER AGREEMENTS, IF ANY, ARISING OUT OF THAT OCTOBER 20, 2010 TRANSACTION BETWEEN THE DEBTOR AND LIM CHEW CORP. AND (II) MOTION TO SELL CLASS C RETAIL PLENARY CONSUMPTION LIQUOR LICENSE**

**RABINOWITZ, LUBETKIN & TULLY, L.L.C.**
293 Eisenhower Parkway, Suite 100
Livingston, New Jersey 07039
(973) 597-9100
*Counsel for Jay L. Lubetkin, Chapter 7 Trustee*

Of Counsel
    Jay L. Lubetkin, Esq.

On the Brief
    Jay L. Lubetkin, Esq.
    Laura E. Quinn, Esq.

## PRELIMINARY STATEMENT

Jay L. Lubetkin, the Chapter 7 Trustee (the "Trustee") for the bankruptcy estate of Circle 10 Restaurant, LLC (the "Debtor") has moved before this Court to sell the liquor license (the "Liquor License") owned by the Debtor pursuant to 11 U.S.C. § 363 (the "Sale Motion").  The Trustee has also moved (the "Rejection Motion") for entry of an Order confirming the rejection by operation of law of the Right of First Refusal Agreement ("ROFR") between the Debtor and Lim Chew Corp. (the "Landlord"), or alternatively for approval of the rejection of the integrated Lease Agreement and ROFR arising out of that October 20, 2010 transaction between the Debtor and the Landlord.  The Landlord objected to the Trustee's Motions asserting that pursuant to the ROFR, it may purchase the Liquor License for a price approximately $675,000 less than the offer received by the Trustee.  (The Landlord's original Objection, filed May 16, 2013, shall be referred to herein as the "Objection").

The Court held a sale auction on May 23, 2013, and May 24, 2013, with the successful bidder, Onyx Equities III, LLC ("Onyx"), bidding $835,000.00 for the Liquor License, and subsequently determined Onyx satisfied the requirements of In re Abbotts Dairies of Pennsylvania, Inc., 788 F. 2d 143 (3d Cir. 1986) in connection with its proposed purchase.  A hearing is set for June 26, 2013, at which time it is anticipated the Court will decide on the Trustee's authority to sell the Liquor License free and clear of the ROFR.  The parties (including Onyx) previously submitted briefs, but the Court requested supplemental submissions after conducting a telephone conference on May 21, 2013 and a hearing on June 4, 2013.

## Landlord's Contentions

The Landlord filed an additional brief (the "Supplemental Opposition") on June 13, 2013, reiterating many of the arguments previously made in its Objection.  While most of the

1

arguments made by the Landlord are identical to those made in the Objection, the Landlord now expands its position, asserting that regardless of whether rejection of the ROFR has occurred or is subsequently approved as part of rejection of the Lease Agreement, rejection has no impact upon the Landlord's alleged entitlement to specific performance of the ROFR. The Landlord also contends that it did not waive its rights in the ROFR. In the Supplemental Opposition, as in its prior Objection, the Landlord relies upon case law which is not controlling, is distinguishable, and/or espouses a highly disfavored minority view.

**<u>Introductory Response to Landlord's Contentions</u>**

First, as held by a majority of bankruptcy courts, the ROFR is an executory agreement and was rejected by operation of law sixty days after the commencement of the Debtor's bankruptcy case. Alternatively, to the extent the ROFR is part of the Lease Agreement as an integrated component of the October 20, 2010 transactions between the Debtor and the Landlord, rejection of the Lease Agreement effects rejection of the ROFR.

Once rejected, the ROFR cannot be specifically enforced.

Even if the ROFR were not an executory contract, the Landlord still would not be entitled to specific performance. A prerequisite to specific performance is the inability to be compensated in monetary damages. Landlord's monetary damages are easily calculable, and such damages constitute a general unsecured claim in this case.

The Landlord's contention that the Debtor held only temporary rights to the Liquor License (as opposed to outright ownership) is an attempt to "create" facts similar to those in place in <u>In re The Ground Round, Inc.</u>, 482 F.3d 15 (1st Cir. 2007), a First Circuit case which has been found unpersuasive by other courts. Moreover, the temporary rights granted in <u>Ground Round</u> involved one dollar in consideration, while the outright sale of the Liquor License from

the Landlord to the Debtor herein required principal payments of $600,000.  In this case the Debtor holds absolute, unfettered legal title to the Liquor License, and the Trustee may sell the Liquor License free and clear of the Landlord's ROFR.

Despite the Landlord's denial, its pre-petition actions more convincingly indicate an acknowledgement that any attempt to purchase the Liquor License for the below market price in the ROFR could not be sustained and amounts to a wavier.  The ROFR is an improper restraint on the Liquor License, contrary to law, which authorizes encumbrances upon a liquor license only for taxes.

Finally, allowing the Landlord to consummate a below market purchase would result in a windfall to the Landlord to the substantial detriment to the Debtor's creditors, and thus, should not be countenanced by this Court of equity.

## LEGAL ARGUMENT

## POINT I

## THE LANDLORD'S RIGHT OF FIRST REFUSAL AND THE
## LEASE AGREEMENT ARE EXECUTORY CONTRACTS SUBJECT TO REJECTION

As it argued in its original Objection, the Landlord again asserts in its Supplemental Opposition that the ROFR is not an executory contract, and therefore not capable of rejection by the Trustee.   In its Supplemental Opposition, the Landlord wholly ignores the Trustee's contention that the ROFR is part of the Lease Agreement.

The ROFR is either a separate executory contract, which was rejected by operation of law on May 7, 2013, (see 11 U.S.C. §  365(d)(1)), or an integrated part of the Lease Agreement, which lease is the subject of the Trustee's Rejection Motion.  Whether the ROFR is viewed as a separate agreement, or part of the entire Lease Agreement, both are executory and may be rejected by the Trustee.

**A.**      **The Absence of the ROFR On Schedule G Has No Impact on the Trustee**

In support of its argument that the ROFR is not executory, the Landlord notes that the Debtor did not list such as an executory on Schedule G.  The Debtor's failure to list the ROFR or the Lease Agreement as executory contracts is irrelevant.  Even a Chapter 11 debtor is not be estopped from arguing that a contract is executory by its own failure to list the contract in Schedule G.  See, In re Walnut Associates, 145 B.R. 489, 499 (Bankr.E.D.Pa. 1992).  Given the lack of preclusive impact on a debtor itself, a debtor's failure to list an executory contract on Schedule G can have no detrimental effect upon a subsequently appointed trustee.

**B.**      **The ROFR is an Executory Contract and Has Been Rejected By Operation of Law**

The Third Circuit has adopted the "Countryman" test for determining whether a contract is executory.  An executory contract is one in which "the obligation of both the bankrupt and the

4

other party to the contract are so far unperformed that the failure of either to complete

performance would constitute a material breach excusing performance of the other."  Sharon

Steel Corp. v. National Fuel Gas Distribution Corp., 872 F.2d 36, 39 (3d Cir. 1995) (quoting

Countryman, Executory Contracts in Bankruptcy, Part 1, 57 Minn. L. Rev. 439, 460 (1973)).  A

debtor's right to assume or reject an executory contract under § 365 should be interpreted

broadly, and, similarly, "the definition of an executory contract should also be very broad."  In re

III Enterprise, Inc. V, 163 B.R. 453, 468 (Bankr. E.D. Pa. 1994); In re Walnut Assoc., 145 at

495.

        In In re Kellstrom Industries, Inc., the Bankruptcy Court for the District of Delaware

specifically held that a right of first refusal is an executory contract subject to rejection:

> A review of the right of first refusal in this case confirms the
> executory nature of the contract. The Debtors are obligated to give
> notice to Sawgrass of any offer to purchase the price and to sell to
> it if it matches the offer. Sawgrass is required to exercise or waive
> the right of first refusal within thirty days of the notice.  Therefore,
> we conclude, like the majority of the courts before us, that the right
> of first refusal granted to Sawgrass is an executory contract which
> may be rejected by the Debtors under section 365. (footnote
> omitted).

In re Kellstrom Indus., Inc., 286 B.R. 833, 834-35 (Bankr. D. Del. 2002).

        As noted by the Bankruptcy Court for the Eastern District of Virginia, the majority of

courts that have examined the issue take the view that a contingent obligation satisfies the

definition of an executory contract even if the contingency has not been triggered as of a debtor's

petition date:

> [D]ebtor's position, which finds ample support in the case law, is
> that a contingent obligation, even though not yet triggered on a
> debtor's petition date, is nevertheless executory until expiration of
> the contingency because "[u]ntil the time has expired during which
> an event triggering a contingent duty may occur, the contingent
> obligation represents a continuing duty to stand ready to perform if

the contingency occurs." *Lubrizol,* 756 F.2d at 1046; *see also CB Holding Corp.,* 448 B.R. 684, 689 (Bankr.D.Del.2011) (holding that a right of first refusal is executory, noting that "the majority of courts" have so held, and criticizing the *Bergt* decision and others that held otherwise); *In re AbitibiBowater, Inc.,* 418 B.R. 815, 830–31 (Bankr.D.Del.2009); *In re Simon Transp. Servs.,* 292 B.R. 207, 219–20 (Bankr.D.Utah 2003); *In re Kellstrom Indus., Inc.,* 286 B.R. 833, 834–35 (Bankr.D.Del.2002); *In re Riodizio, Inc.,* 204 B.R. 417, 424 (Bankr.S.D.N.Y.1997). *In re A.J. Lane & Co.,* 107 B.R. 435, 437 (Bankr.D.Mass.1989) ("The contingency of the option exercise does not make the agreement non-executory."); *In re Hardie,* 100 B.R. 284, 287 (Bankr.E.D.N.C.1989); *G–N Partners,* 48 B.R. 462, 465 (Bankr.D.Minn.1985); *cf. In re Safety– Kleen Corp.,* 410 B.R. 164, 167 (Bankr.D.Del.2009) (holding that contingent indemnity obligations were sufficient to render a contract executory; the option covenants were executory both as of the petition date and on an ongoing basis thereafter).

In re RoomStore, Inc., 473 B.R. 107, 112-13 (Bankr. E.D. Va. 2012).

Under the ROFR, the Debtor is obligated to give the Landlord notice of a sale offer (a material future performance obligation) and the Landlord in turn must respond to that offer within fifteen days (also a material future performance obligation).  The fact that there allegedly had been no event prior to the bankruptcy filing which triggered the performance obligations under the ROFR is irrelevant to its status on an executory contract.  Kellerstrom; RoomStore.

The Landlord cites In re Robert L. Helms Construction & Dev., Inc., 139 F.3d 702 (9th Cir. 1998) and In re Bergt, 241 B.R. 17 (Bankr. D. Alaska 1999), (which relied in part upon Helms), in support of the extremely disfavored minority position that a contract is not executory when the triggering event for a contingent obligation had not occurred by the time a bankruptcy petition was filed.  As indicated, these two cases represent the disfavored minority view, and have been expressly rejected by the majority of bankruptcy courts.  As noted by the Bankruptcy Court for the District of Delaware in CB Holding:

The Court has already found the *Bergt* decision unpersuasive and contrary to the majority of courts which have held that a right of first refusal is an executory contract subject to rejection under

section 365. *In re Kellstrom Indus., Inc.,* 286 B.R. 833, 834–35 (Bankr.D.Del.2002) (citing *In re Coordinated Financial Planning Corp.,* 65 B.R. 711, 713 (9th Cir. BAP 1986); *In re Fleishman,* 138 B.R. 641, 646–47 (Bankr.D.Mass.1992); *In re A.J. Lane & Co., Inc.,* 107 B.R. 435, 437 (Bankr.D.Mass.1989); *In re Hardie,* 100 B.R. 284, 287 (Bankr.E.D.N.C.1989); *In re G–N Partners,* 48 B.R. 462, 466 (Bankr.D.Minn.1985); *In re Waldron,* 36 B.R. 633, 636–37 (Bankr.S.D.Fla.1984), *rev'd on other grounds,* 785 F.2d 936 (11th Cir.1986)). *See also In re AbitibiBowater, Inc.,* 418 B.R. 815, 830–31 (Bankr.D.Del.2009) (noting that "[n]umerous other courts have determined that contingent option agreements are executory when material obligations will arise on each side if the option is exercised.").

448 B.R. at 689.   Thus, there are legions of cases rejecting the minority analysis on which Landlord's position depends.   Even the <u>Bergt</u> Court, in applying the <u>Helms</u> decision, criticized the reasoning of the <u>Helms</u>' court and found that "there seems to be little equity or logic in *Helms*' distinction about whether an option is executory or not."   241 B.R. at 20.

The Landlord attempts to circumvent the vast criticism of <u>Bergt</u> and <u>Helms</u> by noting that whether a contingent obligation defeats the executory nature of a contract is "unsettled," and a "matter of first impression."   The overwhelming majority of courts have ruled that a right of first refusal is an executory contract subject to rejection.   The logic of these cases is sound, and there is "little equity or logic" in the minority view adopted in only two cases.

Here, both the Debtor and the Landlord have unperformed obligations with regard to the ROFR.   Although the Debtor's obligation to offer the Liquor License for sale to the Landlord is contingent upon receipt of an offer, the ROFR nevertheless constitutes an executory contract because it contains future performance obligations of both the Debtor and the Landlord.   The rationale of the majority of courts on this issue is in line with the broad definition to be applied to

an executory contract, and should be determinative here.  Accordingly, as a separate executory

contract, the ROFR has been automatically rejected as of May 7, 2013.[1]

## C.     Even if the ROFR is Part of the Lease, Rejection is Appropriate

The Bankruptcy Court must look to state law to determine whether a transaction is

divisible.  See, e.g., In re T&H Diner, Inc., 108 B.R. 448, 453 (D.N.J. 1989).  Under New Jersey

law, "the determination of whether a transaction constitutes one or several contracts is primarily

based upon the intentions of the parties," and such intentions are to be gleaned from "the

language and subject matter of the agreement," from the "circumstances surrounding the

agreement," and from "the face of the contract."  Id. at 453-454; see also, In re L.D. Patella

Const. Corp., 114 B.R. 53,57 (D.N.J. 1990).

In the Objection, the Landlord argues that "[a]t no time was it ever intended by the

parties that [the Landlord] was transferring its ownership interest in the Liquor License to the

Debtor separate and apart from the lease of Property…"  See Objection, p. 2.  The Landlord

further attempts to define the "Lease Agreement" as consisting of the Lease, the Promissory

Note, and the ROFR.  See Objection, p. 4, ¶ 8.  Thus, the Landlord has expressly acknowledged

that there is one integrated agreement containing the real property lease, the ROFR, and the

Promissory Note.   It is indisputable that the Lease Agreement, the Promissory Note, and the

ROFR were all executed on the same day, as part of an integrated transaction.

The fact that the Lease Agreement is an executory contract is indisputable.  To the extent

the ROFR is deemed an integral part of the entire agreement and understanding between the

parties consummated on October 20, 2010, and may not be severed from the Lease Agreement,

---

[1] As previously noted, as a separate executory contract, the ROFR was automatically rejected
after 60 days in accordance with 11 U.S.C. 365(d)(1).  Indeed, the Landlord seems to concede as
much in its original Objection.  See Objection, p. 11, ¶ 36.

the Trustee's pending request for rejection of the "Lease" (including the ROFR) should be approved, as such constitutes the good faith exercise of the Tenant's business judgment, and will enable the sale of the Liquor License to proceed unencumbered.

Moreover, to the extent the ROFR is deemed part of the Lease Agreement, it is well-established that an executory contract may not be assumed in part and rejected in part.  See, e.g., In re Philadelphia Newspapers, LLC, 424 B.R. 178, 183 (Bankr. E.D.Pa. 2010); In re AbitibiBowater Inc., 418 B.R. 815, 822-23 (Bankr. D.Del. 2009) ("A contract will not be bifurcated into parts that will be rejected and those that will not…Correspondingly, all of the contracts that comprise an integrated agreement must either be assumed or rejected, since they all make up one contract.") (quoting In re Exide Tech., 340 B.R. 222, 228 (Bankr. D.Del. 2006)). A contract must be assumed or rejected entirely, "shedding obligations as well as benefits." Philadelphia Newspapers, 424 B.R. at 183.  Hence, upon rejection of the Lease Agreement, the ROFR (constituting part and parcel of the Lease Agreement) shall also be rejected.

## POINT II

## THE LANDLORD IS NOT ENTITLED TO SPECIFIC PERFORMANCE

The Landlord argues that even if the ROFR is rejected, it is nevertheless entitled to specific performance. The Trustee maintains that whether the ROFR is rejected or non-executory, in no event is the Landlord entitled to specific performance. In either case, the Landlord's position remains relegated to that of a pre-petition, unsecured claimant for its damages.

### A.    Once Rejected, the ROFR Cannot be Specifically Enforced

Under New Jersey law, "specific performance is an equitable remedy that is appropriate when the legal remedy of compensation is inadequate or incalculable." In re Nickels Midway Pier, LLC, 341 B.R. 486, 500 (D.N.J. 2006). The Landlord concedes that, with regard to a rejected contract, if monetary damages are a "viable alternative" to an equitable remedy, then it would not be entitled to specific performance. See Supplemental Opposition, pp. 11-12. As noted by the Court in In re Nickels Midway Pier, LLC, "[t]he fact that a creditor's specific performance remedy is preferable to a damages remedy does not mean that a creditor's right to specific performance cannot be reduced to a claim in bankruptcy." 341 B.R. 486, 500 (D.N.J. 2006).

As aptly noted by the Bankruptcy Court in In re Nickels Midway Pier, LLC, "disallowing [the Chapter 11 debtor's] opportunity to reject the Agreement because [the creditor] has a claim for specific performance would be tantamount to allowing [the creditor] to circumvent [the debtor's] right to reject under § 365(a)[.]" 332 B.R. 262, 274 (Bankr. D.N.J. 2005) (rev'd on other grounds, 341 B.R. 486 (D.N.J. 2006)). The In re Nickels Midway Pier, LLC Bankruptcy Court cites Lubrizol Enters., Inc. v. Richmond Metal Finishers, Inc., 756 F.2d 1043, 1048 (4th

Cir. 1985), for the proposition that "'allowing specific performance would obviously undercut the core purpose of rejection under § 365(a), and that consequence cannot therefore be read into congressional intent.'"

In In re Fleishman, 138 B.R. 641, 645-646 (Bankr. D.Mass. 1992), the Court held that a right of first refusal was merely a personal contractual obligation between the parties[2] and executory. As a rejected executory contract, the Court noted that it was considered to have been breached immediately before the debtors' petitions were filed, and "[the creditor] could then, conceivably, either claim money damages for the breach or equitable relief in specific performance." Id. at 647. The Court held that the creditor was not entitled to specific performance:

> Specific performance should not be permitted where the remedy would in effect do what § 365 meant to avoid, that is, impose burdensome contracts on the debtor. [*In re A.J. Lane & Co., Inc.*, 107 B.R. at 439] (right of specific performance subordinate to debtor's rejection rights); *In re Waldron*, 36 B.R. [633], 642 n. 4 ("The Code does not permit specific performance as a remedy resulting from the rejection of an executory contract under 365.") Accordingly , the Trustee is able to sell the Debtors' interests free and clear of the Right of First Refusal, and the Trustee's right to reject the Right of First Refusal takes precedence over any right to specific performance [the creditor] may allege.

Id. at 648.

While the majority of case law holds that a creditor cannot specifically enforce an executory contract which has been rejected, the Landlord argues to the contrary, citing In re Walnut Associates, 145 B.R. 489 (Bankr. E.D.Pa. 1992), In re Ben Franklin Hotel Assocs., 186 F.3d 301 (3d Cir. 1999), and In re Nickels Midway Pier, LLC, 341 B.R. 486 (D.N.J. 2006).

---

[2] In Fleishman, the right of first refusal was in connection with the sale of land, so the court was faced with the issue of whether the right of first refusal was merely a personal contractual obligation or a covenant running with the land. Id. at 643. Here, it is clear that the ROFR is a simple contractual obligation.

These cases are either distinguishable and/or do not support the Landlord's proposition that rejected executory contracts may be specifically enforced.

The case relied heavily upon by the Landlord, In re Ben Franklin Hotel Assocs., is distinguishable from the case at bar.  In re Ben Franklin Hotel Assocs. did not involve the rejection of an executory contract; rather, it involved a former partner's equitable demand for reinstatement of its partnership interest, and the assertion such was not a "claim" which could be discharged in bankruptcy.  186 F.3d at 305.  Therefore, the Ben Franklin Hotel court did not have to address the interplay between specific performance and a debtor-in-possession's ability to reject pursuant to § 365.  Furthermore, ownership of a Liquor License having a specific provable market value is not akin to the unique partnership interest at issue in In re Ben Franklin Hotel.

In In re Walnut Assocs., the court refrained from deciding whether the agreement in that case was specifically enforceable under state law.  The court stated that "[rejection] mean[s] that the non-debtor party to the contract subject to rejection is limited in its claims for breach to the treatment accorded to a debtor's general unsecured creditors."  145 B.R. at 494.  The court also acknowledged that its holding, (i.e., that specific enforcement of a rejected executory contract should turn on the issue of whether it is specifically enforceable under state law, rather than upon merely whether the contract is executory), was a "new approach."  Id. at 495.  In fact, the Bankruptcy Court in In re Nickels Midway Pier, LLC disapproved of the holding in In re Walnut Assocs., noting that the judge in In re Walnut Assocs. "cites no authority for [the] assertion" that "'a non-debtor should be able to enforce a contract against a debtor, irrespective of his rejection of the contract.'"  332 B.R. at 277, n. 4.

Finally, In re Nickels Midway Pier, LLC, supports the Trustee's position.  In In re Nickels Midway Pier, LLC, the District Court "note[d] that if it were to accept [the creditor's] argument that the availability of a specific performance remedy takes an action outside the definition of a claim dischargeable in bankruptcy, it would render the rejection provisions of § 365 meaningless with regard to many contracts."  341 B.R. at 500.  Again, as mentioned, *supra*, the In re Nickels Midway Pier, LLC court emphasized that "[t]he fact that a creditor's specific performance remedy is preferable to a damages remedy does not mean that a creditor's right to specific performance cannot be reduced to a claim in bankruptcy."  Id.  In other words, just because the Landlord might have the right to specific enforcement of the ROFR in state court does not mean that this right must be enforced in bankruptcy court when an alternative damages remedy is available.

The Landlord cites Kalogeras v. 239 Broad Avenue, L.L.C., 202 N.J. 349 (2010), in support of its argument that courts will enforce agreements to transfer liquor licenses.  In Kalogeras, the court addressed whether the transfer of a liquor license pursuant to the sale of a business was specifically enforceable.  Id. at 352.  The court did not address whether there was an available alternative remedy in the form of monetary damages, as this issue was not raised, nor does the case address the impact of rejection under the Bankruptcy Code.

Even if it were permissible to specifically enforce a rejected executory contract, a result which runs contrary to the purpose of § 365 of the Bankruptcy Code, the Landlord admits that specific enforcement is only available if there is no "viable alternative" in the form of monetary damages.  Moreover, it is the Landlord's burden to establish that monetary damages are insufficient or inadequate.  See, In re Ruth, 2013 WL 139265, *6 (Bankr. E.D.Tex.).  In In re Ruth, the court held that "if state law makes monetary damages available as an alternative to

specific performance, then the equitable relief sought constitutes a 'claim' dischargeable in bankruptcy." Id. at *5.  The creditor/plaintiff in In re Ruth sought to enforce a covenant not to compete, and the court held that it was not entitled to equitable relief, noting:

> …Plaintiff has otherwise failed to sustain its burden to demonstrate by a preponderance of the admitted evidence that the monetary damages otherwise available to it under Michigan law are in any way insufficient or inadequate as recompense for its injuries.  In fact, though Plaintiff's representative testified regarding the general purpose of covenants not-to-compete in franchise agreements and the importance of enforcing such covenants, and though Plaintiff generically argued that monetary damages might be difficult to calculate or lead to "instability" within the franchise system, the evidence presented by the Plaintiff was far short of that necessary to establish that the obligation that the Plaintiff seeks to enforce, and the deterrent effect it might seek to create through that enforcement, cannot be obtained through an award of monetary damages.

Id. at *6.

If a restrictive covenant is not subject to specific performance, how can a Liquor License, a discrete tangible asset easily subject to monetary valuation, not be the subject of an adequate damage award?

The Landlord's assertion that the Liquor License is so unique that monetary damages are inadequate has no factual basis.  The Landlord simply states without evidential support, that "its loss of the same can[not] be calculated with any reasonable certainty."  The Landlord further argues that "merely assigning the value of [its] lost rights based upon the price that the Liquor License has been auctioned for does little to account for the sweeping damages that will occur to Lim Chew's business and the value of its property, now and in the future, by no longer having access to the Liquor License."  The Landlord further provides that "this Court [will] need [to] engage in tortured legal gymnastics to convert something into a monetary claim where such a calculation is wildly speculative at best."  See Supplemental Opposition, pp. 13-14.

The Landlord's generic arguments are simply without basis or merit. The Landlord's damages can easily be assigned a monetary value. Essentially, the Landlord asserts its entitlement to buy the Liquor License for a specific, below market price. The Trustee has been able to generate a market based purchase price of $835,000. Thus, the Landlord's damages are the difference between its desired price and the market price, plus the remaining principal payments due from the Debtor under the Promissory Note,[3] plus its lease rejection damages, plus any pre-petition lease arrearages. In fact, Landlord's proof of claim provides a precise and detailed claims itemization, belying any inability to ascertain damages with precision. Accordingly, the Landlord has a specific monetary "claim,"[4] and no "right" to specific performance.

In its Preliminary Statement to the Supplemental Opposition, FN 2, the Landlord argues that even if its damages were calculable, it should be the burden of the Trustee to show that rejection of the ROFR would benefit the estate as a whole, rather than just increase the size of the creditor body. While the Trustee disputes that he has any such burden (and the Landlord offers no support for this position), rejection of the ROFR would clearly benefit the estate. The Liquor License is essentially the estate's only asset, and its sale for $835,000 will produce funds for unsecured creditors' claims (including the Landlord), whereas enforcement of the rejected ROFR will result in no funds to the estate and a windfall to the Landlord.

Although the Landlord argues that monetary damages cannot replace the Liquor License, he offers no support for this position, other than to generally assert that "sweeping damages will

---

[3] It is unclear as to how many payments the Debtor made pursuant to the Promissory Note, but this information is readily available to the Landlord.

[4] Based upon the purchase price the Trustee was able to obtain for the Liquor License, the Landlord stands to gain a significant payout on account of its unsecured claim.

occur to [the Landlord's] business and the value of its property[.]"[5]  The Landlord also offers no

evidence that it cannot obtain another liquor license.  While the Township of Livingston may not

have any additional licenses available, there are holders of liquor licenses throughout the State

who may be willing to sell them.  Moreover, the Landlord cannot have it both ways, *e.g.*, seek to

recover the $600,000 purchase price from the sale of the Liquor License to the Debtor, while

simultaneously asserting it somehow never transferred the asset.  The Landlord's speculative

assertions that monetary damages are inadequate are simply generic protestations, not enough to

defeat the Trustee's right to reject the ROFR and relegate the Landlord to a general unsecured

creditor.

**B.    Even if the ROFR Were Not Executory, the Landlord Would Not be Entitled to Specific Performance**

It is well-established that parties to pre-petition non-executory contracts are entitled to no

more than general unsecured claims.  See, *e.g.*, In re Waste Systems International, Inc., 280 B.R.

824, 827 (Bankr. D. Del. 2002) ("Since the [applicable agreement] is a pre-petition non-

executory contract, any claims arising from it are general unsecured claims.")  As the holder of a

mere general unsecured claim, authorizing the transfer of the Liquor License, the primary asset

of this estate, to the Landlord under the rejected ROFR would allow it to obtain a windfall to the

substantial detriment of other unsecured creditors.

Furthermore, as argued in Point II, *infra*, specific performance is only available as a

remedy if the creditor has a property right recognized under applicable state law.  See, Ground

Round, 482 F.3d at 19.  Here, the Landlord does not hold legal title to the Liquor License

(contrary to the factual underpinnings in Ground Round).  In addition, New Jersey law prohibits

---

[5] The Trustee notes that the Landlord's premises have not done well historically, regardless of its
holding of the Liquor License.  Several restaurant businesses have failed at that location.

the Landlord from having a security interest in the Liquor License. <u>See</u> N.J.S.A. § 33:1-26.[6] The New Jersey District Court has also held that a liquor license is unavailable as collateral for a security interest pursuant to New Jersey's statutory scheme. <u>In re Chris-Don, Inc.</u>, 367 F.Supp.2d 696, 701 (D.N.J. 2005).

In substance, the remedy the Landlord suggests this Court should approve not only violates the public policy inherent in 11 U.S.C. § 365 respecting a debtor's ability to reject executory contracts, but it also runs afoul of the public policy behind the prohibition on liens on liquor licenses, and the State's interest in approving any liquor license owner. In substance, adopting the Landlord's argument effectively authorizes the creation of secret, undisclosed, non-public liens on liquor licenses (something the New Jersey legislature has expressly prohibited) and contravenes the process of State approval of any liquor license holder, which approval process includes, *inter alia*, criminal background checks. Landlord's argument requires the complete dismissal of the important public policy implications inherent in the State's statutory scheme and the State's creation of the Alcoholic Beverage Commission.

Finally with regard to specific performance under state law, the Court must be cognizant of the fact that the remedy of specific performance "is a discretionary one resting in equitable principles. Relief of this character rests, not upon what the court must do, but rather upon what, in view of all the circumstances, it ought to do." <u>Kilarjian v. Vastola</u>, 379 N.J.Super. 277, 284

---

[6] In fact, the Trustee surmises the position being espoused by the Landlord is a direct and natural consequence of its failure to "secure" the sale of the Liquor License in the traditional fashion, namely, by obtaining a pledge of the equity interests in the Debtor to secure the payments expected to be made for the purchase of the Liquor License, and to perfect that security interest in the equity interests by obtaining possession of the certificates evidencing such equity. Had the Landlord implemented such protections in connection with the October 20, 2010, transaction, upon any prepetition default by the Debtor, the equity interests in the Debtor could have been removed from escrow, and the Landlord as the "owner" of those equity interests, could have then exercised dominion and control over the Liquor License accordingly.

(Ch. Div. 2004).  Even in circumstances where neither party has acted unfairly, "[i]f enforcement of the contract will be attended with great hardship or manifest injustice, the court will refuse its aid."  Id. at 285.  Along this same line of reasoning, "[i]t is well settled that specific performance of a contract will not be decreed if the specific performance to be compelled is contrary to public policy."  Garlinger v. Garlinger, 129 N.J. 37, 40 (Ch. Div. 1974).

Here, aside from the fact that the Landlord has an adequate remedy at law, it would also be contrary to public policy and result in a manifest injustice to specifically enforce the ROFR.  Specifically enforcing the ROFR would unfairly elevate the treatment of Landlord above other general unsecured creditors.  Accordingly, even if the ROFR were not an executory contract and not subject to rejection, the Landlord should still have no more than a general unsecured claim for any actual damages resulting from the Trustee's sale of the Liquor License.

**POINT III**

**THE TRUSTEE HAS THE AUTHORITY TO SELL THE
LIQUOR LICENSE FREE AND CLEAR OF THE
LANDLORD'S RIGHT OF FIRST REFUSAL**

In the Objection and Supplemental Opposition, the Landlord argues that the Debtor possessed only temporary rights to the Liquor License during the operation of its restaurant at the Landlord's property (the "Property"), implicitly asserting that once the Debtor stopped operating, its Liquor License, having a value proven to be $835,000, somehow evaporated, attempting to create facts to align itself with the Ground Round case.

Ground Round is in fact highly distinguishable.   In the Objection and Supplemental Opposition, the Landlord (presumably unintentionally) mischaracterizes the facts in Ground Round by stating that "[i]n Ground Round, the [First Circuit] was confronted with the issue of a chapter 11 debtor attempting to sell a Liquor License subject to a right of first refusal." Objection, p. 9, ¶ 32.  However, the Ground Round case involved an addendum to a real property lease, which provided:

> Lessor shall transfer to Lessee in consideration of this Lease and One ($1) Dollar, the Liquor License of Lessor at the demised premises. . .At the termination of the Lease, Lessee shall, in consideration of this Lease and One ($1) Dollar transfer such Liquor License to Lessor free of all claims or violations…

Id.  Ground Round thus did not involve a right of first refusal at all, but a lease grant of temporary rights to the liquor license for one dollar, and a lease obligation to return the liquor license at the end of the lease term.  Id. at 18.   Unlike the temporary liquor license rights granted in Ground Round occasioned by consideration of one dollar, this case involves the outright sale of the Liquor License to the Debtor for a $600,000 purchase price!

19

As recognized by the Landlord, and as noted by the <u>Ground Round</u> court, the transaction in Ground Round was in substance effectively a "lease" of the liquor license, rather than a transfer of ownership.  <u>Id.</u> at 19.  Based upon the landlord's perceived property right as the continuing owner/lessor of the liquor license, the <u>Ground Round</u> court held that the landlord's property rights in and to the liquor license survived the bankruptcy of the lessee and remained enforceable.  <u>Id</u>.  The Court found the debtor's rejection of the lease inapposite, concluding:  "If Pennsylvania law permitted a lease of the license, that is likely what the parties would have done; and then – when Ground Round rejected the lease – any right Ground Round held in the license would automatically have expired."  <u>Id.</u> at 21.

In <u>In re CB Holding Corp.</u>, the Bankruptcy Court for the District of Delaware carefully examined <u>Ground Round</u>, and rejected its holding and rationale:

> …the Court finds the analysis of the First Circuit in *Ground Round* unpersuasive. The First Circuit acknowledged that there are cases contrary to its ruling, including an earlier First Circuit decision. *Ground Round,* 482 F.3d at 18 n. 1 (citing *Midway Motor Lodge of Elk Grove v. Innkeepers' Telemanagement & Equip. Corp.,* 54 F.3d 406, 407 (7th Cir.1995) (holding that "[r]ejection avoids specific performance" and results only in a claim for damages); *In re Richmond Metal Finishers, Inc.,* 756 F.2d 1043, 1048 (4th Cir.1985) (concluding that upon rejection, other party to contract "could not seek to retain its contract rights in the technology by specific performance even if that remedy would ordinarily be available upon breach of this type of contract"); *Gulf Petro., S.A. v. Collazo,* 316 F.2d 257, 260 (1st Cir.1963) (finding rejection of land sale contract precluded specific performance but finding that escrow agreement was separate and non-executory thereby entitling buyer to return of deposit held in escrow)).

<u>In re CB Holding Corp.</u>, 448 B.R. 684, 689-90 (Bankr. D. Del. 2011).

In the case at bar, the transfer of the Liquor License was an actual sale, and not akin to a lease for nominal consideration with an absolute obligation to return the license to the Landlord at the expiration of the lease term.  Here, the Debtor became obligated to pay the Landlord

$600,000.00 for the purchase of the Liquor License.  Furthermore, at no time did the Landlord have an absolute right to obtain the Liquor License at the expiration of the Lease Agreement with the Debtor.  Rather, the Landlord here had at best a right of first refusal memorialized, or as part of, an executory contract fully capable of rejection in a bankruptcy proceeding.

Because the Landlord here does not have an ownership interest in the Liquor License, it has no "property rights" in the Liquor License pursuant to New Jersey state law.[7]  The rationale of Ground Round is not only unpersuasive, but also inapplicable.

The Landlord here has nothing more than a monetary claim for damages.  The Landlord's position would require this Court to adopt a rule which would render the rejection of an executory contract meaningless, effectively rewriting a primary provision of the Bankruptcy Code.

---

[7] It is questionable whether even an ownership interest in a Liquor License, while property of the estate under the broad definition in § 541 of the Bankruptcy Code, is a property right under New Jersey state law.  "A license to sell intoxicating liquor is not a contract nor is it a property right. Rather, it is a temporary permit or privilege to pursue an occupation which is otherwise illegal." In re Club ""D" Lane, Inc., 112 N.J. Super. 577, 579, 272 A.2d 302, 303 (App. Div. 1971); see also, Cavallaro 556 Valley St. Corp. v. Div. of Alcoholic Beverage Control, 351 N.J. Super. 33, 40-41, 796 A.2d 938, 942-43 (App. Div. 2002) ("It is well accepted that ownership of a Liquor License is a privilege and not a property right, *Mazza v. Cavicchia,* 15 *N.J.* 498, 105 *A.*2d 545 (1954); they are only 'annual licenses which may be renewed annually.' *Lubliner v. Board of ABC,* 33 *N.J.* 428, 442, 165 *A.*2d 163 (1960). *See also Barba v. Div. of Alcoholic Beverage Control,* 96 *N.J.A.R.*2d (ABC) 39, 40 ('a license to sell or serve alcoholic beverages is a privilege, not a right')").  In fact, New Jersey statutory law does not permit security interests to be granted in Liquor Licenses.  N.J.S.A. § 33:1-26.

## POINT IV

## THE LANDLORD HAS WAIVED ITS RIGHT TO DEMAND SPECIFIC ENFORCEMENT OF THE ROFR

In response to the Trustee's argument that it has waived its right to demand specific enforcement of the ROFR, the Landlord refers to its previously submitted May 22, 2013 correspondence (Dkt. #42).   In that correspondence, the Landlord notes that the Debtor was always aware of its reservation of the right to assert the ROFR and that it expressly reserved this right in its correspondence with the Trustee.  The correspondence between the Landlord and the Debtor, however, is inconsistent with this position.

As argued by the Trustee in his May 22, 2013 letter to the Court (Dkt. #40), the Debtor and the Landlord engaged in significant substantive negotiations prior to the bankruptcy filing. It was not until after the bankruptcy filing that the Landlord's counsel reserved the Landlord's right to seek specific performance to purchase the Liquor License, apparently in fear of the impending rejection of the underlying contract.  As an equitable remedy, specific performance "must be asserted promptly unless there are circumstances which would excuse prompt action." Abdallah v. Abdallah, 359 F.2d 170, 174 (3d Cir. 1966). The Landlord's assertion of its right to enforce the ROFR comes too little, too late, and by actively participating in Liquor License purchase negotiations with the Debtor pre-petition, it has waived any specific performance remedy.

## <u>CONCLUSION</u>

For the foregoing reasons, the reasons set forth in the Trustee's Motion to Sell, the Trustee's Rejection Motion, the Trustee's original Reply to the Objection of the Landlord, the Trustee's May 22, 2013 letter to the Court, and in the interests of justice, it is respectfully requested that the Court grant the Trustee's Motion to Sell and Rejection Motion, and deny the Landlord's request for specific performance of the rejected ROFR.

**RABINOWITZ, LUBETKIN & TULLY, L.L.C.**
*Counsel for Chapter 7 Trustee*


By:_____/s/ Jay L. Lubetkin_____
        JAY L. LUBETKIN

Dated:  June 21, 2013


F:\Client_Files\A-M\Circle 10\Sale Motion.Supplemental Reply to Objection.Brief.doc

23