**RABINOWITZ, LUBETKIN & TULLY, LLC**
293 Eisenhower Parkway, Suite 100
Livingston, NJ 07039
(973) 597-9100
Jay L. Lubetkin, Esq.
*Counsel to Jay L. Lubetkin,*
*Chapter 7 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>CIRCLE 10 RESTAURANT, LLC,<br><br>Debtor. | Case No. 13-14820 (RG)<br><br>Chapter 7<br><br>Honorable Rosemary Gambardella |

**APPLICATION FOR ORDER APPROVING SETTLEMENT**
**BETWEEN THE CHAPTER 7 TRUSTEE AND LIM CHEW CORP.**

The Application of Jay L. Lubetkin, Chapter 7 Trustee (the "Trustee") for the bankruptcy estate of Circle 10 Restaurant, LLC (the "Debtor"), by and through his attorneys, Rabinowitz, Lubetkin & Tully, L.L.C., for the entry of an Order approving a settlement between the Chapter 7 Trustee and Lim Chew Corp. (the "Landlord"), respectfully shows as follows:

1. On March 8, 2013, the Debtor filed a Voluntary Petition pursuant to the provisions of Chapter 7 of the United States Bankruptcy Code.

2. On March 11, 2013, Jay L. Lubetkin was appointed as Chapter 7 Trustee for the Debtor's bankruptcy estate.

3. On March 13, 2013, the Court entered an Order authorizing the Trustee's retention of Rabinowitz, Lubetkin & Tully, L.L.C. as counsel to the Trustee.

4. The primary asset of the within bankruptcy estate consists of a plenary retail consumption liquor license (the "Liquor License") previously utilized at the Debtor's place of business which was leased from the Landlord pursuant to a Lease Agreement.

5. In connection with the Debtor's execution of the Lease Agreement, it also executed a Right of First Refusal Agreement by which it granted the Landlord the right of first refusal to purchase the Liquor License for a sum of $100,000, plus the principals payments paid as of such time by the Debtor on account of a $500,000 promissory note executed in favor of the Landlord arising out of the Debtor's purchase of the Liquor License from it. According to the Landlord, the purchase price under the right of first refusal would be $135,000.

6. The Liquor License was independently appraised at the request of the Trustee by A. Atkins Appraisal Corp. for $400,000.

7. By prior Application to the Court, the Chapter 7 Trustee sought Bankruptcy Court approval of the sale of the Liquor License to Onyx Equities III, LLC ("Onyx") for a purchase price of $500,000. Pursuant to bidding procedures approved by the Court, an auction for the purchase of the Liquor License premised upon Onyx's stalking horse bid took place before the Court and ultimately, Onyx submitted the highest and best offer of $835,000 for the purchase of the Liquor License.

8. Subsequently, the Court entered an Order confirming Onyx's compliance with <u>In re Abbotts Dairies of Pennsylvania, Inc.</u>, 788 F. 2d 143 (3d Cir. 1986).

9. At all times from and after the filing of the Trustee's Application for the sale of the Liquor License, the Landlord objected to the sale of the Liquor License, asserting, *inter alia*: (i) that pursuant to the Right of First Refusal Agreement, it was entitled to purchase the Liquor License for $135,000; (ii) that the Right of First Refusal Agreement was not an executory contract which could be rejected; and (iii) that even if the Right of First Refusal Agreement constituted an executory contract either rejected by operation of law or intended to be rejected by the Trustee as part of the Lease Agreement pursuant to an independent rejection Motion filed by

the Trustee, the Landlord was nonetheless entitled to specific performance under the Right of First Refusal Agreement.

10. The Trustee, Onyx, and the Landlord spent significant time researching and filing briefs on the issues implicated by the Trustee's anticipated sale in the within circumstances, and appeared before the Court at numerous contested hearings at which these disputed issues were addressed.

11. A fair reading of the case law which exists evidences independent schools of thought which cannot be reconciled. In particular, there are numerous cases which hold that a right of first refusal agreement is an executory contract capable of rejection. However, there are at least two cases which hold that if the "triggering event" which causes the parties under a right of first refusal agreement to have performance obligations, does not take place as of the commencement of a bankruptcy proceeding, the right of refusal agreement is not an executory contract. Additionally, there are cases that hold a bankruptcy estate is free to sell a liquor license subject to a right of first refusal agreement, and the non-debtor party is limited to pursuing an additional claim against the bankruptcy estate for damages associated with the breach of that right of first refusal agreement. There is also at least one case, however, where language tantamount to a right of first refusal was essentially deemed to be a "lease" of a liquor license, and upon the breach by the debtor of the transaction by which the liquor license was "leased," the liquor license reverted back to the non-debtor party, and the debtor was deemed to own no license to sell for the benefit of the bankruptcy estate.

12. It is also clear there is no controlling Third Circuit precedent to guide the Court or the parties on these issues.

13. As a result, the issues which the Bankruptcy Court must adjudicate to decide the Trustee's Application to sell the Liquor License are extremely difficult, risky to all sides, and the outcome is virtually impossible to predict. Even further, because of the difficulty of the issues, it is impossible to predict when a decision of the Bankruptcy Court might be issued. Moreover, whatever a decision is ultimately made by the Bankruptcy Court, it is highly likely to be subject to an appeal to the District Court, and that decision is likely further to be subject to a subsequent appeal to the Third Circuit Court of Appeals. Thus, in a contested environment, the bankruptcy estate will not likely be able to consummate the proposed sale of the Liquor License for years.

14. After numerous rounds of briefing on these issues, the parties appeared in Court for the anticipated final hearing on June 26, 2013. At such time, settlement discussions took place which resulted in a consensual arrangement placed on the record, which if approved by the Court, would enable the Trustee to consummate the Liquor License sale transaction to Onyx without the risk of an adverse Bankruptcy Court decision, or adverse determination on appeal.

15. By the within Application, the Chapter 7 Trustee is respectfully providing all creditors of the within bankruptcy estate and all parties in interest, on notice of the terms of such proposed settlement, and is formally requesting the Bankruptcy Court approve the proposed settlement.

16. The terms of the proposed settlement are as follows:

(a) The Trustee shall be authorized to sell the Liquor License to Onyx for $835,000 free and clear of liens, claims, interests, and encumbrances, such to attach to the proceeds of sale, excepting $62,500 of the purchase price;

(b) The Lease Agreement between the Debtor and the Landlord shall be deemed rejected;

4

(c) The Right of First Refusal Agreement between the Debtor and the Landlord shall be deemed rejected;

(d) The Landlord shall have an allowed general unsecured claim against the within estate in the amount of $1,624,621.59. Such allowed general unsecured claim consists of the $744,614.59 claim evidenced by the Landlord's filed proof of claim, plus lease rejection damages in the amount of $180,000, plus additional damages in the amount of $700,000, calculated as the difference between the market derived value of the Liquor License of $835,000 minus the purchase price of the Liquor License under the Right of First Refusal Agreement of $135,000;

(e) The Landlord shall additionally receive from the Trustee as soon as is practical after closing of the sale of the Liquor License to Onyx, a payment of $62,500. Such payment shall be in resolution of the Landlord's objection to the sale of the Liquor License, and in effect, a "buyout" by the bankruptcy estate of any purported purchase rights held by the Landlord respecting the Liquor License;

(f) The bankruptcy estate shall waive any purported entitlement to any refund of real estate taxes obtained by the Landlord in connection with any real estate tax appeal respecting the property where the Debtor's former business premises were located;

(g) The Landlord shall release any and all claims it may have against the Trustee or the Debtor's bankruptcy estate other than those provided for in the proposed settlement. Notwithstanding, the Landlord expressly reserves any and all claims it may hold, if any, against the Debtor's members; and

(h) The Trustee and the Debtor's bankruptcy estate waive any and all claims they may hold against the Landlord.

5

17. The Trustee respectfully submits that approval of the proposed settlement is in the best interests of the Debtor, its creditors, and the within bankruptcy estate.

18. The standard for Bankruptcy Court approval of the proposed settlement are set forth in In re Martin, 91 F.3d 389 (3d Cir. 1996), which requires that the Court consider (i) the complexity, expense, and time delays associated with litigation; (ii) the risks of litigation; (iii) the likelihood of collection; and (iv) the paramount interests of creditors.  Further, it is axiomatic that as long as a proposed settlement is within the lowest point on the range of reasonableness, the Court is not to substitute its own business judgment for that of a Trustee. In re Washington Mutual, Inc., 442 B.R. 314 (Bankr. Del. 2011).

19. In the instant circumstance, the Trustee submits that the proposed settlement is well within the range of reasonableness, provides the best possible alternative for creditors of the within bankruptcy estate, and satisfies the Martin standards.

20. Firstly, the allowed general unsecured claim being provided to the Landlord under the proposed settlement is the claim it would hold if the Trustee were authorized to sell the Liquor License in the absence of a settlement, and, thus, there is effectively no "additional" consideration being provided to it in connection with such component of the proposed consensual resolution.

21. As concerns the $62,500 "buyout" of the Landlord's alleged right to purchase the Liquor License for $135,000, the Trustee submits that such cost is eminently reasonable when compared to the $835,000 purchase price the estate will generate under the sale to Onyx. Moreover, such payment is less than the likely costs the estate would incur in pursuing a litigated outcome through the Third Circuit Court of Appeals, which costs the Trustee estimates would likely exceed $75,000.

22. Further, in light of the eighteen rounds of competitive bidding which occurred at the auction for the Liquor License, the purchase price for the Liquor License increased from $500,000 to $835,000. The $335,000 additional purchase price amount being generated as a result of the auction under the proposed sale to Onyx enables the estate to fund the $62,500 "buyout" of any alleged rights held by the Landlord and still leaves the estate $272,500 better off than it would have been had the original proposed sale of the Liquor License for $500,000 been consummated.

23. The Trustee further shows that the proposed settlement will also facilitate a materially quicker conclusion of the within bankruptcy proceeding, thereby enabling creditors to obtain their dividends upon approval of a Trustee's final report substantially sooner in time. In this regard, if the proposed settlement is approved by the Court, the Chapter 7 Trustee will be left with the work associated with prosecuting any Chapter 5 avoidance action claims, reviewing and challenging proofs of claims, where appropriate, and filing a Trustee's final report. In circumstances where the Trustee would have to litigate his ability to sell the Liquor License through a Third Circuit appeal, the administration of the within bankruptcy estate would likely be delayed by approximately two years.

24. As a result, the Trustee respectfully submits that given the risks, costs, and delays attendant to litigation, the proposed settlement provides a substantially better outcome than the litigation alternative. Further, the Trustee submits the proposed settlement is in the paramount interest of creditors, and well within the lowest point on the range of reasonableness. Thus, the Trustee respectfully requests approval of the proposed settlement.

**WHEREFORE,** Jay L. Lubetkin, Chapter 7 Trustee for the bankruptcy estate of Circle 10 Restaurant, LLC, respectfully requests entry of a Bankruptcy Court Order approving the

settlement with Lim Chew Corp., authorizing the sale of the Debtor's liquor license to Onyx, rejecting the Lease Agreement with the Debtor, and providing for the other relief described herein.

**RABINOWITZ, LUBETKIN & TULLY, L.L.C.**
*Attorneys for Chapter 7 Trustee*


By:   /s/ Jay L. Lubetkin
      JAY L. LUBETKIN

DATED:  June 27, 2013

F:\Client_Files\A-M\Circle 10\Settlement - Application.doc