FILED
James J. Waldron, Clerk

UNITED STATES BANKRUPTCY COURT    APR 15 2014
DISTRICT OF NEW JERSEY

U.S. Bankruptcy Court, Newark NJ
BY: _____Deputy

In re:                              :     CASE NO. 13-14820 (RG)

CIRCLE 10 RESTAURANT, LLC,          :     Chapter 7

                                          Honorable Rosemary Gambardella
        Debtor.                     :

---

**MOTION OF THE NEW JERSEY DIVISION OF ALCOHOLIC BEVERAGE CONTROL TO INTERVENE IN SUPPORT OF TRUSTEE'S MOTION TO RECLASSIFY ALLEGED SECURED CLAIM OF RELM, LLC**

---

JOHN J. HOFFMAN
ACTING ATTORNEY GENERAL
OF NEW JERSEY
140 East Front Street, P.O. Box 087
Trenton, New Jersey 08625-0087
609-984-3801
Attorney for New Jersey Division
of Alcoholic Beverage Control

JENNIFER M. HUEGE
DEPUTY ATTORNEY GENERAL
ON THE BRIEF

KEVIN MARC SCHATZ
SENIOR ATTORNEY GENERAL
OF COUNSEL

## **STATEMENT OF THE CASE**

The New Jersey Division of Alcoholic Beverage Control ("NJABC") moves to intervene in this dispute because, pursuant to N.J.S.A. 33:1-26, New Jersey liquor licenses are not property as to private parties and, therefore, are not subject to security interests. That controlling state law definition and the clear legislative policies underlying it compel this Court to grant the motion filed by trustee Jay L. Lubetkin ("Trustee") to reclassify as a general unsecured claim the purported security interest of RELM, LLC ("RELM") in the liquor license formerly held by Circle 10 Restaurant, LLC ("Debtor").

The same issue in this case was already decided by the District Court in In re: Chris-Don, Inc., 367 F. Supp. 2d 696, 700 (D.N.J. 2005) (hereinafter "Chris-Don II"), the holding of which directs this Court to grant the Trustee's motion. See In re Marjorie Mays, 256 B.R. 555, 559 (Bankr. D.N.J. 2000) (in the Third Circuit "there remains an underlying presumption that precedent should be followed"). In Chris-Don II, the District Court reversed this Court's erroneous determination that New Jersey liquor licenses are subject to security interests. To avoid erring as Judge Lyons did in In re: Chris-Don, Inc., 308 B.R. 214 (Bankr. D.N.J. 2004) (hereinafter "Chris-Don I"), the Court must adhere to the guiding principles set forth in the District Court's opinion, i.e., N.J.S.A. 33:1-26 explicitly prevents liquor licenses from being considered property under state law and that legislative determination removes liquor licenses from the scope of New Jersey's revised Article 9 of the Uniform Commercial Code. In re: Chris-Don, Inc., 367 F. Supp. 2d at 700. Following the District Court's precedential holding necessitates a finding in favor of the Trustee in this case, because RELM does not have a valid security interest in the Debtor's liquor license.

RELM's objections to reclassification of its purported secured claim are not only weak and unfounded, they also were rejected by the District Court in Chris-Don II. Because "[p]roperty interests are created and defined by state law[,]" Butner v. United States, 440 U.S. 48, 55 (1979), this matter is governed by the legislative pronouncement—explicitly set forth in N.J.S.A. 33:1-26 and buttressed by New Jersey Supreme Court authority—that liquor licenses are not property. Similarly, Article 9 provides no support for RELM's objections. As the District Court held in Chris-Don II, N.J.S.A. 33:1-26 and N.J.S.A. 12A:9-408 do not conflict. In re: Chris-Don, Inc., 367 F. Supp. 2d at 701. That Article 9 authorizes security interests in general intangibles and restricts impairment of security interests therein is of no moment. For purposes of Article 9, property is determined by reference to other state law. Here, N.J.S.A. 33:1-26 is the applicable state law which unequivocally precludes liquor licenses from being considered property; accordingly, they fall outside the scope of the commercial law statute. RELM, therefore, is left with nothing more than a general unsecured claim.

### STATEMENT OF THE FACTS AND PROCEDURAL HISTORY

The instant bankruptcy matter arose on March 8, 2013, when the Debtor filed a Chapter 7 proceeding. Certification In Support of Motion to Reclassify Alleged Secured Claim of RELM, LLC ("Certification" at ¶ 2). The pertinent facts preceding initiation of this matter are set forth in the Trustee's Brief in Support of Plaintiff's Motion to Reclassify Alleged Secured Claim of RELM, LLC ("Trustee's Brief"). NJABC does not dispute those facts and relies on them for this motion.

On February 24, 2014, the Trustee moved to reclassify as unsecured RELM's purported security interest in the Debtor's New Jersey liquor license. Notice of Motion for Order Reclassifying Alleged Secured Claim of RELM, LLC. RELM filed an objection with this Court

2

on March 25, 2014. RELM, LLC's Objection to the Trustee's Motion to Reclassify Secured Claim ("Objection"). Thereafter, NJABC became aware of this dispute between the parties and now seeks permission to intervene to persuade the Court to abide by the legislative pronouncement of N.J.S.A. 33:1-26 that liquor licenses are not property and conclude that RELM does not have a valid security interest in the Debtor's liquor license.

## LEGAL ARGUMENT

### A. NJABC SHOULD BE GRANTED LEAVE TO INTERVENE IN THE INSTANT DISPUTE

Pursuant to Fed. R. Civ. P. 24(b)(2)(A), "the court may permit a federal or state governmental officer or agency to intervene if a party's claim or defense is based on: (A) a statute or executive order administered by the officer or agency . . . ." Such are the circumstances here. "While a public official may not intrude in a purely private controversy, permissive intervention is available when sought because an aspect of the public interest with which he is officially concerned is involved in the litigation." Nuesse v. Camp, 385 F.2d 694, 706 (D.C. Cir. 1967). Fed. R. Civ. P. 24(b)(2) requires that intervention be granted liberally to governmental agencies because they speak for the public interest. 7C Wright & Miller, Federal Practice & Procedure, Section 1913, at 373-74 (1986). Thus, district courts apply a "hospitable" approach to intervention motions by government agencies. Blowers v. Lawyers Coop. Publ'n Co., 527 F.2d 333, 334 (2d Cir. 1975).

The Court's decision necessarily will affect New Jersey's alcoholic beverage industry—one of the most highly-regulated industries in the State since 1933 when the New Jersey Legislature enacted the Alcoholic Beverage Control Act, N.J.S.A. 33:1-1, et seq. ("ABC Act"). The ABC Act established the foundation for the regulation of the commerce of alcoholic beverages within the State. N.J.S.A. 33:1-12.40(a). Intervention is appropriate in this case,

3

given that the issue before the Court requires interpretation of the ABC Act and consideration of the negative impact denial of the Trustee's motion in this case will have upon NJABC's ability to enforce the legislative mandates of the ABC Act, which include the following:

--preventing infiltration of the alcoholic beverage industry by persons with criminal records, N.J.S.A. 33:1-3.1b(5);

--enforcing the two-license limitation, N.J.S.A. 33:1-12.31;

--ensuring that only persons who meet the established qualifications have interests in liquor licenses, N.J.S.A. 33:1-25, -26, -31, -43 and N.J.S.A. 9:17B-1;

--ensuring that law enforcement officers do not have interests in liquor licenses, N.J.S.A. 33:1-26.1 and N.J.A.C. 13:2-23.31; and

--ensuring that retail liquor licenses remain under the supervision of the issuing authority, be it a municipality (N.J.S.A. 33:1-19 to -19.7), the State (N.J.S.A. 33:1-10 and -11) or both, depending on the particular type of license.

The entire regulatory scheme within which NJABC enforces the above is dependant upon continued adherence to the legislatively-enacted and judicially-affirmed position that liquor licenses in New Jersey are not property subject to attachment, except for State and Internal Revenue Service tax liens (see N.J.S.A. 33:1-26 and Boss Co., Inc. v. Bd. of Comm'rs of City of Atlantic City, 40 N.J. 379, 387 (1963)).[1] For this reason, NJABC requests the opportunity to demonstrate that the public interest warrants a finding in favor of the Trustee in this matter.

---

[1] In fact, when federal or State taxing authorities "seize a license" they merely obtain the right to consent to its transfer and do not obtain the right to operate the license. Thus, a liquor license remains free and clear of any device, be it security interest, pledge, lien, etc., through which persons other than the licensees could exercise control over the license. Boss Co., Inc., 40 N.J. at 387 (1963) ("seizure by the federal government merely obviates the necessity of securing the consent of the licensee to the transfer").

4

B. **THE TRUSTEE'S MOTION SHOULD BE GRANTED BECAUSE RELM DOES NOT HOLD A VALID SECURITY INTEREST IN THE DEBTOR'S LIQUOR LICENSE, WHICH IS NOT PROPERTY SUBJECT TO ATTACHMENT UNDER CONTROLLING NEW JERSEY LAW**

1. **Pursuant to The Legislative Directive of N.J.S.A. 33:1-26, Liquor Licenses Are Not Property**

Since its enactment in 1933, the ABC Act is the only New Jersey statute that defines the nature of a license holder's interest in a liquor license, explicitly providing that

> Under no circumstances . . . shall a license, or rights thereunder, be deemed property, subject to inheritance, sale, pledge, lien, levy, attachment, execution, seizure for debts, or any other transfer or deposition, whatsoever, except for payment of taxes, fees, interest and penalties imposed by any State tax law for which a lien may attach . . . . [N.J.S.A. 33:1-26].

There is no ambiguity in the statutory language—a New Jersey liquor license is not property for any state law purpose, except as noted in Part A, infra. New Jersey Supreme Court cases reinforcing this legislative directive are legion. Mazza v. Cavicchia, 15 N.J. 498, 505 (1954) ("[A] license to sell intoxicating liquor is not a contract nor is it a property right. Rather it is a temporary permit or privilege to pursue an occupation which otherwise is illegal."); Butler Oak Tavern v. Div. of ABC, 20 N.J. 373, 381 (1956) ("A license to sell intoxicating beverages is not a contract nor does it embody any property right. It is a temporary permit or privilege."); Boss Co., Inc., 40 N.J. at 387 ("[A] liquor license, although transferable, is still to be considered a temporary permit or privilege, and not property, as it always has been, even before our Legislature so declared by statute . . . ."); Kalogeras v. 239 Broad Ave., LLC, 202 N.J. 349, 360, 363 (2010) (affirming prior decisions that deem a liquor license as a temporary permit or privilege and not as property). For over eighty years, New Jersey courts have consistently interpreted N.J.S.A. 33:1-26 to effectuate the purpose of the Legislature that "licensees should

5

hold their licenses free from any device which would subject the licenses to control of other persons." Walsh v. Bradley, 121 N.J. Eq. 359, 360 (Ch. 1937). See also Lachow v. Alper, 130 N.J. Eq. 588, 590 (Ch. 1942) (denying injunction sought by landlord to prevent tenant-licensee from transferring his liquor license because license had been "pledged as a sort of security for the performance of the lease" and landlord had attempted "to exercise a property right under the license" in contravention of N.J.S.A. 33:1-26); Takacs v. Horvath, 3 N.J. Super. 433, 437 (Ch. Div. 1949) (noting that a liquor license "lacks the common elements of transferable property" and affirming that governmental licensing authorities maintain exclusive control over "who shall exercise the privileges of the license and to whom it may be transferred"); B & G Corp. v. Mun. Council of the Township of Wayne, 235 N.J. Super 90, 94 (App. Div. 1989) (holding that "N.J.S.A. 33:1-26 prohibits levy on a licensee's right to consent to a transfer [of the liquor license]").

"Property interests are created and defined by state law." Butner, 440 U.S. at 55. When a federal court is required to apply state laws—as in this case—it must consider and accept the decisions of the state's highest court as the ultimate authority regarding interpretation of state laws. McGowan v. Univ. of Scranton, 759 F.2d 287, 289 (3d Cir. 1985). Therefore, N.J.S.A. 33:1-26 and the supporting New Jersey Supreme Court cases control. In re: Chris-Don, Inc., 367 F. Supp. 2d at 700 quoting Sea Girt Rest. & Tavern Owners Ass'n, Inc. v. Borough of Sea Girt, 625 F. Supp. 1482, 1486 (D.N.J. 1986) ("Under N.J.S.A. 33:1-26, the 'clear legislative pronouncement that liquor licenses are not property has been consistently supported by case law,

6

all of the cases holding that a license to sell intoxicating liquor is not . . . a property right.'").[2] Because the controlling authority precludes liquor licenses from being considered property in this dispute, RELM does not have a security interest in the Debtor's liquor license.

### 2. Strong Policy Considerations And The Public Interest Dictate That in New Jersey Licensees Cannot Grant Security Interests in Their Liquor Licenses

This Court must not ignore the strong policy considerations underlying the legislative pronouncement of N.J.S.A. 33:1-26 that liquor licenses are not property subject to attachment. In fact, these considerations bar the conclusion that security interests in liquor licenses may be granted. Because of the "inherently far-reaching dangers" of the alcoholic beverage industry, the Legislature has dealt with the commerce of alcoholic beverages within New Jersey in an exceptional way. Fanwood v. Rocco, 33 N.J. 404, 411 (1960). The evident intent of N.J.S.A. 33:1-26 in prohibiting attachment, levy, or execution against the license "or rights thereunder" is "to protect the liquor license from any device which would subject it to the control of persons other than the licensee, . . . ." Boss Co., Inc., 40 N.J. at 388 (emphasis added). Primary control of retail liquor licenses rests with the municipal issuing authorities; rights arising under the licenses may not be unilaterally alienated or divested by any device, including security interests.

NJABC and 525 municipal authorities issue and track approximately 12,500 licenses in New Jersey. As the governmental agency that regulates the alcoholic beverage industry in the State, NJABC is obligated to directly police each and every one of these licenses and enforce the mandates under the ABC Act (see Part A, infra). Ensuring that only individuals who meet the

---

[2] The court in Sea Girt Rest. & Tavern Owners Ass'n, Inc. recognized, however, that because of its inherent value, a license could not be suspended or revoked without providing the licensee with due process. 625 F. Supp. at 1488.

7

qualifications set forth in the ABC Act receive an interest in the license (see N.J.S.A. 33:1-25, -26, -31, -43, and N.J.S.A. 9:17B-1) is critical to preserving the integrity of the licensing scheme that governs the alcoholic beverage industry in New Jersey. To fulfill this responsibility to the public, NJABC relies on the unambiguous language of N.J.S.A. 33:1-26, which explicitly precludes liquor licenses from being characterized as property and liened, levied, or attached except with respect to State and I.R.S. tax liens. Precisely for this reason—to vest ultimate control of a license in the government so as to enable effective regulation of the industry pursuant to the mandates of the ABC Act—is a license defined as a privilege not a property right. See Kalogeras, 202 N.J. at 360 ("The pervasive and strict regulation of the distribution, sale and consumption of alcoholic beverages is an integral part of New Jersey's alcoholic beverage control matrix[,]" and noting that not even equity can control the discretion of the issuing authorities); see also N.J.S.A. 33:1-26 and -12.40c.

The over eighty-year-old regulatory scheme for enforcing the legislative policies of the ABC Act is predicated on NJABC and the municipal issuing authorities identifying, vetting, and overseeing those with beneficial interests in the licenses. Direct and indirect beneficial interests in liquor licenses must be disclosed on the licensing application and updated to reflect any changes that occur. The statutory language of N.J.S.A. 33:1-26, which excludes liquor licenses from being considered property and prohibits attachments or liens thereto, functions as a tool, preventing undisclosed influences over the licensees. In this case, if RELM were deemed to have a security interest in the liquor license, it could exert a legally-sanctioned undisclosed influence over the licensee. Such a holding would authorize a virtual black market in liquor licenses, thereby thwarting NJABC's ability to strictly regulate the alcoholic beverage industry and subverting the above-outlined legislative purposes of the ABC Act. See B & G Corp., 235

N.J. Super. at 94 ("[T]he provisions of [the ABC Act] are not to be construed to lead to absurd results.").

There are no mechanisms by which NJABC could identify secured interest holders in liquor licenses, investigate them so as to determine whether they are statutorily disqualified or otherwise unable to meet the qualification requirements, and monitor their interests. As creditors with no disclosed interest in a given license, they would be unknown to NJABC. As such, they would avoid the background checks necessary to determine their eligibility to conduct business in one of the most highly-regulated industries in New Jersey. Such creditors could have criminal records, positions as law enforcement officers, beneficial interests in two New Jersey liquor licenses, and/or beneficial interests in a license in a different tier of the alcohol distribution system, any of which would render them ineligible to obtain a beneficial interest in a given license. See N.J.S.A. 33:1-25, -26, -31, -43, and N.J.S.A. 9:17B-1. Yet by virtue of their status as secured interest holders, they could exercise control over licensees—those who have been legitimately granted the privilege to participate in the alcoholic beverage industry—in undesirable ways completely outside of NJABC's regulatory reach. For example, by threatening to declare a breach of the contract that forms the basis of the security agreement, a secured creditor could strong-arm a licensee to comply with its demands or pressure the licensee to make business decisions that violate the ABC Act. By making the loan to the licensee due and payable in its entirety, a creditor could force a sale of the license in order to obtain the proceeds of the sale. It could then distribute those proceeds to entities unknown and unregulated, placing the profits generated by the liquor license into the hands of the very individuals the Legislature

intended to exclude from the industry.[3] Continued enforcement of the legislative mandates of the ABC Act facilitated by the long-standing legal premise that liquor licenses are not property compel the conclusion that security interests therein may not be granted.

### C. RELM'S OBJECTIONS TO THE TRUSTEE'S MOTION MUST BE REJECTED BECAUSE THE UNAMBIGUOUS LEGISLATIVE DIRECTIVE OF N.J.S.A. 33:1-26 GOVERNS THE DISPUTE

RELM erroneously argues that, in light of the Legislature's 2001 revisions to Article 9 and under the particular circumstances of this matter, its purported security interest in the Debtor's liquor license should be deemed property (Objection at ¶ 21). This baseless contention not only defies N.J.S.A. 33:1-26's express definition of a liquor license as "not property" and the supporting New Jersey Supreme Court cases, but it also is solely dependant upon this Court embracing a decision that was reversed by the District Court, i.e., Chris-Don I. As District Court Judge Cooper noted when reversing on appeal, the Bankruptcy Court's opinion was flawed for two reasons. First, cases holding that liquor licenses qualify as "property" for federal law purposes are inapplicable to evaluating the nature of liquor licenses in bankruptcy proceedings, because state law determines property rights; pursuant to N.J.S.A. 33:1-26, liquor licenses are not property. In re: Chris-Don, Inc., 367 F. Supp. 2d at 700-01. Second, the language of Article 9 does not trump the ABC Act and transform liquor licenses into property to which security

---

[3] The inevitable creation of a black market for security interests in liquor licenses must not be overlooked. A security interest which can be sold, traded, or assigned without review and approval of either the NJABC or the local municipal board is simply a new economic asset that was never specifically proscribed by the New Jersey Legislature when enacting the ABC Act. Given that one of the legislative mandates of the ABC Act is ensuring that liquor licenses remain under the supervision of the issuing authority (see N.J.S.A. 33:1-10, -11, and -19), authorizing security interests in liquor licenses contravenes that mandate. Moreover, such a decision also would flout the Legislature's mandate of preventing persons with criminal records from infiltrating the industry (N.J.S.A. 33:1-3.1b(5)), because it would open the door to criminals who are prohibited from having direct or indirect beneficial interests in liquor licenses.

10

interests may attach. Ibid. Undoubtedly when the Legislature revised Article 9 it was aware of its own prior enactments including N.J.S.A. 33:1-26. See Brewer v. Porch, 53 N.J. 167, 174 (1969) (One principle of statutory construction is "the assumption that the Legislature is thoroughly conversant with its own legislation and the judicial construction of its statutes."). Notably, however, the Legislature did not amend N.J.S.A. 33:1-26 to enable a U.C.C. security interest to attach to a liquor license.

### 1. Cases Holding That Liquor Licenses Have Characteristics of Property For Federal Purposes Are Inapposite to The Instant Dispute

Liquor licenses in New Jersey have been found to have the qualities of property in only two specific contexts (apart from State tax liens, specifically exempted by N.J.S.A. 33:1-26), both of which involved legal principles not applicable here, namely I.R.S. tax liens and due process. In the first context, liquor licenses were deemed "property" for the limited purpose of federal tax liens pursuant to Section 6321 of the Internal Revenue Code. Boss Co., Inc., 40 N.J. at 387. The U.S. Supreme Court has made it clear, however, that "the federal tax lien statute itself creates no property rights but merely attaches consequences, federally defined, to rights created under state law." U.S. v. Craft, 535 U.S. 274, 279 (2002). The fact that a federal tax lien statute can attach to the consent to transfer a liquor license (see Boss Co., Inc., 40 N.J. at 387) is irrelevant here. "Whether [state-delineated rights] qualify as 'property' for purposes of the federal tax lien statute is a question of federal law." Craft, 535 U.S. at 279. RELM is a private party; therefore, no such question is presented under the circumstances of this dispute. This Court must look to N.J.S.A. 33:1-26 and conclude that no property rights arise from a New Jersey liquor license.

In <u>Sea Girt Rest. & Tavern Owners Ass'n, Inc.</u>, the court opined that "a liquor license is a legal interest . . . which possesses the <u>qualities</u> of property" sufficient to give rise to due process. 625 F. Supp. at 1487 (emphasis added). Thus, under the Fourteenth Amendment, a liquor license is considered to be like property in that it is subject to due process protection. This determination, however, does not transform liquor licenses into property for state law purposes, nor does it transform them into property for bankruptcy proceedings. See <u>In re Main Street Beverage Corp.</u>, 232 B.R. 303, 310 (D.N.J. 1998) (reversing bankruptcy court's determination that private creditor held a security interest in the proceeds of the sale of the debtor's liquor license). To hold otherwise would eviscerate the legislative pronouncement of <u>N.J.S.A</u>. 33:1-26 that liquor licenses are "not property[.]" See <u>Main Street Beverage Corp.</u>, 232 B.R. at 310 <u>quoting</u> <u>21 West Lancaster v. Main Line Rest., Inc.</u>, 790 F.2d 354, 359 (3d Cir. 1986) (The right to receive payment from the proceeds of the sale of a liquor license does not arise under the license; to find otherwise "'would seem to contradict the unambiguous import of the [New Jersey] authority, defining the nature of a liquor license, a matter of state law.'").

A private creditor such as RELM who alleges a security interest in a liquor license presents no question of federal law; rather, state law dictates the characterization of a debtor's liquor license. See <u>Butner</u>, 440 U.S. at 55 ("Unless some federal interest requires a different result, there is no reason why [state-defined property interests] should be analyzed differently . . . [in] a bankruptcy proceeding."). Grasping at straws, RELM asks this Court to defy the legislative directive of <u>N.J.S.A</u>. 33:1-26 and supporting judicial authority and redefine state-created property rights. Its mere justification is that by "approv[ing] the Trustee's application to sell the Debtor's liquor license . . . , the Court authorized the sale of the Debtor's liquor license . . . . In so doing . . . determined that the Debtor's liquor license constitutes 'property[,]'" therefore,

the Court must continue to consider the liquor license "property" when analyzing RELM's purported secured interest. Objection at ¶¶ 27, 33. RELM's assertion misses the mark because it presupposes that RELM had an enforceable legal right to the license itself.[4] This Court is obligated to follow state law's determination of property interests, and, pursuant to N.J.S.A. 33:1-26, the holder of a liquor license has none. As this Court postulated in Main Street Beverage Corp.,

> Perhaps a licensee should be able to utilize the economic value of its liquor license in some fashion . . . however, that is a matter for the state legislature, which may choose to redefine the nature of a liquor license under state law. . . . Until such time as the New Jersey legislature follows suit, this court must decline [the] invitation to recognize a new exception to N.J.S.A. 33:1-26. [232 B.R. at 310 (emphasis added)].

Once again, this Court must decline a creditor's invitation to usurp the Legislature's power to redefine the nature of a liquor license under state law—RELM's misconstrued "law of the case" argument (see Objection ¶ 33) notwithstanding—because thus far the Legislature has not amended N.J.S.A. 33:1-26.

    2.    **Article 9 Does Not Save RELM's Purported Security Interest Because Liquor Licenses Are Not Property Under New Jersey Law And, Therefore, Fall Outside The Scope of Article 9**

---

[4] To the extent that RELM is arguing that its purported security interest merely entitles it to a right to the proceeds of the sale of the Debtor's liquor license (Objection at ¶ 26), it is mistaken, for bifurcation of the rights arising from liquor licenses is precluded. See, e.g., B & G Corp., 235 N.J. Super at 95 ("It is clear to us that under N.J.S.A. 33:1-26 a right to consent to a license transfer is a right inseparable from the license itself"). Thus, under N.J.S.A. 33:1-26, any right to the proceeds from the sale of a liquor license is one of the "rights thereunder" that is not subject to attachment. Interpreting N.J.S.A. 33:1-26 otherwise would frustrate the legislative purpose to protect the licensee from any device that would subject it to the control of private parties. See B & G Corp., 235 N.J. Super at 95.

13

Contrary to what RELM would like the Court to believe, Article 9 in no way limits the legislative directive of N.J.S.A. 33:1-26 that liquor licenses do not constitute property. It was inappropriate for Judge Lyons to characterize liquor licenses as property for the benefit of private creditors under state law in Chris-Don I, and it would be equally inappropriate for the Court to do so in this case. In citing Judge Lyons' overturned opinion for the proposition that N.J.S.A. 12A:9-408 overrides the anti-alienation provision of N.J.S.A. 33:1-26 (see Objection at ¶ 20), RELM's argument necessarily fails, because N.J.S.A. 12A:9-408 only applies to that which is property, as determined by other state law.

First and foremost, Article 9 applies to any "transaction . . . that creates a security interest in personal property . . . by contract[,]" (N.J.S.A. 12A:9-109(a)(1) (emphasis added)), and "regulat[es] . . . security interests in personal property . . . ." (N.J.S.A. 12A:9-101, cmt. 1 (emphasis added)). Thus, to be governed by Article 9, the item at issue must constitute personal property, as defined by applicable state law, for Article 9 does not define the term. N.J.S.A. 12A:9-408, cmt. 3 (No provision of Article 9 defines property, rather "[o]ther law determines whether a debtor has a property interest ('rights in the collateral') and the nature of that interest."). N.J.S.A. 33:1-26 unequivocally provides that definition for liquor licenses. As the District Court held on appeal in Chris-Don II,

> The [New Jersey] legislature enacted Article 9, which by its own terms applies to personal property as such property is defined by other law, against a backdrop of New Jersey law that provides that a liquor license is not property except in regard to state and federal tax liens and federal due process requirements. [In re: Chris-Don, Inc., 367 F. Supp. 2d at 701-02].

Second, N.J.S.A. 12A:9-408 applies to general intangibles, which are defined as personal property pursuant to N.J.S.A. 12A:9-102(a)(42) (emphasis added). Because N.J.S.A. 33:1-26 explicitly states that liquor licenses are not property, they are not general intangibles that fall

within the scope of Article 9. In concluding that Article 9 trumps the ABC Act, Judge Lyons in Chris-Don I, looked to the 2001 legislative history which explained, "The scope of revised Chapter 9 is expanded to include [formerly uncovered or restricted] collateral . . . . Broadening the scope of collateral increases a debtor's access to credit." In re: Chris-Don, Inc., 308 B.R. at 218 citing Senate Bill No. 1382, 209th Leg. (N.J. 2001). However, because collateral is "property" as defined by N.J.S.A. 12A:9-102(a)(12), liquor licenses—having been explicitly defined as "not property" by clear legislative pronouncement in the past—would not have been targeted by the revisions to Article 9. The Legislature knew in 2001 of N.J.S.A. 33:1-26's explicit directive that liquor licenses not be considered property (State v. Greeley, 178 N.J. 38 (2003) (Legislature's familiarity with its own enactments and preservation of related laws presumed)), yet it made no attempt to redefine liquor licenses by amending N.J.S.A. 33:1-26 or, at minimum, explicitly declaring an intent to repeal that provision of the ABC Act, so as to indisputably bring liquor licenses within the scope of Article 9. See Rodgers v. U.S., 185 U.S. 83, 87-89 (1902) ("It is a canon of statutory construction that a later statute, general in its terms and not expressly repealing a prior statue, will ordinarily not affect the special provisions of such earlier statute."); see also Mahwah Twp. v. Bergen County, 98 N.J. 268, 281 (1985) (implied repealer disfavored). The inaction on the part of the Legislature speaks volumes.

This point is amply demonstrated by the manner in which Pennsylvania addressed the issue. Prior to July 1, 1987, Pennsylvania's law concerning liquor licenses was similar to N.J.S.A. 33:1-26 in that a liquor license was defined as a personal privilege and was not to be construed as property. In re: Walkers Mill Inn, Inc., 117 B.R. 197, 199 (Bankr. W.D. Pa. 1990). In 1987, the Pennsylvania Legislature re-characterized liquor licenses so as to permit licensees to grant security interests in their licenses. Thereafter, a liquor license was still deemed to be a

15

personal privilege between the Pennsylvania Liquor Control Board and the licensee, but, with respect to the licensee and third parties, the license was to be considered property, as explicitly defined in the revised Pennsylvania Liquor Code, 47 P.S. 4-468(d). In re: Walkers Mill Inn, Inc., 117 B.R. at 199. Because of this explicit state law amendment to the definition of liquor licenses, courts have held that Pennsylvania liquor licenses fall within the scope of the Pennsylvania U.C.C.'s definition of general intangibles and thereby are subject to security interests. For example, in In re: Ciprian Ltd., 473 B.R. 669 (Bankr. W.D. Pa. 2012), the determination that liquor licenses are general intangibles pursuant to Pennsylvania's U.C.C. was challenged based on the holding of Chris-Don II. In re: Ciprian Ltd., 473 B.R. at 673, n. 3. In rejecting that argument, the bankruptcy court distinguished Chris-Don II, specifically noting that New Jersey differs significantly from Pennsylvania because of the unambiguous wording of N.J.S.A. 33:1-26. In re: Ciprian Ltd., 473 B.R. at 673, n. 3 ("Unlike Pennsylvania, which characterizes a liquor license as property as between the licensee and third parties, New Jersey does not characterize a liquor license as property and expressly prevents by statute the use of a liquor license as collateral for a loan.").

Thus, the only logical conclusion when examining both N.J.S.A. 33:1-26 and N.J.S.A. 12A:9-408 is that they do not conflict. In re: Chris-Don, Inc., 367 F. Supp. 2d at 701 ("N.J.S.A. 12A:9-408(c) is not inconsistent with N.J.S.A. 33:1-26."). N.J.S.A. 12A:9-408 simply does not apply to liquor licenses, which, pursuant to N.J.S.A. 33:1-26, are excluded from being deemed personal property. Accordingly, RELM does not possess a valid security interest in the Debtor's liquor license and has nothing more than a general, unsecured claim to the proceeds from the sale of the liquor license in the Debtor's bankruptcy estate.

## CONCLUSION

For the foregoing reasons, NJABC's Motion to Intervene and the Trustee's Motion to Reclassify Alleged Secured Claim of RELM, LLC should be granted.

Respectfully submitted,

JOHN J. HOFFMAN
ACTING ATTORNEY GENERAL OF NEW JERSEY

Date: April 15, 2014        By: _____
                                Jennifer M. Huege
                                Deputy Attorney General