**FILED**
**JAMES J. WALDRON, CLERK**

**NOV - 7 2014**

**U.S. BANKRUPTCY COURT**
**NEWARK, N.J.**
BY _____ DEPUTY

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

---

**In Re:**

**Circle 10 Restaurant, LLC,**

**Debtor.**

**Case No.: 13-14820(RG)**

**OPINION**

---

**APPEARANCES:**

**RABINOWITZ, LUBETKIN & TULLY, LLC**
By:     John J. Harmon, Esq.
293 Eisenhower Parkway
Suite 100
Livingston, NJ 0039
*Counsel to Jay L. Lubetkin, Chapter 7 Trustee*

**RIKER, DANZIG, SCHERER, HYLAND & PERRETTI, LLP**
By:     Joseph L. Schwartz, Esq.
        Kevin J. Larner, Esq.
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ  07962
*Attorney(s) for RELM, LLC*

**OFFICE OF NEW JERSEY ATTORNEY GENERAL**
By:     Jennifer M. Huege, Esq.
Deputy Attorney General of the State of New Jersey
140 East Front Street
P.O. Box 087
Trenton, NJ 08625-0087
*Attorney(s) for New Jersey Division of*
  *Alcoholic Beverage Control*

1

**OFFICE OF NEW JERSEY ATTORNEY GENERAL**
By:     Heather Lynn Anderson, Esq.
        Jonathan B. Peitz, Esq.
Deputy Attorney General of the State of New Jersey
R.J. Hughes Justice Complex
25 Market Street
P.O. Box 106
Trenton, NJ 08625
*Attorney(s) for New Jersey Division of Taxation*

**CONNELL FOLEY LLP**
By:     Stephen V. Falanga, Esq.
        Philip W. Allogramento III, Esq.
85 Livingston Avenue
Roseland, NJ 008
*Attorney(s) for Creditor, Lim Chew Corp.*

<u>**ROSEMARY GAMBARDELLA, BANKRUPTCY JUDGE**</u>

MATTER BEFORE THE COURT

Before the Court is Trustee's Motion to Reclassify Alleged Secured Claim of RELM, LLC to a general unsecured claim.[1]  A hearing was conducted on May 22, 2014.  The following constitutes this Court's findings of fact and conclusions of law.

STATEMENT OF FACTS AND PROCEDURAL BACKGROUND

1. <u>Factual Background</u>

Prior to its bankruptcy filing Debtor had operated a restaurant under the name Margarita's in Livingston, New Jersey.  Motion to Reclassify, at 3.  On May 23, 2012, Debtor and its principles, Matthew Stadtmauer and Neal Erman, executed a Loan Agreement, Time Note and Unlimited Guaranty, with Northern Bank and Trust Company ("Northern Bank") for a

---

[1] The New Jersey Division of Alcoholic Beverage Control (the "ABC") filed a Motion to Intervene in the instant matter.  At the May 22, 2014 hearing, this Court heard and granted ABC's Motion to Intervene.  The order was entered on May 22, 2014.

$375,000 loan. *See id.* On the same day, Debtor entered into a Loan and Security Agreement with Northern Bank which granted Northern Bank a security interest in all of Debtor's rights to all of its personal property, present and after-acquired, explicitly including accounts, chattel paper, goods, inventory, equipment, instruments, documents, and general intangibles. *See id.* On May 22, 2013, Northern Bank assigned to RELM, LLC ("RELM") all its rights and obligations in the loan note, guaranty, and security agreement. *Id.* On June 13, 2013, RELM filed a proof of claim, #22, in the amount of $378,779.59, asserting a secured claim based on its rights as Northern Bank's assignee. *Id.*

   2. Procedural Background

   On March 8, 2013, Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code. On March 11, 2013, Jay L. Lubetkin was appointed as Chapter 7 Trustee by the Office of the United States Trustee. ECF #4.

   On April 11, 2013, the Trustee filed a Motion for an Order approving bidding and sale noticing procedures and scheduling a hearing on the sale of Debtor's Class C retail plenary consumption liquor license (the "Liquor License") to Onyx Equities III, LLC ("Onyx") for $500,000 free and clear of all liens and encumbrances, subject to a higher and better offer (the "Sale Motion"). *See* ECF #18, at 1.

   On April 17, 2013, Debtor's former landlord and present creditor Lim Chew Corp. ("Lim Chew") filed an Objection to the Sale Motion ("First Objection") on the grounds that the proposed break-up fee and overbid requirements were unreasonable and impermissible, Trustee's request that all offers remain open and irrevocable until entry of an approval order was unreasonable, and the identity of the proposed purchaser should be disclosed prior to this Court's approval of bid procedures. *See* ECF #25, at 1-2.

3

This Court held a hearing on the Sale Motion and Lim Chew's Objection on April 18 2013.

On April 28, 2013, this Court entered an Amended Order Approving Bidding Procedures, Approving Sale Noticing Procedures, and Scheduling Subsequent Hearing to consider the Sale of the Debtor's Liquor License. ECF #28.

On May 16, 2013, Lim Chew filed an Objection to Trustee's Motion to Sell Debtor's Liquor License ("Second Objection"), arguing inter alia that Trustee lacked authority to sell the Liquor License free and clear of Lim Chew's rights under its pre-petition agreement, to wit, the Lease, Promissory Note and Right of First Refusal dated October 20, 2010. *See* ECF #33, at 2.

On May 20, 2013 Trustee filed a Response to Lim Chew's Second Objection, asserting that Debtor held absolute, unfettered title to the Liquor License; therefore, Trustee may sell the Liquor License free and clear of Lim Chew's rights under the agreement. *See* ECF #35, at 1-2. Further, Trustee argued that Lim Chew's right of first refusal under the agreement was an executory contract that could be rejected by Trustee or alternatively rejection of the right of the Integrated Lease Agreement, the Right of First Refusal Agreement and other agreements arising out of the October 20, 2010 transactions between the Debtor and Landlord. *See id.* at 2-3.

On the same date, Trustee filed a separate Motion for an Order Confirming Rejection by operation of law of Lim Chew's Right of First Refusal Agreement by operation of law, sixty days after the commencement of the Debtor's case. Alternatively, the Trustee argued that to the extent the Right of First Refusal is part of the Lease as an integrated component of the October 20, 2010 transactions between the Debtor and the Landlord, it may be rejected by the Trustee pursuant to 11 U.S.C. § 365(d)(1). ECF #46. Numerous filings followed.

4

On May 21, 2010 Onyx Equities III LLC, the stalking horse bidder, filed a response to the Landlord's objection to the sale, asserting that the Liquor License could be sold to the highest bidder free and clear of the rejected Right of First Refusal. On May 23 and 24, 2013, this Court held the auction for sale of the Liquor License.

On June 27, 2013, the Trustee filed a Notice of Motion for Order Approving Settlement between Trustee and Lim Chew respecting Lim Chew's objection to Trustee's proposed sale of the Liquor License to Onyx. *See* ECF #61.

In the Motion to Approve Settlement the Trustee sets forth:

In connection with the Debtor's execution of the Lease Agreement, it also executed a Right of First Refusal Agreement by which it granted the Landlord the right of first refusal to purchase the Liquor License for a sum of $100,000, plus the principals payments paid as of such time by the Debtor on account of a $500,000 promissory note executed in favor of the Landlord arising out of the Debtor's purchase of the Liquor License from it. According to the Landlord, the purchase price under the right of first refusal would be $135,000.

The Liquor License was independently appraised at the request of the Trustee by A. Atkins Appraisal Corp. for $400,000.

By prior Application to the Court, the Chapter 7 Trustee sought Bankruptcy Court approval of the sale of the Liquor License to Onyx Equities III, LLC ("Onyx") for a purchase price of $500,000. Pursuant to bidding procedures approved by the Court, an auction for the purchase of the Liquor License premised upon Onyx's stalking horse bid took place before the Court and ultimately, Onyx submitted the highest and best offer of $835,000 for the purchase of the Liquor License.

Subsequently, the Court entered an Order confirming Onyx's compliance with In re Abbotts Dairies of Pennsylvania, Inc., 788 F. 2d 143 (3d Cir. 1986).

At all times from and after the filing of the Trustee's Application for the sale of the Liquor License, the Landlord objected to the sale of the Liquor License, asserting, *inter alia*: (i) that pursuant to the Right of First Refusal Agreement, it was entitled to purchase the Liquor License for $135,000; (ii) that the Right of First Refusal Agreement was not an executory contract which could be rejected; and (iii) that even if the Right of First Refusal Agreement constituted an executory contract either rejected by operation of law or intended to be rejected by the Trustee as part of the Lease Agreement pursuant to an independent rejection Motion filed by the Trustee, the Landlord was nonetheless entitled to specific performance under the Right of First Refusal Agreement. *See* Settlement Motion at ¶¶ 5-9.

On July 9, 2013, Neal Erman, a principal of Debtor, filed a Limited Objection to the Motion for Order Approving Settlement objecting to the Landlord's reservation of rights with respect to any and all claims it may hold against the Debtor's members. requesting that Lim Chew be forever barred from bringing any action against Debtor's members including Mr. Erman. *See* ECF #67, at 3.

On July 12, 2013, after a hearing held on July 11, 2013, this Court entered an Order Approving Settlement, Authorizing Sale of Liquor License, and for Other Related Relief. ECF #69.

On July 26, 2013, this Court entered an Amended Order Approving Settlement, Authorizing Sale of Liquor License, and for Other Related Relief. ECF #71. Among other things, it ordered:

> [T]hat the Trustee is authorized and directed to take all actions and execute all documents which may be necessary and appropriate to effectuate the sale of the Debtor's Liquor License to [Livingston Town Center Liquor License, LLC, assignee of Onyx rights under the April 8, 2013 asset purchase agreement] for the sum of $835,000, free and clear of restrictions, special conditions or limitations, all vendors charges, violations, restrictions, liens, liquor bills, claims, interests, and encumbrances (collectively, the "Encumbrances"), such Encumbrances to attach to the proceeds of sale, excepting from any such encumbrances a $62,500 portion of the proceeds [....]

> [T]hat the transfer of the Liquor License to LTC shall be free and clear of all Encumbrances;

> [T]hat the Lease Agreement between the Debtor and Landlord is hereby rejected;

> [T]hat the Right of First Refusal Agreement between the Debtor and the Landlord is deemed rejected;

> [T]hat immediately after closing on the sale of the Liquor License to LTC, $62,500 shall be paid by the Trustee to the Landlord as a consensual "buy out" of any purported first refusal rights Landlord might otherwise hold respecting the Liquor License;

> [T]hat Landlord shall have an allowed general unsecured claim herein of $1,624,621.59;

> [T]hat Landlord's objection to the proposed sale by the Trustee of the Liquor License to Onyx (now LTC) is hereby withdrawn [....]
> *Id.* at 3-4.

The Trustee's sale of the liquor license has been consummated and the trustee is holding the net proceeds thereof.

*Trustee's Motion to Reclassify Alleged Secured Claim of RELM, LLC*

On February 27, 2014, the Trustee filed the instant Motion to Reclassify Alleged Secured Claim of RELM, LLC. ECF #92. Trustee asserts that the Liquor License is Debtor's only asset that has more than *de minimus* value and that the only other asset in the bankruptcy estate is Trustee's right to bring avoidance actions. *See id.* at 4. Therefore, Trustee contends these are the only sources of funds for distribution to creditors. *See id.*

First, Trustee argues that RELM's security interest never attached to the Liquor License. *Id.* at 5. Trustee first concedes that RELM had made a prima facie demonstration that it holds a security interest in all of Debtor's personal property. *Id.* at 5. However, Trustee contends that under New Jersey's Alcoholic Beverage Control Act (the "ABC Act"), liquor licenses cannot be deemed property subject to pledge, lien or any other transfer except for payment of taxes, and therefore, security interests cannot attach to liquor licenses or any proceeds arising from their sale. *See id.* (citing N.J.S.A. § 33:1-26; *In re Chris-Don, Inc. (Chris-Don II)*, 367 F. Supp. 2d 696, 701 (D.N.J. 2005)). Trustee asserts that this is because "liquor licenses do not constitute property to which security interests can attach." Motion to Reclassify at 5 (citing *Chris-Don II*, 367 F. Supp. 2d at 701). Moreover, Trustee asserts that the "liquor license [...] is not deemed to be property of the Debtor under New Jersey law." Motion to Reclassify at 5 (citing N.J.S.A § 33:1-26).

Second, Trustee argues that a Chapter 7 Trustee's avoidance powers cannot be assigned and therefore RELM's lien does not attach to any funds recovered pursuant to Trustee's

avoidance actions. Motion to Reclassify at 5-6 (citing *In re Integrated Testing Prods. Corp.*, 69 B.R. 901, 904-05 (D.N.J. 1987)).

Third, Trustee argues that RELM's claim is not entitled to secured status. Motion to Reclassify at 6. Trustee asserts that since the Liquor License and Trustee's right to prosecute avoidance actions are the only assets in Debtor's estate, and relying on his previous arguments, RELM does not have a lien "secured by a lien on property in which the estate has an interest." *See id.* at 6 (quoting 11 U.S.C. § 506(a)(1)). For these reasons, Trustee requests entry of an order reclassifying RELM's alleged secured claim as a general unsecured claim. *See* Motion to Reclassify at 7.

### *RELM's Opposition*

On March 25, 2014, RELM filed Opposition to the Trustee's Motion to Reclassify. ECF #97. As an initial matter, RELM acknowledges that its lien does not attach to avoidance actions. *Id.* at 2 n.1. RELM asserts that Trustee is essentially arguing that the estate does not have any assets upon which RELM's perfected security interest could attach, because the Liquor License, which the Trustee sold, does not constitute "property" upon which RELM's security interest can attach. *See id.* at 1-2.

First, RELM argues that the bankruptcy court in *In re Chris-Don, Inc. (Chris-Don I)*, though overturned on appeal by the United States District Court for the District of New Jersey, correctly found that the security interest held by the secured creditor in that case against the debtor's assets, extended to the sales proceeds of the debtor's liquor license held by the chapter 7 trustee. *See* Opposition, at 4-5 (citing *In re Chris-Don, Inc. (Chris-Don I)*, 308 B.R. 214 (Bankr. D.N.J. 2004), *order rev'd, Chris-Don II,* 367 F. Supp. 2d 696, 702 (D.N.J. 2005). Further, RELM argues that the District Court's decision reversing the bankruptcy court in *Chris-Don I* is

8

not binding on this Court. Opposition at 7 (citing *In re Brown*, 244 B.R. 62, 64 (Bankr. D.N.J. 2000)).

RELM contends that the District Court's decision in *Chris-Don II* was incorrect for a number of reasons. Opposition at 8. RELM asserts that the Court's acknowledgment that liquor licenses may be "property" in certain specific contexts, such as for purposes of federal due process analysis and the purposes of attachment of a federal tax lien, was inconsistent with its holding that a liquor license is not "property" as a matter of law. *Id.* (citing *Chris-Don II*, 367 F. Supp. 2d at 700). Next, RELM submits that its security interest be considered "property" in light of its position that, by virtue of its security interest in the Debtor's liquor license, its sole remedy was to await liquidation of the Liquor License and then exercise its rights against the proceeds under the UCC. *See* Opposition at 8. RELM contends that this position is not inconsistent with the state's regulatory power. *See id.*

Next, RELM argues that this Court already determined that the Liquor License was "property," either implicitly or explicitly, in authorizing the sale of the liquor license under 11 U.S.C. § 363 since that provision only allows the trustee to sell "property of the estate." *See* Opposition at 8-9 (quoting 11 U.S.C. § 363(b)). RELM continued that §541(a) specifically provides that "property of the estate" must be "property." Opposition at 9 (citing 11 U.S.C. § 541). RELM asserts that whether something is "property" for the purposes of § 541 must be determined by state law under *Butner v. United States*, 440 U.S. 48, 54 (1979). Opposition at 9 (also citing *Krebs Chrysler Plymouth, Inc. v. Valley Motors, Inc.*, 141 F.3d 490, 497 (3d Cir. 1998)). RELM contends then that Trustee must have taken the position, and this Court must have found, that Debtor's Liquor License constituted "property" under New Jersey law in order for the sale to go forward. *See* Opposition at 10.

9

RELM continues that in light of that conclusion, the Court's determination that the Liquor License was "property" is law of the case and cannot be reconsidered in connection with the instant motion. *See id.* (citing *In re Mercedez-Benz Anti-Trust Litig.*, 364 F. Supp. 2d 468, 475 (D.N.J. 2005)). Further, and similarly, RELM asserts that the doctrine of judicial estoppel bars Trustee from now asserting that the Liquor License is not property. *See* Opposition at 11 (citing *Ryan Ops. G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 358 (3d Cir. 1996)).

RELM concludes that if this Court were to adopt the District Court's reasoning in *Chris-Don II*, it would be undermining its own order approving the settlement that authorized the sale of the Liquor License and perhaps undoing the protections afforded to the buyer. *See* Opposition (citing *Krebs*, 131 F.3d at 497 and 11 U.S.C. § 363(m). In addition, RELM asserts that this Court would be establishing precedent that would hamper the ability of trustees to sell liquor licenses, often the only property of value available for distribution to creditors. *See* Opposition at 12.

*Trustee's Reply to RELM's Objection*

On March 28, 2014, Trustee filed a Brief in Reply to RELM's Objection to Trustee's Motion to Reclassify. ECF #99. Trustee asserts that RELM's arguments should be rejected because they ignore controlling New Jersey decisional law, erroneously conflate the definitions of "property" under New Jersey law and the Bankruptcy Code, and fail to take into account relevant Third Circuit precedent. *Id.* at 1.

Trustee argues that New Jersey law prohibits RELM's lien from attaching to the Liquor License because it is not property for purposes of state law, even though it may be treated as property for purposes of federal bankruptcy law. *See id.* at 3. Trustee contends that liquor licenses have long been recognized not to be property under New Jersey law. *See id.* (citing *The*

10

*Boss Co. v. Bd. of Comm'rs of the City of Atlantic City*, 40 N.J. 379, 387-88 (1963); *Butler Oak Tavern v. Div. of Alcoholic Beverage Control, Dep't of Law & Pub. Safety*, 20 N.J. 373, 381 (1956); *Sea Girt Rest. & Tavern Owners Ass'n v. Bor. of Sea Girt*, 625 F. Supp. 1482, 1486 (D.N.J. 1986) *aff'd*, 802 F.2d 448 (3d Cir. 1986) *aff'd sub nom. Appeal of Avon Hotel Corp.*, 802 F.2d 445 (3d Cir. 1986); *Chris-Don II*, 367 F.Supp.2d at 700; *In re Main St. Beverage Corp.*, 232 B.R. 303, 310-11 (D.N.J. 1998)). Trustee also contends that liens and security interests may not attach to liquor licenses except for limited state and federal tax purposes. *See* Trustee's Reply at 3. Finally, Trustee contends that while state law creates and defines the incidents of legal interests, whether such interest falls within a category stated by federal statute is a federal question. *See id.* at 3-4 (citing *21 West Lancaster Corp. v. Main Line Rest., Inc.*, 790 F.2d 354, 356 (3d Cir. 1986)). Trustee continues that the New Jersey Supreme Court has recognized this principal in the context of liquor licenses and federal tax law. *See* Trustee's Reply at 4 (citing *Boss Co.*, 40 N.J. at 387-88). Thus, Trustee asserts that a debtor's interest in a liquor license may be construed as property under federal bankruptcy law while being construed as not property for purposes of state law, as was held in *In re Nejberger*, 934 F.2d 1300, 1301-02 (3d Cir. 1991). *See* Trustee's Reply at 4.

Based on these principles, Trustee contends that this Court's authority to approve the sale of Debtor's Liquor License does not impact RELM's attempt to assert a lien on the proceeds of the sale. *Id.* Trustee summarizes its position as follows: Debtor's Liquor License and Debtor's interest in it do not constitute property under New Jersey law and therefore RELM's security interest, which arises under state law, never attached to the Liquor License; however, Debtor's interest in the liquor license does constitute property of the estate under the Code's more expansive definition of property and therefore Trustee had the power to sell the Liquor

11

License and this Court had the authority to approve the sale. *See id.* at 4-5. Trustee asserts that this position accords with the binding precedent in this jurisdiction. *See id.* at 5.

Trustee argues that *Chris-Don I* and RELM erred by concluding that if an interest is treated as property under federal law, it must also be treated as property under state law. *Id.* Trustee continues that *Chris-Don I* followed this reasoning to conclude that because a liquor license is treated as property for purposes of federal tax law, it should be treated as property for purposes of state law, and therefore it is subject to New Jersey's UCC and may be used as collateral in secured transactions. *Id.* Trustee asserts that this conclusion ignores the principle that federal laws may create and define their own categories and descriptions for interests different than those mandated or created by state law. *See id.* (citing *Boss Co.*, 40 N.J. at 387-88; *Nejberger*, 934 F.2d at 1302; *21 West Lancaster*, 790 F.2d at 356). Trustee contends that in light of this principle, there is no reason to defy the ABC Act's explicit mandate that a liquor license is not property for purposes of New Jersey law. *See* Trustee's Reply at 5. Trustee argues that the Liquor License cannot be a general intangible subject to Article 9 of the New Jersey UCC 12A:9-101 *et seq.* because Article 9 defines general intangibles as "personal property." *See id.* (citing N.J.S.A. 12A:9-102(42)). Therefore, Trustee argues that Article 9 does not provide a basis for RELM to assert a security interest in Debtor's Liquor License. Trustee's Reply at 6 (citing *Chris-Don II*, 367 F.Supp.2d at 701; *Main St. Beverage*, 232 B.R. at 310-11).

Trustee contends that a ruling in RELM's favor would be a "monumental shift" in the state law exempting liquor licenses from consensual liens. *See* Trustee's Reply at 6. Trustee continues that liquor license holders have granted creditors consensual liens in their general intangibles in reliance on this settled law that their liquor licenses were exempt from consensual liens. *See id.* Therefore, Trustee argues that a ruling in RELM's favor would betray the holders'

12

reliance on the ABC Act's explicit statutory protections, create a windfall for secured creditors who did not bargain for a security interest in the liquor license, and severely prejudice the interests of general unsecured creditors. *See id.*

In addition, Trustee argues that a ruling in RELM's favor would create a split between New Jersey state and federal courts on a question of state law. *Id.* Trustee contends that while state courts will continue to deem liquor licenses non-property outside the scope of Article 9 and exempt from creditors' security interests under the ABC Act and state case law, this Court would deem liquor licenses to be general intangible personal property subject to the UCC for purposes of state law. *See id.* Trustee contends that such an outcome would violate the long-standing rule that federal courts must follow state court interpretations of state law and are not free to impose their own views of what state law should be. *See id.* at 6-7 (citing *Horsehead Indus., Inc. v. Paramount Comms., Inc.*, 258 F.3d 132, 140-41 (3d Cir. 2001); *Koppers Co, Inc. v. Aetna Cas. And Sur. Co.*, 98 F.3d 1440, 1445 (3d Cir. 1996); *Kowalsky v. Long Beach Twp.*, 72 F.3d 385, 388 (3d Cir. 1995)).

Trustee concludes that this Court should preserve the well-settled status of liquor licenses as exempt from creditors' security interests under New Jersey law and follow the New Jersey Supreme Court's interpretation of the ABC Act by granting Trustee's Motion and refusing to recognize RELM's asserted security interest in Debtor's Liquor License. Trustee's Reply at 7.

*New Jersey Division of Taxation Brief in Support of Motion*

On April 14, 2014, the New Jersey Division of Taxation ("Division of Taxation") filed a Brief in Support of Trustee's Motion to Reclassify. ECF #104. The Division of Taxation asserts that RELM's security interest cannot attach to Debtor's Liquor License because, pursuant to state

law and long-standing case law, only taxing authorities may attach a lien to a liquor license. *See id.* at 1.

First, the Division of Taxation argues that pursuant to state law, only taxing authorities may attach a lien to a liquor license sale proceeds. *Id.* at 2 (citing *Chris-Don II*, 367 F. Supp. 2d at 701.) The Division of Taxation argues that the District Court in *Chris-Don II* correctly held that the 2001 amendments to the Uniform Commercial Code ("UCC"), N.J.S.A. 12A:1-101 *et seq.* did not override the anti-alienation (anti-lien) provisions of N.J.S.A. 33:1-26. The Division of Taxation asserts that under the ABC Act, a liquor license is not "property" and therefore is not a general intangible subject to the UCC's treatment of security interests. Division of Taxation Brief in Supp. of Mot. at 2. The Division of Taxation contends that when the New Jersey Legislature enacted N.J.S.A. § 33:1-26, it clearly intended to allow only taxing authorities to treat a liquor license as property. Division of Taxation Brief in Supp. of Mot. at 2-3. The Division of Taxation contends that the New Jersey Supreme Court in *The Boss Co. v. Bd. of Comm'rs of the City of Atlantic City*, 40 N.J. 379, 387-88 (1963) held that:

> [t]he liquor license, although transferable, is still to be considered a temporary permit or privilege, and not property, as it always has been, even before our Legislature so declared by statute,... and this consideration is to continue to govern the relationship between state and local government and the licensee. Likewise, the vitality of N.J.S.A. 33:1-26 is in no way diminished...

Division of Taxation Brief in Supp. of Mot. at 3-4. Further, the Division of Taxation asserts that a liquor license does not give the licensee any property rights, nor is it a contract. *Id.* at 4 (citing *Butler Oak Tavern*, 20 N.J. at 381). Instead, it is a personal right in the licensee to conduct a business otherwise illegal, merely a temporary permit or privilege. *See* Division of Taxation Brief in Supp. of Mot. at 4 (citing *Boss Co.*, 40 N.J. at 384). Further, the Division of Taxation asserts that N.J.S.A. § 33:1-26 specifically prohibits the licensee from transferring the liquor

license or granting a creditor a security interest in it. *See* Division of Taxation Brief in Supp. of Mot. at 4. Therefore, the Division of Taxation contends that only taxing authorities are entitled to the proceeds of the sale of a liquor license. *See id.*

The Division of Taxation contends that courts have held that a private creditor is not entitled to the proceeds from the sale of a debtor's liquor license. *Id.* at 5. It asserts that *Chris-Don II* rejected the same arguments that RELM makes here: that N.J.S.A. § 12A:9-408(c) overrides the anti-alienation provision of N.J.S.A. § 33:1-26 and therefore that the creditor is entitled to lien proceeds of the liquor license sale. *See* Division of Taxation Brief in Supp. of Mot. at 5 (citing *Chris-Don II*, 367 F. Supp. 2d at 699). The Division of Taxation continues that the district court noted that revised UCC did not define "personal property" and that N.J.S.A. § 33:1-26 was the "other law [that] determines whether a debtor has a property interest in the nature of that interest" referenced by the legislative comments to revised UCC. *See* Division of Taxation Brief in Supp. of Mot. at 5 (citing *Chris-Don II*, 367 F. Supp. 2d at 700-01).

The Division of Taxation asserts that *In re Main St. Beverage Corp.*, 232 B.R. 303, 310-11 (D.N.J. 1998) similarly rejected Chrysler Capital Corporation's argument that it had a valid and perfected security interest in the debtor's right to receive payment from the proceeds from a liquor license sale with priority over a later-filed IRS tax lien. *See* Division of Taxation Brief in Supp. of Mot. at 5. There, Chrysler conceded that it could not have a security interest in the license itself in light of N.J.S.A. § 33:1-26, but argued that the debtor's right to receive payment from the proceeds of sale was a general intangible under the UCC. *See* Division of Taxation Brief in Supp. of Mot. at 5-6 (citing *Main St. Beverage*, 232 B.R. at 309). The Division of Taxation contends that the court in *Main St. Beverage* relied on *21 West Lancaster Corp. v. Main Line Rest., Inc.*, 790 F.2d 354 (3d Cir. 1986) in rejecting Chrysler's argument, finding no support

in state law for the proposition that the right to receive payment from the proceeds is separable from the license itself. *See* Division of Taxation Brief in Supp. of Mot. at 6 (citing *Main St. Beverage*, 232 B.R. at 310).

The Division of Taxation continues that the Third Circuit in *21 West Lancaster Corp.* held that a liquor license is property for purposes of federal laws but not under Pennsylvania law, and therefore it was not subject to a security interest under the UCC. *See* Division of Taxation Brief in Supp. of Mot. at 6 (citing 790 F.2d at 358). The Division of Taxation notes that the Pennsylvania legislature subsequently amended their statute 47 P.S. § 4-468(d) to permit liquor licenses to be transferred like personal property, but that New Jersey has not so amended the statute relevant here. *See* Division of Taxation Brief in Supp. of Mot. at 7 n.1.

The Division of Taxation concludes that because New Jersey's applicable liquor license statute, N.J.S.A. § 33:1-26, excludes a liquor license from "property" other than for the purposes of attaching a tax lien, these cases establish that a lender may not hold a security interest in a liquor license or the proceeds of its sale. *See* Division of Taxation Brief in Supp. of Mot. at 7 (citing *Main St. Beverage*, 232 B.R. at 310). The Division of Taxation adds that the state legislature could not have been clearer in its choice of statutory language. *See* Division of Taxation Brief in Supp. of Mot. at 7.

Second, the Division of Taxation argues that since the UCC does not apply to state liquor licenses, the UCC may not override the anti-alienation provisions of N.J.S.A. § 33:1-26. *Id.* The Division of Taxation contends that N.J.S.A. § 12A:9-408(c), (e), and (f) together render state statutes or regulations that prohibit or restrict the creation of a security interest in a general intangible ineffective, except for those statutes governing workers' compensation claims, state lottery winnings and structured settlement agreements. *See* Division of Taxation Brief in Supp.

16

of Mot. at 8 (citing N.J.S.A. § 12A:9-408 (c), (e), (f)). However, Division of Taxation asserts that under New Jersey's UCC, a liquor license is not a "general intangible" because only personal property, as defined by state law, can be a general intangible. *See* Division of Taxation Brief in Supp. of Mot. at 8-9 (citing N.J.S.A. § 12A:9- 102(42); N.J.S.A. § 12A:9-408, U.C.C. § 9-408 cmt. 3). The Division of Taxation continues that N.J.S.A. § 33:1-26 is the state law that specifically excludes liquor licenses from being deemed property interests. *See* Division of Taxation Brief in Supp. of Mot. at 9 (citing *Chris-Don II*, 367 F. Supp.2d at 700; *Sea Girt Rest.*, 625 F. Supp. at 1486).

Third, the Division of Taxation argues that RELM's claim that N.J.S.A. § 12A: 9-408 supersedes N.J.S.A. § 33:1-26 violates the fundamental rule of statutory construction disfavoring repeals by implication. *See* Division of Taxation Brief in Supp. of Mot. at 9-10 (citing *Morton v. Mancari*, 417 U.S. 535, 549 (1974); *Mahwah v. Bergen County Bd. of Taxation*, 98 N.J. 268, 281 (1985), *cert. denied sub nom. Demarest v. Mahwah Twp.*, 471 U.S. 1136 (1985)).

The Division of Taxation contends that although the bankruptcy court in *Chris-Don I* found that the repeal of the anti-alienation provisions of N.J.S.A. § 33:1-26 within N.J.S.A. § 12A:9-408 was specific, not implied, *see Chris-Don I*, 308 B.R. at 219, there is no specific declaration in N.J.S.A. § 12A:9-408 evidencing any intent to repeal N.J.S.A. § 33:1-26 in whole or in part. *See* Division of Taxation Brief in Supp. of Mot. at 10. Therefore, the Division of Taxation argues that any repeal within N.J.S.A. § 12A:9-408, to the extent it states that it prevails over any inconsistent state statutes, could only be implied, and the bankruptcy court was required to find clear and compelling evidence of the legislative intent free from reasonable double. *See id.* (citing *Mahwah*, 98 N.J. at 280). The Division of Taxation notes that the state legislature has only amended N.J.S.A. 33:1-26 once to allow for the attachment of state tax liens.

*See* Division of Taxation Brief in Supp. of Mot. at 11. Further, it notes that since liquor licenses have not been viewed as property for several decades, it is reasonable to expect that the state legislature would have specifically referred to them in the UCC amendments if the UCC was intended to control. *See id.* Moreover, the Division of Taxation asserts that N.J.S.A. § 33:1-26 and N.J.S.A. § 12A:9-408 are not irreconcilable, which is required for repeal by implication. *See id.* at 10, 11 (citing Morton, 417 U.S. at 550). For these reasons, the Division of Taxation concludes that N.J.S.A. § 33:1-26 was not repealed by the enactment of N.J.S.A. § 12A:9-408 and therefore the UCC is never reached to determine the extent and nature of a liquor license as collateral because it does not apply to such licenses. *See* Division of Taxation Brief in Supp. of Mot. at 11-12.

Fourth, the Division of Taxation argues that a bank's security interest may not attach to a liquor license because the legislature clearly stated in its 1993 amendment to N.J.S.A. § 33:1-26 that such liens are limited only to taxing authorities. *See* Division of Taxation Brief in Supp. of Mot. at 12. It contends that a holding that a liquor license may only be deemed property for purposes of tax payments is supported by strong public policy, including the Division of Taxation's interest in it as a revenue source and the regulatory interest of the New Jersey Division of Alcoholic Beverage Control ("ABC"). *See id.* The Division of Taxation contends that the N.J.S.A. § 33:1-26 anti-alienation provision was amended in 1993 only for the limited purpose of allowing liquor licenses to be property for the purpose of allowing the imposition of tax liens, as evidenced by the amendment's bill statement. *See id.* at 12-13. The Division of Taxation adds that the legislature has not since amended N.J.S.A. § 33:1-26 to allow a similar exemption for private creditors upon the license or proceeds, citing *Chris-Don II*, 367 F. Supp. 2d at 702, and that the 2001 UCC amendments had no effect on N.J.S.A. § 33:1-26. *See*

Division of Taxation Brief in Supp. of Mot. at 13-14. Therefore, the Division of Taxation concluded that finding that RELM has a valid interest in the proceeds of sale is prohibited by statute and contrary to the public policy and revenue concerns behind the tax lien exemption to N.J.S.A. § 33:1-26. *See* Division of Taxation Brief in Supp. of Mot. at 14.

The Division of Taxation urges that because a liquor license is not property, the UCC does not apply and further cannot be inconsistent with N.J.S.A. § 33:1-26. *See id.* at 14. The Division of Taxation contends that the legislature would not have deprived the Division of Taxation of an important source of revenue without a specific amendment to the ABC Act. *See id.* It continues that the ABC Act prohibits a debtor from pledging a liquor license as collateral and the state legislature's adoption of the 2001 amendments to Article 9 does not demonstrate that it intended to allow debtors to pledge liquor licenses regulated by the ABC as collateral for loans. *See id.* at 14-15.

*New Jersey Division of Alcoholic Beverage Control Motion to Intervene in Support of Motion to Reclassify Claim*

On April 15, 2014, the New Jersey Division of Alcoholic Beverage Control ("ABC") filed a Motion to Intervene in Support of Trustee's Motion to Reclassify Alleged Secured Claim of RELM. ECF #105. As noted above, at the May 22, 2014 hearing this Court granted the ABC's Motion to Intervene in this matter pursuant to Fed.R.Civ.P. 24(b)(2)(A) and an order was entered on that same date.

First, the ABC argues that denial of Trustee's motion will have a negative impact upon the ABC's ability to enforce the legislative mandates of the Alcoholic Beverage Control Act, N.J.S.A. 33:1-1, *et seq.* ("ABC Act"), which depends on continued adherence to the legislatively-enacted and judicially-affirmed position that liquor licenses in New Jersey are not property subject to attachment except by state or federal tax liens. *See id.* at 4 (citing N.J.S.A. §

33:1-26; *Boss Co.*, 40 N.J. at 387)[2]. Therefore, ABC urges that the public interest warrants a finding in favor of Trustee in this matter. ABC Mot. to Intervene at 4.

The ABC also argues that Trustee's Motion should be granted because RELM does not hold a valid security interest in Debtor's liquor license, which is not property subject to attachment under controlling New Jersey Law. *Id.* at 5. The ABC first asserts that liquor licenses are not property under N.J.S.A. § 33:1-26. *Id.* The ABC contends that there is no ambiguity in the ABC Act's explicit provision that a liquor license is not property for any state law purpose except as noted in the ABC's previous argument. *See id.* The ABC further contends that the New Jersey Supreme Court has reinforced this statutory directive repeatedly. *See id.* (citing *Mazza v. Cavicchia*, 15 N.J. 498, 505 (1954); *Butler Oak Tavern*, 20 N.J. at 381; *Kalogeras v. 238 Broad Ave., LLC*, 202 N.J. 349, 360, 363 (2010)). The ABC notes that New Jersey courts have interpreted N.J.S.A. § 33:1-26 to prevent the license from being subject to control by a non-licensee. *See* ABC Mot. to Intervene at 5-6 (citing *Walsh v. Bradley*, 121 N.J. Eq. 359, 360 (N.J. Ch. 1937) ; *Lachow v. Alper*, 130 N.J. Eq. 588, 590 (N.J. Ch. 1942); *Takacs v. Horvath*, 3 N.J. Super. 433, 437 (N.J. Super. Ct. Ch. Div. 1949); *B & G Corp. v. Mun. Council of the Twp. of Wayne*, 235 N.J. Super 90, 94 (N.J. Super Ct. App. Div. 1989)). The ABC contends that state law creates and defines property interests, citing *Butner*, 440 U.S. at 55, N.J.S.A. § 33:1-26 and the state Supreme Court cases control and preclude RELM from having a security interest in Debtor's Liquor License. *See* ABC Mot. to Intervene at 6-7.

Next, the ABC asserts that policy underlying N.J.S.A. § 33:1-26 and the public interest dictate that New Jersey licensees cannot grant security interests in their liquor licenses. *See id.* at

---

[2] The ABC further notes that even a taxing authority's seizure of a license only grants it the right to consent to its transfer, not the right to operate the license. *See* ABC Mot. to Intervene at 4 n.1. Thus, the ABC contends that a liquor license remains free and clear of any device through which persons other than the licensees could exercise control over the license. *See id.* (citing *Boss Co.*, 40 N.J. at 387).

7. The ABC cites to the "inherently far-reaching dangers" of the alcoholic beverage industry, citing *Fanwood v. Rocco*, 33 N.J. 404, 311 (1960) and contends that the intent of N.J.S.A § 33:1-26's anti-alienation provision is to protect the liquor license from *any device* which would subject it to the control of person other than the licensee, citing *Boss Co.*, 40 N.J. at 388. *See* ABC Mot. to Intervene at 7.

The ABC continues that primary control of the approximately 12,500 retail liquor licenses rests with the municipal issuing authorities but the ABC directly polices each license and enforces the mandates of the ABC Act. *See id.* The ABC contends that it relies on the unambiguous language of N.J.S.A. § 33:1-26 defining a license as a privilege and not a property right to enable the ABC to ensure that only those who are qualified may receive an interest in the license. *See id.* at 7-8 (citing *Kalogeras*, 202 N.J. at 360). The ABC asserts that N.J.S.A. § 33:1-26's exclusion of liquor licenses from property and prohibition of attachments or liens thereto is a tool for preventing undisclosed influences over licensees. *See* ABC Mot. to Intervene at 8. The ABC argues that to hold otherwise "would authorize a virtual black market in liquor licenses" such that the ABC would be unable to strictly regulate the industry and enforce the legislative purposes of the ABC Act. *See* ABC Mot. to Intervene at 8 (citing *B & G Corp.*, 235 N.J. Super. at 94). The ABC contends that it would not be able to identify secured interest holders to determine their eligibility or ineligibility under the ABC Act. *See* ABC Mot. to Intervene at 9 (citing N.J.S.A. §§ 33:1-25, -26, -31, -43; N.J.S.A. § 9:17B-1). The ABC posits that these secured interest holders could exercise control over licensees by threatening to declare a breach of the security agreement to strong-arm a licensee into making business decisions that violate the ABC Act or accelerate the underlying loan to force a sale of the license and obtain the proceeds. *See* ABC Mot. to Intervene at 9. Therefore, the ABC asserts that continued

enforcement of the ABC's legislative mandates depends on the premise that liquor licenses are not property and that security interests cannot be granted in them. *See id.* at 10.

Third, the ABC argues that RELM's contention that it has a security interest in Debtor's liquor license as property based on the 2001 revisions to Article 9 not only defies N.J.S.A. § 33:1-26's express definition of a liquor license as "not property" and subsequent New Jersey Supreme Court interpretations, but also depends entirely on *Chris-Don I*, which was reversed by the District Court. *See* ABC Mot. to Intervene at 10.

The ABC asserts that cases holding that liquor licenses have the characteristics of property for federal purposes are inapposite. *See id.* at 11. The ABC contends that the first context in which this has been found, for the limited purpose of federal tax liens pursuant to §6321 of the Internal Revenue Code, citing *Boss Co.*, 40 N.J. at 387, is not relevant here because the U.S. Supreme Court has made clear that "the federal tax lien statute itself creates no property rights but merely attaches consequences, federally-defined to rights created under state law", citing *U.S. v. Craft*, 535 U.S. 274, 279 (2002). The ABC contends that because RELM is a private party, this Court must look to N.J.S.A. § 33:1-26 and conclude that no property rights arise from a New Jersey liquor license. ABC Mot. to Intervene at 11. The ABC continues that the court in *Sea Girt* opined that a liquor license is considered to have the qualities of property sufficient to subject it to due process protection under the Fourteenth Amendment. *See id.* at 12 (citing *Sea Girt*, 625 F. Supp. at 1487). However, the ABC contends that this does not transform liquor licenses into property for state law purposes or bankruptcy proceedings, which would be contrary to N.J.SA. § 33:1-26's definition of liquor licenses as "not property." *See* ABC Mot. to Intervene at 12 (citing *Main St. Beverage*, 232 B.R. at 310). The ABC asserts that as a private creditor presenting no question of federal law, RELM is bound by the state law characterization

of Debtor's Liquor License. *See* ABC Mot. to Intervene at 12 (citing *Butner*, 440 U.S. at 55).

The ABC argues that RELM's "law of the case" argument- that this Court already deemed the liquor license to be "property" in authorizing Trustee to sell the Liquor License- misses the mark because it presupposes that RELM had an enforceable right to the license itself. *See* ABC Mot. to Intervene at 12-13. The ABC also notes that RELM cannot argue that its security interest entitles it only to the proceeds of the sale because the bifurcation of rights arising from liquor licenses is precluded. *See id.* at 13 n.4 (citing *B & G Corp.*, 235 N.J. Super at 95) (noting that "it is clear to us that under N.J.S.A. 33:1-26 a right to consent to a license transfer is a right inseparable from the license itself." Therefore, the ABC contends that this Court is bound by the state law's determination, absent further legislative amendment, that under N.J.S.A. § 33:1-26, the holder of a liquor license has no property interest in it. *See* ABC Mot. to Intervene at 13 (citing *Main Street Beverage*, 232 B.R. at 310).

Next, the ABC contends that liquor licenses fall outside the scope of Article 9. ABC Mot. to Intervene at 13-14. The ABC asserts that *Chris-Don I*, on which RELM relies, was incorrect in holding otherwise. *See id.* at 14. The ABC first notes that Article 9 only governs items that are personal property as defined by applicable state law in light of Article 9's failure to define the term. *See id.* (citing N.J.S.A. § 12A:9-109(a)(1); N.J.S.A. § 12A:9-101, cmt. 1; N.J.S.A. § 12A:9-408, cmt. 3). The ABC cites *Chris-Don II* for its observation that the state legislature enacted Article 9, applicable only to personal property, against a backdrop of New Jersey law which provides that a liquor license is not property except with regard to state and federal tax liens and federal due process requirements. *See* ABC Mot. to Intervene at 14 (citing *Chris-Don II*, 367 F. Supp. 2d at 701-02). The ABC also asserts that because N.J.S.A. § 12A:9-408 applies to "general intangibles" which are defined as personal property pursuant to N.J.S.A §

12A:9-102(a)(42), and as N.J.S.A. 33:1-26 explicitly states that liquor licenses are not property, liquor licenses also cannot be general intangibles within the scope of Article 9. *See* ABC Mot. to Intervene at 14-15. The ABC rejects *Chris-Don I*'s conclusion that Article 9 trumps the ABC Act in furtherance of broadening the scope of collateral to increase a debtor's access to credit, citing 308 B.R. at 218, responding that the state legislature's explicit definition of liquor licenses as "not property" demonstrates that liquor licenses were not targeted by their revision to Article 9. *See* ABC Mot. to Intervene at 15. The ABC observes that the state legislature neither amended the ABC Act nor declared an attempt to repeal the relevant provision of the ABC Act to bring liquor licenses within the scope of Article 9. *See id.* (citing *Rodgers v. U.S.*, 185 U.S. 83, 87-89 (1902); *Mahwah*, 98 N.J. at 281). In contrast, the ABC refers to Pennsylvania's treatment of the same issue in *In re Walkers Mill Inn, Inc.*, 117 B.R. 197, 199 (Bankr. W.D. Pa. 1990), which was to legislatively re-characterize liquor licenses to be property with respect to the licensee and third parties while maintaining the treatment of liquor licenses as a personal privilege between the Pennsylvania Liquor Control Board and the licensee under the revised Penn. Liquor Code, 47 P.S. 4-468(d). *See* ABC Mot. to Intervene at 15-16 (citing *Walkers Mill Inn*, 117 B.R. at 199). The ABC asserts that because of this explicit amendment to the state law definition of liquor licenses, absent in the New Jersey ABC Act, courts have held that Pennsylvania liquor licenses fall within the scope of Pennsylvania's UCC as general intangibles and are thereby subject to security interests. ABC Mot. to Intervene at 16 (citing *In re Ciprian Ltd*, 473 B.R. 669, 674 (Bankr. W.D. Pa. 2012)). The ABC contends that the only logical conclusion, reached in *Chris-Don II*, 367 F. Supp. 2d at 701, is that the ABC Act and the UCC do not conflict because N.J.S.A. § 12A:9-408 simply does not apply to liquor licenses which, pursuant to N.J.S.A. 33:1-26, are excluded from being deemed personal property. *See* ABC Mot.

to Intervene at 16. Therefore, the ABC concludes that RELM does not possess a valid security interest in Debtor's liquor license and merely holds a general unsecured claim to the proceeds from the sale of the liquor license. *See id.*

### RELM's Reply in Further Support of Its Objection to Trustee's Motion and Objection to ABC's Motion to Intervene

On May 12, 2014, RELM filed a (I) Reply in Further Support of its Objection to the Trustee's Motion to Reclassify its Secured Claim and (II) Objection to the State of New Jersey, Division of Alcoholic Beverage Control's Motion to Intervene. ECF #110. RELM contends that if the State is correct that Debtor's liquor license is not "property" under New Jersey law, the underlying implication is that a liquor license cannot become property of the bankruptcy estate which can be sold, against which actions are stayed by §362, and in whose value creditors can share. *See id.* at 2. RELM continues that the Trustee argues that Debtor's liquor license is "not property" under New Jersey law but that it is "property" for the purposes of the bankruptcy estate. *See id.* RELM contends that Trustee's argument that Debtor's Liquor License can be liquidated for the benefit of administrative and general unsecured creditors but not for the benefit of a secured creditor with a blanket lien is logically- and legally-inconsistent. *See id.*

RELM asserts that the State's argument that allowing RELM's security interest to attach to the sale proceeds would interfere with ABC's ability to perform its statutory and regulatory duties misstates RELM's position. *See id.* at 3. RELM contends that it does not assert that it held a lien against Debtor's liquor license that would have allowed RELM to foreclose on it or otherwise interfere with the ABC's regulatory and police powers. *See id.* Instead, RELM contends that its lien attached to the private economic value of Debtor's liquor license, a general intangible. *Id.* RELM argues that this separate asset, this private right to obtain economic value from the liquor license in accordance with New Jersey law, constitutes property which this Court

25

properly authorized Trustee to sell and convert to cash upon the ABC's approval of the transfer. *See id.*

RELM contends that this bifurcation of the public regulatory interest in the liquor license, with which a secured party cannot interfere, and the private economic interest in the liquor license, to which a secured creditor has a claim, is explicitly recognized in N.J.S.A. § 12A:9-408. *See id.* at 3-4. RELM continues that bankruptcy sales of Federal Communications Commission ("FCC") licenses provide a nearly identical context wherein the case law recognizes the right of a secured creditor to hold a lien against the license's private economic value and attach to the proceeds of the sale. *See id.* at 4. RELM contends that this body of case law has developed despite the fact that allowing such liens would necessarily impact the agency's regulatory authority. *See id.* Thus, RELM argues that remedies have been fashioned for the benefit of all stakeholders which allow regulatory agencies to continue their authority over the licenses, allow entities to use the economic value of their license as collateral, protect secured creditors by allowing their liens to attach to the economic value of a license and the sale proceeds of that license, and allow debtors and trustees to liquidate those licenses in bankruptcy. *See id.*

First, RELM argues that its properly perfected security interest in the private economic value of Debtor's proprietary right in its Liquor License attached to the proceeds of the sale. *Id.* RELM contends that none of the legal authority cited by Trustee, the Division of Taxation or the ABC address the specific issues here, which are 1) whether a debtor has a property interest in the inherent private economic value associated with a liquor license and 2) the priority among creditors with respect to the proceeds derived from the economic value arising from the transfer of that liquor license in accordance with applicable law. *Id.* at 6. RELM asserts that a liquor license has independent private economic value to a licensee, and therefore, a debtor has a

26

property interest in that value under New Jersey law even though the debtor does not have a property interest in the liquor license itself. *See id.* RELM contends that this economic value, a general intangible, constitutes "property" that becomes property of the estate under §541. *See id.* at 6-7 (citing *Nejberger*, 934 F.2d at 1302; *Travelers Cas. & Sur. Co. of Am. v. Pacific Gas & Elec. Co.*, 549 U.S. 443, 450-51 (2007); *Butner*, 440 U.S. at 49).

RELM continues that if this Court were to accept the State's argument that a liquor license is not "property" under New Jersey law, the Liquor License could not become property of the estate under 11 U.S.C. § 541 that could be sold under §363. *See* RELM Reply at 7. RELM notes that this Court would not have exclusive jurisdiction over the License under 28 U.S.C. §1334(e), the License could not be sold and the proceeds used for creditor recovery, and the License would not be subject to the automatic stay under 11 U.S.C. §362. *See id.* RELM asserts that since this Court has already approved Trustee's sale of Debtor's Liquor License, suggesting that the private economic value of the license was property of the estate under §541 and §363, there is no logical support for the State's argument that a liquor license is not "property." *See id.*

RELM contends that Trustee's argument that a liquor license is not "property" under state law but is property of the estate under §541 directly contradicts *Butner* because state law determines the scope of property rights included in property of the estate and an asset must be "property" in the first place to be considered property of the estate. *See id.* at 7-8 (citing *Westmoreland Human Opportunities, Inc. v. Walsh*, 246 F.3d 233, 241 (3d Cir. 2001)). RELM asserts that *Nejberger*, on which Trustee relies in support of his argument, actually supports RELM's position. RELM Reply at 8. RELM argues that the Third Circuit *Nejberger* found that even though a Pennsylvania statute stated that a liquor license was not property under state law, the license still had independent economic value to the debtor which *did* constitute a property

right and which trumped the label placed on the liquor license by the state statute. *See id.* (citing *Nejberger*, 934 F.2d at 1302). RELM asserts that the Third Circuit looked to §541, *Butner*, and state law to determine whether a property right existed in the liquor license. *See* RELM Reply at 9 (citing *Nejberger*, 934 F.2d at 1302). RELM contends that the Third Circuit was not willing to blindly follow the Pennsylvania statute's language and instead determined that it is the substance of the right or interest, not "'the label…that state law affixes to a particular interest in certain contexts'" that is dispositive. *See* RELM Reply at 9 (quoting *Nejberger*, 934 F.2d at 1302). RELM contends that the Third Circuit ultimately ignored Pennsylvania's label that the liquor license was not "property", finding instead that because a liquor license has significant independent economic value to the license holder, the liquor license had the characteristics of property and was therefore "'appropriately considered property of the estate.'" (quoting *Nejberger*, 934 F.2d at 1302)[3]. RELM concludes that here, like *Nejberger*, this Court must have determined that the independent economic value of Debtor's Liquor License constituted "property" which became property of the estate to authorize Trustee's sale of the License under §363. *See* RELM Reply at 9-10 (citing § 363(b)).

RELM adds that the language in the ABC Act and case law, which provides a liquor license is not property but a temporary permit or privilege, focuses on the public and regulated right to sell intoxicating beverages, which is only one aspect of the rights and interests granted to the holder. *See* RELM Reply at 10. Moreover, RELM contends that New Jersey case law has established that a liquor license has a private and independent economic value from the proceeds of its transfer. *See id.* (citing *Sea Girt*, 625 F. Supp. at 1488).

---

[3] RELM also cites to *In re Peirce*, 483 B.R. 368, 377-78 (Bankr. D. Mass. 2012) where, it urges, the bankruptcy court adopted the logic in *Nejberger* to determine that the power to alter, amend or revoke a trust should be considered property for the purposes of a *Butner* analysis even though Massachusetts state courts had held that such a right was not "property." *See* RELM Reply at 10 n.3.

RELM thus argues that the State simply focuses on the state labels instead of the substance of the rights. *See* RELM Reply at 10-11. RELM asserts the State cannot ignore that the private economic value in a liquor license is a property interest, one of the bundle of rights encompassed by the license, which constitutes a general intangible under Revised Article 9. *See id.* (citing *In re Tracy Broad. Corp.*, 696 F.3d 1051, 1065 (10th Cir. 2012), *cert. denied sub nom. Spectrum Scan, LLC v. Valley Bank & Trust Co.*, 133 S. Ct. 2340 (2013)). RELM continues that this separation of the private economic value rights and the public or regulatory rights is both logical and consistent with Revised Article 9. *See* RELM Reply at 11. Further RELM contends that *B & G Corp.*, on which the ABC relies to reject such bifurcation, did not involve an assertion of the private economic value right but an impermissible assertion of an interest in the public right to transfer, and therefore is inapplicable. *See* RELM Reply at 11 n.5 (citing *B & G Corp.*, 235 N.J. Super at 92).

RELM continues that Trustee, the Division of Taxation and the ABC essentially ignore the application of Revised Article 9 to the instant case despite the fact that the New Jersey legislature, in enacting revised Article 9, specifically amended the commercial code to render ineffective statutes that restrict assignment. *See* RELM Reply at 11-12 (citing *Chris-Don I*, 308 B.R. at 217). Therefore, RELM argues that N.J.S.A. § 12A:9-408 specifically overrides those provisions in the ABC Act that prevent a lien from attaching to a liquor license. *See* RELM Reply at 12. RELM contends that instead of substantively addressing Revised Article 9, the State chooses to present negative consequences of allowing a creditor to hold a lien against a liquor license based on the State's "misplaced assumption" that applying Revised Article 9 to liquor licenses would strip the ABC of its regulatory and enforcement powers. *See id.* (citing ABC Mot. to Intervene at 8, 9).

RELM contends that these are without merit. RELM Reply at 12. First, RELM emphasizes that it does not assert any rights in or to Debtor's Liquor License here, but only asserts a lien upon and entitlement to priority distribution on the proceeds from the sale arising from its first priority lien against the independent economic value associated with the License. *See id.* at 12-13. Second, RELM asserts that the State's argument ignores that Revised Article 9 specifically preserves the State's police powers over a liquor license notwithstanding a creditor's ability to enforce its lien against an interest in a liquor license. *Id.* at 13, *citing* N.J.S.A. 12A:9-408(c) and (d). RELM contends that under N.J.S.A. § 12A:9-408(d), the creation, attachment or perfection of a security interest in a general intangible does not entitle the secured party to use or assign the debtor's rights under the general intangible to the extent that the attachment of the security interest would be ineffective under other law but effective under Revised Article 9. *See id.* at 13. RELM thus argues that N.J.S.A. § 12A:9-408 specifically anticipated the scenario presented in this case and anticipates allowing RELM's lien to attach to the proceeds of Debtor's Liquor License while simultaneously prohibiting RELM from using or assigning Debtor's rights without regulatory supervision or approvals. *See id.* at 14-15. (citing N.J.S.A. § 12A:9-408, cmt. 7, ex. 4; *Tracy Broad.*, 696 F.3d at 1064).

RELM continues that this bifurcation is also consistent with federal case law in the "nearly-identical" context of enforceability of security interests in FCC licenses and the proceeds generated from their sale. *See* RELM Reply at 15. RELC contends that in those cases, the State also took the position that no lien could attach to the licenses or the proceeds of their sale because the lien would interfere with the agency's statutory obligations to regulate and police their transfer. *See id.* (citing *In re TerreStar Networks, Inc.*, 457 B.R. 254, 261-62 (Bankr.

30

S.D.N.Y. 2011)). RELM contends that in *In re Ridgley Commc'ns, Inc.*, 139 B.R. 374 (Bankr. D.M.D. 1992), the court observed that:

> "[the secured creditor] is not asserting any interest in the rights of the licensee with respect to the [FCC]. The right to transfer a license is a right between the [FCC] and the licensee; the right to receive remuneration for the transfer is a right with respect to two private parties. It is this limited right in which [the secured creditor] claims to have a perfected security interest."

RELM Reply at 16 (quoting *Ridgley Commc'ns*, 139 B.R. at 378-79). RELM continues that the court in *Ridgley Communications* ruled that the secured creditor, who held a first priority lien an all the debtor's tangible and intangible property, had a right to receive the proceeds of the sale of the debtor's FCC licenses in the bankruptcy. *See* RELM Reply at 15, 16. RELM contends that the *Ridgley Communications* court observed that:

> [A] creditor may perfect a security interest in a debtor's F.C.C. broadcasting license, limited to the extent of the licensee's proprietary rights in the license vis-à-vis private third parties. The right of the licensee crucial to this decision (and the only right recognized by the Court in this case) is the right of the creditor to claim proceeds received by the debtor licensee from a private buyer in exchange for the transfer of that license to the buyer. *The right to receive such proceeds is a private right of the licensee that constitutes a proprietary interest in which a creditor may perfect a security interest....* The holding is not a recognition of a general right of creditors to take blanket security interests in broadcast licenses. Nor does the security interest recognized here entitle the creditor to "foreclose" on a broadcasting license . . . or to compel the initiation of a transfer or assignment of a license to a private third party. *These are rights of the licensee vis-à-vis the F.C.C. and may not be abrogated by private agreement.*

RELM Reply at 16 (quoting *Ridgley Commc'ns*, 139 B.R. at 379 (internal citations omitted)). RELM adds that subsequent cases have adopted the position that a lien can attach to the private economic value associated with a license. RELM Reply at 17 (citing *In re Application of Walter O Cheskey, Tr.-in-Bankr. for N.C.P.T. Cellular, Inc. (Assignor) & Triad Cellular L.P. (Assignee)*, 9 F.C.C. Rcd. 986, 987 (1994), *aff'd* 13 F.C.C. Rcd. 10656 (1998), *pet. for rev. denied sub nom. Amarillo CellTelCo v. F.C.C.*, 1998 WL 796204 (D.C. Cir. Oct. 2, 1998); *TerreStar*, 457 B.R. at 264) (listing cases)). RELM emphasizes that these cases recognize that

the right to receive proceeds from the transfer of a license is a proprietary interest in which a creditor may perfect a security interest, citing *Ridgley Commc'ns*, 139 B.R. at 379, independent from the public rights as between the licensee and the regulatory body. *See* RELM Reply at 17. RELM continues that the Tenth Circuit in *Tracy Broadcasting* recognized that both the FCC license law and Revised Article 9 ban liens on the license as a whole but authorize liens on the right to sale proceeds. *See* RELM Reply at 17 (citing *Tracy Broad.*, 696 F.3d at 1064-65). RELM adds that the *Ridgley* court similarly found that a licensee possesses *some* property interest, albeit limited, in the broadcast license because the license had economic value and was transferrable for a profit subject to FCC approval. *See* RELM Reply at 17-18 (citing *Ridgley*, 139 B.R. at 376). RELM argues that similar to the Third Circuit's holding in *Nejberger*, important to the *Ridgley* court's holding was a finding "that a licensee possesses <u>some</u> property interest, <u>albeit limited</u> in the broadcast license" because the license had economic value and was transferable for a profit, subject to FCC approval. *See* RELM Reply at 18 (*citing Ridgley Commc'ns* 139 B.R. at 376.

RELM contends that the State's argument that a liquor license is not property under New Jersey law for any purpose ignores well-settled law. *See* RELM Reply at 18 (citing *Sea Girt*, 625 F. Supp. at 1448; *Boss Co.*, 40 N.J. at 387) (holding that a liquor license is property for due process purposes and federal tax lien purposes, respectively). RELM thus asserts that the property interest arising from Debtor's private economic interest in the value of its Liquor License is the general intangible upon which RELM held a first priority security interest which became a first priority lien against the proceeds when Trustee sold the license. *See* RELM Reply at 18.

Finally, RELM contends that the ABC's Motion to Intervene must be denied on both procedural and substantive grounds and because the ABC has no interest in this dispute over the entitlement to the proceeds of a liquor license which has already been sold. *See id.* at 5.

*Lim Chew Corp.'s Joinder*

On May 15, 2014, Lim Chew, former landlord and creditor herein, filed a Joinder in Motion of Trustee for an Order Reclassifying the Secured Claim of RELM, LLC. ECF #112. Lim Chew argues that New Jersey law and the cases interpreting it are clear that a security interest cannot attach to liquor licenses or the proceeds of their sale. *Id.* at 1. Lim Chew also notes that RELM is an insider of Debtor and contends that RELM is attempting to assert a security interest purportedly obtained by Northern Bank. *Id.* at 1-2. Lim Chew also notes that one of RELM principals, Matthew Stadtmauer, also a Debtor insider, was one of the borrowers on the loan from Northern Bank, along with the Debtor and Neal Erman. *Id.* (citing Claim 22, Ex. A). Lim Chew continues that the Liquor License is Debtor's only material asset in this case and that not reclassifying RELM's claim to a general unsecured claim will necessarily prejudice all other valid, non-insider creditors, including Lim Chew. *See* Lim Chew's Joinder at 2. Lim Chew also asserts that this Court should consider that RELM redacted the amount that RELM paid to Northern Bank for its purported assignment of Northern Bank's claim. *See id.* (citing Claim 22, Ex. F). Lim Chew asserts that Stadtmauer, through RELM, has discharged his personal obligations on the loan and those of Neal Erman, by paying some unknown consideration to Northern Bank without disclosing the terms of such payment and release. *See* Lim Chew's Joinder at 2. Lim Chew contends that under 11 U.S.C. §509, subrogation by a co-debtor requires payment in full of the underlying claim; otherwise, the claim is disallowed. *Id.* (citing *In re Southwest Equip. Rental, Inc.*, 193 B.R. 276, 284 (E.D. Tenn. 1996)). Lim Chew

reserves the right to further object to this and any claim filed by RELM in this matter. Lim Chew's Joinder at 3.

*Stadtmauer Certification*

On May 16, 2014, Matthew Stadtmauer filed a Certification in Response to Lim Chew's Joinder. ECF #113. Stadtmauer attached an unredacted copy of the assignment and assumption agreement between Northern Bank and RELM as Exhibit A.

Stadtmauer asserts that RELM is not only a creditor of the Debtor, but also an equity interest holder in Debtor and that RELM did not have any involvement in its operational, governance, or management decisions. *See id.* at 1. Stadtmauer also asserts that Lim Chew's Joinder is untimely and should not be considered by this Court. *See id.* Stadtmauer continues that Lim Chew's assertions are irrelevant to the legal arguments in Trustee's Motion and further, are inaccurate or untrue. *See id.* at 2. First, Stadtmauer contends that RELM was a passive investor in Debtor. *Id.* Stadtmauer continues that RELM is a limited liability company whose equity is wholly-owned by his wife, Lauren Stadtmauer, the sole member. *Id.* Stadtmauer denies that he ever had an ownership interest in or was a principal of RELM. *Id.* Next, Stadtmauer contends that in May 2013, RELM purchased and took by assignment all of Northern Bank's interests and rights in the loan and security agreement with Debtor as evidenced by the documentation accompanying RELM's proof of claim. *See id.* Stadtmauer asserts that RELM did not purchase Northern Bank's interest in the loan at a discount. *Id.* Stadtmauer contends that RELM purchased Northern Bank's interest for $352,066.64, which was more than the outstanding principal balance of $345,000 due and owing from Debtor to Northern Bank under the loan. *Id.*

*May 22, 2014 Hearing:*

On May 22, 2014, the Court conducted a hearing on the instant motions. The Court first heard ABC's Motion to Intervene and RELM's objection thereto. The Court then granted ABC's Motion and entered an appropriate Order.

The Court then heard argument on Trustee's Motion to Reclassify RELM's claim. First, Trustee argued that the issue was a matter of clear statutory interpretation, asserting that the ABC Act clearly provides that a liquor license and the rights thereunder shall not be deemed property. Trustee continued that New Jersey case law is consistent in recognizing that a liquor license is not property for state law purposes other than for state tax liens, but can be deemed property for two federal law purposes. Trustee asserted that those federal purposes are federal tax liens and, as recognized in *Nejberger*, the Federal Bankruptcy Code. Trustee contended that there was substantial similarity between the Pennsylvania statue at issue in *Nejberger* and the ABC Act in this case.

This Court inquired as to whether Trustee was taking inconsistent positions by arguing that the Liquor License can be sold under 11 U.S.C. § 363 but also arguing that is not a property interest to which a lien can attach under state law. Trustee responded that *Nejberger* observed that while state law creates legal interests and defines their incidence, whether that interest falls within a category stated by a federal statute is a federal question. Thus, Trustee argued that the Liquor License and the interests thereunder can be property for one purpose but not for another.

Trustee continued that if the Liquor License is deemed not subject to RELM's lien, the proceeds of the sale of the Liquor License are also not subject to RELM's lien. Trustee asserted that the ABC Act's inclusion of the "rights thereunder" language, and the district court's interpretation in *Main Street Beverage* demonstrate that proceeds are "rights thereunder" the

liquor license and likewise not property for purposes of state law. Thus, Trustee argued that RELM should be treated as an unsecured creditor.

RELM argued in response that the analysis should begin with property of the estate under 11 U.S.C. § 541 and *Butner*, which dictates that property interests are created and defined by state law, not federal law. RELM asserted that Trustee's argument was that the Liquor License was not property under New Jersey law but it was property under the Bankruptcy Code. The Court interjected that there may be a difference between saying an asset is not property under New Jersey law and saying that it is not property or an interest that may be liened under New Jersey law. RELM responded that there was necessarily a conflict in Trustee's argument because an asset cannot be property under the Bankruptcy Code if it is not property under state law. RELM contended that such an interpretation would render impermissible sales of liquor licenses in the bankruptcy court, which sales in fact happen routinely.

RELM continued that if Trustee's argument is that the Liquor License can be property but the ABC Act limits the ability to attach a lien, the UCC's anti-alienation provision in Revised Article 9 would permit RELM's lien to attach. RELM concluded that Trustee therefore must argue that liquor licenses are not property at all, and therefore not general intangibles, to avoid application of the UCC.

Responding to inquiry by this Court, RELM contended that one had to consider the UCC and the ABC Act together. RELM contended that the UCC permits the attachment of a lien to the License under 9-408(c). However, RELM also asserted that, as explained in Example 4 in the comments to section 9-408, subsection (d) limits that lien right by preventing the creditor from interfering with the power of the regulatory agency, prohibiting the creditor from exercising control over the license, and effectively requiring the creditor to wait for the sale of the license

36

and the proceeds. Thus, RELM argued that the UCC allows more than just a lien in the proceeds, which would be impermissible without a valid lien in the underlying asset. RELM argued that the UCC allows a limited lien in the license itself. RELM distinguished this from the approach taken in the FCC cases, which permit a lien in the economic interest, i.e. the proceeds, but not in the license.

RELM argued that Trustee's reading of *Nejberger*, that it is a federal question of whether a license is property under federal law even though the license is not property under state law, would render *Nejberger* inconsistent with *Butner*. RELM contended that that may be permissible in the context of federal taxes as in *21 West Lancaster*, but the Bankruptcy Code and *Butner* dictate that property rights for bankruptcy purposes are a state law question. Therefore, RELM concluded that the Liquor License must either be deemed property or not property. RELM continued that if it is property, it must be property for all purposes and for the benefit of all creditors, not just unsecured creditors. The Court noted that even if RELM's claim was reclassified as unsecured, RELM would benefit from the liquidation of the license. RELM responded that it would not receive the benefit of its bargain as the assignee of a secured creditor that lent in reliance on the value of Debtor's business.

In response to this Court's inquiry regarding implied repeal, RELM argued that 9-408 in fact explicitly modifies all statutes that limit the ability to attach or lien property except for those statutes that fall within subsection (f). Therefore, because the ABC Act was omitted from the exceptions in subsection (f), there is no implied repeal and 9-408 effectively modifies the ABC Act.

Next, RELM argued that Trustee's prior settlement with the landlord Lim Chew is inconsistent with an assertion that the Liquor License cannot be liened. RELM contended that

the settlement included a payment of approximately $62,000 from the Liquor License proceeds to Lim Chew. RELM asserted that this payment reflects at least an implicit recognition by Trustee that a creditor's interest could attach to the Liquor License. Moreover, RELM asserts that this Court's approval of that settlement likewise reflects an acceptance of Trustee's purported recognition. RELM asserted that this supports the argument that Trustee should be judicially estopped from denying RELM a secured position as to the proceeds.

RELM also argued that the 1998 case *Main Street Beverage*, wherein the district court rejected a secured lender's claim that it had a lien on the proceeds of a liquor license sale, is distinguishable. In particular, RELM noted that the district court found that the creditor's argument was not supported by any New Jersey statute in effect at that time, but also observed that the passage of a statute that did allow a licensee to grant a lien on the economic value of a liquor license would have changed the outcome. RELM contended that three years later, in 2001, the New Jersey legislature passed that very statute in revised 9-408.

RELM argued that the ABC's contention that allowing RELM's security interest to attach would impair the ABC's ability to regulate liquor license holders is untrue. RELM referred again to 9-408(d), which it contended prevents lienholders from exercising control over the license. In support, RELM cited to the FCC case *Tracy Broadcasting* and its analysis of revised 9-408 which RELM argues is applicable here even though the statutes creating the licenses are different. RELM asserted that that *Tracy Broadcasting* and Example 4 in the comments to 9-408 support RELM's contention that 9-408(c) and (d) together allow a lien to be placed on a license without infringing on the regulatory authority's right to police and regulate that license. This Court inquired as to the strength of that analogy given that the underlying law is different and given RELM's opening argument that *Butner* mandates that state law determines property

38

interests. RELM responded that an analysis under *Butner* could only lead to the conclusion that the Liquor License is not property of the estate under the Bankruptcy Code. RELM asserted that *Nejberger* does not change that analysis. RELM contended instead that *Nejberger*, in applying *Butner*, looked beyond the state law label to the substance of the right and determined that a Pennsylvania liquor license is property. RELM argued that even though the New Jersey statute says that a liquor license is not property, the economic value attributable to liquor licenses, which has been recognized by New Jersey state court cases including *Sea Girt*, must be considered.

RELM concluded by emphasizing that it was not asking this Court to change New Jersey jurisprudence by allowing secured creditors to exercise control over liquor licenses. RELM asserted that 9-408 prohibits such exercise of control. Instead, RELM contended that the Court should enforce Revised Article 9 as equally applicable with the ABC Act, which RELM contended allows it here to attach its lien to the proceeds of a liquor license once it is sold. RELM noted that the Liquor License itself had been sold and was no longer at issue. RELM asserted that it would not be receiving different treatment in bankruptcy than outside of bankruptcy because Revised Article 9 is equally applicable in both contexts. RELM argued that Supreme Court of New Jersey, and Third Circuit precedent and equity require a finding that the Liquor License has economic value that is property for all purposes and for the benefit of all creditors.

The ABC argued that there is no support for RELM's request because N.J.S.A. 33:1-26 unequivocally states that a license or the rights thereunder shall not be deemed property subject to lien, levy or attachment. The ABC asserted that the "rights thereunder" the license include both the right to sell intoxicating beverages and the right to proceeds from consenting to person-

39

to-person transfer of the license. The ABC contended that 33:1-26 provides a mechanism where a bankruptcy trustee may exercise the right of the original licensee to obtain and distribute the proceeds of the license to all creditors of a licensed operation. However, ABC also contended that the "rights thereunder" cannot be bifurcated under New Jersey cases including *Boss Co.* and *B & G Corp.* such that RELM could receive preferential status in the distribution by attaching a security interest to the License or the proceeds from its sale.

ABC clarified its position that the Liquor License is not property but a permit or privilege. It did not dispute that there is some economic value in the transfer of a license from one party to another and repeated that that economic value may be harnessed in the bankruptcy court. However, the ABC contended that under *Butner*, 33:1-26 controls this Court's analysis. The ABC argued that because 33:1-26 controls and provides that the Liquor License is not property, it falls outside the scope of Revised Article 9.

ABC contended that the Third Circuit in *21 West Lancaster*, which found that the distinction between a license and its economic value is a highly metaphysical one, is on point. The ABC also contended that the district court in *Main Street Beverage* said that the right to receive payment from proceeds of the sale of a liquor license is inseparable from the license itself. The ABC continued that while RELM could argue that those cases predate the 2001 revisions to Article 9, the district court in *Chris-Don II* conducted the statutory analysis in 2005 and observed that 33:1-26 had not been overridden or repealed. The ABC contended that comment 3 to 9-408 states that other law, here, 33:1-26, determines the nature of a debtor's interests. The ABC reasoned that 33:1-26 specifically says a liquor license is not property which means it is not a "general intangible". The ABC acknowledged again that there is economic

40

value, but that economic value is a "right thereunder" the license which cannot be bifurcated to allow a security interest in that particular right.

The ABC asserted that 33:1-26's mandate that liquor licenses are not property prevents licensees from being subject to control by another party by any device such as a security interest. The ABC contended that if RELM was permitted to have a security interest in a liquor license or the proceeds of the sale of a liquor license, persons who are not qualified under the ABC Law to participate in this regulated industry, such as convicted felons, could be permitted to as well.

In response to RELM's argument that a lien against the proceeds would not interfere with the State's regulation of license holders, the ABC responded that there is no legal support for bifurcation of the rights associated with a liquor license. The ABC argued that the FCC cases were deemed inapposite by the district court in *Main Street Beverage* in a footnote.[4] Moreover, the ABC argued that the Tenth Circuit in *Tracy Broadcasting* observed that the FCA was ambiguous, whereas the ABC Act is unambiguous. Finally, the ABC contended that the FCC made a policy decision to allow bifurcation of the rights associated with an FCC license, while the ABC Act and New Jersey case law state that bifurcation is not allowed. Therefore, ABC concluded that those cases were inapplicable. ABC contended that RELM's recourse would be to petition the New Jersey legislature to change the ABC Act to permit bifurcation like the Pennsylvania legislature did. ABC asserted that under New Jersey's present law, Trustee's Motion should be granted and RELM should have a general unsecured claim.

The Division of Taxation joined in ABC's arguments. In addition, the Division of Taxation argued that if 9-408 expressly repealed 33:1-26, the New Jersey legislature would have

---

[4] "The court finds the cases involving Federal Communications Commission ("FCC") broadcasting licenses cited by Chrysler to be inapposite because the statute at issue in this case is a New Jersey statute defining the nature of a license created under New Jersey law." *Main St. Bev.*, 232 B.R. at 310 n.1.

to explicitly state so. The Division of Taxation asserted that since there was no repeal, the ABC Act should control. The Division of Taxation also argued that notwithstanding RELM's arguments regarding FCC licenses, rejected in *Main Street Beverage*, and interpretations by other bankruptcy courts, the issue is one of New Jersey state law. The Division of Taxation asserted that New Jersey state law does not permit a lien on a liquor license to be held by a private party, nor can one separate the sale proceeds from the liquor license under *Main Street Beverage* and *Chris-Don II*.

Lim Chew, as an unsecured creditor here, argued that there is an expectation on an equitable level that the Court would not overturn the expected law of the state. This Court observed that the issue here is one of statutory interpretation. Next, Lim Chew objected to RELM's argument that Trustee's settlement agreement with Lim Chew supported application of judicial estoppel, asserting that RELM's security interest was not addressed in the settlement and furthermore that nothing can be implied from the settlement beyond its express terms. Finally, Lim Chew argued that RELM should not be permitted to have a security interest in proceeds created post-petition when it was not permitted to have a perfected security interest in the pre-petition asset. RELM asserted that permitting RELM to have such a security interest would be detrimental to all creditors.

In reply, Trustee argued that the underlying issue is RELM's pre-petition rights as a creditor under state law. Trustee contended that state law is clear that RELM did not have the rights of a secured creditor with respect to the Liquor License as established by the New Jersey Supreme Court. Trustee asserted that *Boss Co.* clarified that for the purposes of state law, a liquor license, although transferrable, is still to be considered a permit or privilege and not property as it has always been even before the legislature so declared by statute.

Trustee continued that to the extent RELM argues that it should be permitted a security interest in the proceeds, the ABC Act similarly restricts the rights thereunder the Liquor License. Furthermore, Trustee noted that the proceeds arose post-petition and therefore, RELM could not have perfected its security interest in the proceeds.

As to the FCC arguments, Trustee asserted that the FCC case law is not inconsistent with New Jersey state court interpretations of the ABC Act. Trustee contended that while the ABC Act states that a liquor license is not property, the FCA does not say that an FCC license is not property. Trustee argued that the FCA under Section 310 instead only prohibits the transfer, assignment, or disposition of an FCC license, including attachment of liens. Finally, while the FCC adopted a ruling in 1994 permitting creditors to have liens in proceeds but not in FCC licenses themselves, there is no analog in New Jersey for liquor licenses. Instead, New Jersey state courts have found that one cannot have a lien in either the liquor license or the proceeds.

In response to this Court's inquiry on the issue of judicial estoppel, Trustee joined Lim Chew's argument that a settlement does not create any estoppel issues. Trustee contended that it neither advocated nor persuaded this Court to adopt any particular position and therefore estoppel does not arise.

Lastly, Trustee argued that while RELM takes the position that *Nejberger* was wrongly decided, the Third Circuit had not revisited the issue and no other federal court had criticized *Nejberger*'s finding that a Pennsylvania liquor license can be not property for Pennsylvania law purposes but can be property for federal law purposes.

The ABC added that whether there is a security interest in any of the interests related to the liquor license is a standard question on the liquor license application. The ABC asserted that Debtor's Liquor License application indicated that no security interest existed.

43

The Division of Taxation added first that the legislature had not changed the ABC Act in the nine years since *Chris-Don II* was decided. Second, the Division of Taxation argued that the Court's acceptance of RELM's argument that a private creditor may have a lien in sale proceeds would raise priority issues in cases where federal and state taxing authorities have security interests in the liquor license. However, the Division of Taxation contended that the ABC Act is very clear in only providing the ability to obtain such security interests to taxing authorities.

RELM first responded that the bankruptcy court routinely deals with priority disputes, and that no such disputes are relevant to the outcome of the instant motion.

Next, RELM argued that other parties sought to avoid application of 9-408 because that statute supports RELM's position. RELM asserted that 9-408(c) renders statutes that restrict the ability to lien or assign ineffective. RELM asserted next that 9-408(d) then limits that allowed lien to prevent interference with regulatory authority. RELM contended that 9-408(e) directs that except as provided in subsection (f), 9-408 prevails over any inconsistent provision of future or existing law of the state unless the inconsistent law expressly states that it prevails over 9-408. RELM argued that 9-408(e) is explicit in directing that if a law is inconsistent, 9-408 governs. Therefore, RELM asserted that it is an explicit, not implied, repealer.

Furthermore, RELM contended that it is asking for rights that would be the same inside bankruptcy and outside of bankruptcy because a limited lien would attach under 9-408 in either situation. In response to questioning by this Court, RELM clarified that its lien attached to the Liquor License upon the filing of its UCC statement with the state authority. However, RELM contended that it could not exercise its rights in and to the Liquor License under 9-408(d) until there were proceeds. RELM asserted that the fact that those proceeds came into existence during the bankruptcy does not change the analysis because 11 U.S.C. § 363 states that "all liens shall

44

attach to proceeds." Therefore, RELM argued that its pre-petition lien attaches to the proceeds to the extent that the lien is valid.

RELM also clarified that its position is not that *Nejberger* was wrongly decided, but that Trustee's interpretation of *Nejberger* is wrong. RELM contended that *Nejberger* did not find that the license was not property under Pennsylvania law but was property under the Bankruptcy Code because that would be inconsistent with *Butner*. RELM asserted instead that *Nejberger* held that although *Butner* and state law must be applied to define property rights, the court must look beyond labels to substance. RELM continued that *Nejberger* did so to determine that the substance of a liquor license in Pennsylvania has economic value and therefore it is property not just for a federal question. RELM also contended that ABC's assertion that the ABC Act provides a mechanism for liquidation of the Liquor License by Trustee does not resolve the issue because a trustee can only sell property of the estate and therefore what was property under state law. Therefore, RELM concluded that the Liquor License must either be property or not property, and asserted that it is property for all purposes and for the benefit of all parties.

RELM continued that after the passage of Revised Article 9, the bifurcation of rights referred to in *Main Street Beverage* and *21 West Lancaster* was no longer metaphysical because Example 4 to comment 7 of 9-408 talks of precisely that bifurcation. RELM asserted that Example 4 discusses the impact of subsections (c) and (d) on a state license for which a statute prevents attachment of a lien and explains that the creditor's only right is to the proceeds in those instances.

RELM contended that *Chris-Don II* is the only case cited by opposing counsel that was decided after the 2001 revisions to Article 9. RELM argued that that *Chris-Don II* was wrongly decided and that this Court is not bound to follow the holding of a district court. RELM

45

contended that if *Chris-Don II* is taken to its logical conclusion, a liquor license is not property, it cannot be property of the estate, and there cannot be proceeds for distribution. RELM asserted that *Chris-Don II* did not address that line of reasoning and RELM suggested that none of the parties desired such an outcome.

RELM next argued that in the normal non-bankruptcy context where the transfer or sale of a liquor license is approved, the ABC does not object to the lender being paid from the proceeds. RELM contended that the ABC seemed to argue that in bankruptcy, a lender cannot get the benefit of its bargain. RELM asserted that 9-408(d) prevents private parties from skirting the ABC Act and participating in the alcoholic beverage industry via a security interest because 9-408(d) withholds from secured creditors the right to exercise control over the liquor license or otherwise interfere with ABC's regulatory authority. RELM contended that the ABC can continue to approve or disapprove sales of liquor licenses, but once those sales are approved, the lender should be paid from the proceeds whether inside or outside of bankruptcy.

RELM added that to the extent the equities must be considered, they favor RELM as the assignee of Northern Bank who lent money against the value of Debtor's business, which was the Liquor License. Trustee confirmed that the Liquor License and the proceeds from its sale are the principal assets of the estate other than any avoidance actions that Trustee holds. RELM confirmed it did not assert any liens or rights against the avoidance actions.

In closing, ABC argued that this Court should not even reach 9-408 because 33:1-26, which has not been appealed or amended, states that the Liquor License and the rights thereunder are not property. ABC contended that there is authority in the Second Circuit, including *In re McBrearty*, 335 B.R. 513, 518 (Bankr. E.D.N.Y. 2005), which suggest that a bankruptcy court is bound by the district court. Therefore, ABC argued that because *Chris-Don II* is on

46

point in its statutory analysis and conclusion that Article 9 and the ABC Act co-exist and that liquor licenses and rights thereunder are not property and that this Court's analysis should be controlled by that opinion. Finally, ABC contended that it was simply arguing that RELM should not get preferential treatment because there is no valid security interest, and RELM should be permitted to stand in line with all other creditors to receive distribution from the proceeds of the Liquor License sale.

Lim Chew contended that RELM received the benefit of its bargain in purchasing the debt from Northern Bank in order to cover the personal guarantee of Matthew Stadtmaver, the husband of RELM's principal. Lim Chew asserted its belief that Matthew Stadtmaver is a nonstatutory insider of Debtor who exercised control over Debtor and underfunded Debtor from its inception. Lim Chew argued that Matthew Stadtmaver and Neil Erman made the economic decision to put Debtor into bankruptcy so that the Liquor License could be sold to pay off Debtor's obligations that they or RELM personally guaranteed while avoiding Lim Chew's right of first refusal.

This Court observed that some of those issues may not be in front of the Court as part of the instant motion, but permitted RELM to respond. RELM contended that it need not respond but that those facts are not before this Court. RELM argued that the law in this jurisdiction, as set forth by cases including *In re Brown*, 244 B.R. 62, 64 (Bankr. D.N.J. 2000) and *In re Chodnicki*, 02-59210 (RTL), 2008 WL 216318, at *4 (Bankr. D.N.J. Jan. 24, 2008) is that decisions of the district court are not binding in the bankruptcy courts because there is no such thing as "law of the district." RELM contended that the Liquor License and the value ascribed to it is a "general intangible" such that 9-408 and the UCC apply to the analysis. RELM concluded

47

by arguing again that if opposing counsel is correct that the Liquor License is not property, it cannot be property for any purpose including bankruptcy proceedings.

LEGAL STANDARDS

I. Liquor Licenses in Bankruptcy

    A.  Section 363 and "Property of the Estate"

Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, *property of the estate*," subject to certain exceptions not relevant here. 11 U.S.C. § 363(b)(1) (emphasis added). Although the Bankruptcy Code does not define "property of the estate," § 541(a) provides that the bankruptcy "estate," created at the commencement of the case, includes "all legal or equitable interests of the debtor in property as of the commencement of the case." *See* § 541(a). Property interests themselves are created and defined by state law. *See Butner v. United States*, 440 U.S. 48, 55 (1979) ("Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.")

At least one court has made explicit that the court must deem that the interest to be sold "property of the estate" in order for a §363 sale to occur. *See In re Hudson Valley Ambulance Serv., Inc.*, 11 B.R. 860, 864 (Bankr. S.D.N.Y. 1981) ("[Section] 363 does not require that a debtor must first have a right to use, sell or lease property of the estate before the debtor may do so. As long as the property in question is deemed 'property of the estate' the debtor is given such right under [§] 363.")

    B.  Liquor Licenses under the New Jersey Alcoholic Beverage Law

New Jersey's Alcoholic Beverage Law, the ABC Act, is codified at N.J.S.A §§ 33:1-1 et seq. It prohibits, among other things, the manufacture, sale, possession with intent to sell, processing, and distribution of alcoholic beverages in the state except pursuant to and within the terms of a license or as otherwise expressly authorized by the statute. *See* N.J. S.A. § 33:1-2. Section 33:1-26 in turn provides, in pertinent part:

> Under no circumstances [...] shall a license, or rights thereunder, be deemed property, subject to inheritance, sale, pledge, lien, levy, attachment, execution, seizure for debts, or any other transfer or disposition whatsoever, except for payment of taxes, fees, interest and penalties imposed by any State tax law for which a lien may attach pursuant to R.S. 54:49-1 or pursuant to the State Uniform Tax Procedure Law, R.S. 54: 48-1 et seq., or any similar state lien of tax, except to the extent expressly provided by this chapter.

N.J. S.A. § 33:1-26.

C. New Jersey Secured Transactions Law Regarding Alienation of General Intangibles

Under New Jersey law, the term "general intangible" is defined as:

> any personal property, including things in action, other than accounts, chattel paper, commercial tort claims, deposit accounts, documents, goods, instruments, investment property, letter-of-credit rights, letters of credit, money, and oil, gas, or other minerals before extraction. The term includes payment intangibles and software.

N.J.S.A. § 12A:9-102(42).

N.J.S.A § 12A:9-408 governs restrictions on assignment on, among other things, general intangibles by agreement or by law. With regard to terms restricting assignment in agreements or promissory notes, it provides that:

> Except as otherwise provided in subsection (b), a term in a promissory note or in an agreement between an account debtor and a debtor which relates to a [...] a general intangible, including a contract, permit, license, or franchise, and which term prohibits, restricts, or requires the consent of the person obligated on the promissory note or the account debtor to, the assignment or transfer of, or creation, attachment, or perfection of a security interest in [] the [...] general intangible, is ineffective to the extent that the term:
>
>> (1) would impair the creation, attachment, or perfection of a security interest; or
>>
>> (2) provides that the assignment or transfer or the creation, attachment, or perfection of the security interest may give rise to a default, breach, right of

recoupment, claim, defense, termination, right of termination, or remedy under the […] general intangible.

N.J.S.A. § 12A:9-408(a). With regard to legal restrictions on assignment, the statute provides

that:

Except as provided in subsection (e), a rule of law, statute, or regulation that prohibits, restricts […] the assignment or transfer of, or creation of a security interest in, a […] general intangible, including a contract, permit, license, or franchise between an account debtor and a debtor, is ineffective to the extent that the rule of law, statute, or regulation:

(1) would impair the creation, attachment, or perfection of a security interest; or

(2) provides that the assignment or transfer or the creation, attachment, or perfection of the security interest may give rise to a default, breach, right of recoupment, claim, defense, termination, right of termination, or remedy under the […] general intangible.

[….]

N.J.S.A. § 12A:9-408(c).

Subsection (d) provides that to the extent a restriction on assignment in an agreement or

law would otherwise be effective but is rendered ineffective by subsections (a) or (c), the

creation, attachment or perfection of a security interest in the general intangible:

(1) is not enforceable against […] the account debtor;

(2) does not impose a duty or obligation on […] the account debtor;

(3) does not require […] the account debtor to recognize the security interest, pay or render performance to the secured party, or accept payment or performance from the secured party;

(4) does not entitle the secured party to use or assign the debtor's rights under the […] general intangible, including any related information or materials furnished to the debtor in the transaction giving rise to the […] general intangible;

(5) does not entitle the secured party to use, assign, possess, or have access to any trade secrets or confidential information […] the account debtor; and

(6) does not entitle the secured party to enforce the security interest in the […] general intangible.

N.J.S.A. § 12A:9-408(d).

The statute further provides that except as provided in subsection (f), 9-408 supersedes any inconsistent state law unless the inconsistent state law refers expressly to 9-408 and states that it prevails over 9-408. The statute states: "Section prevails over specified inconsistent law. Except to the extent otherwise provided in subsection (f), this section prevails over any inconsistent provision of an existing or future statute, rule or regulation of the state, unless the provision is contained in a statute of this State, refers expressly to this section and states that provision prevails over this section." *See id.* at 408(e). The statute explicitly excludes workers' compensation claims, state lottery winnings, and structured settlement agreements. *See id.* at 408(f).

Importantly, Comment 3 to § 12A:9-408 explains that "[n]either this section nor any other provision of this Article determines whether a debtor has a property interest." N.J.S.A. § 12A:9-408, cmt. 3. It continues: "*[o]ther law* determines whether a debtor has a property interest ("Rights in the collateral") and the nature of that interest." *Id.* (emphasis added).

ANALYSIS

I. RELM's Lien Does Not Attach to the Proceeds of the Sale of the Liquor License

Because RELM does not argue that its lien attaches to any avoidance actions Trustee may have, the only issue is whether RELM's lien attaches to the proceeds of the sale of the Liquor License such that it has a secured claim in those proceeds.

Whether Debtor's Liquor License was properly considered "property of the estate" that could be sold in Debtor's bankruptcy proceeding is a question of federal bankruptcy law. Under §541, the scope of the bankruptcy estate is broad and includes "all legal or equitable interests of the debtor in property as of the commencement of the case." *See* § 541(a).

51

In *21 West Lancaster Corp. v. Main Line Restaurant, Inc.*, 790 F.2d 354, 356 (3d Cir. 1986), the Third Circuit addressed whether a Pennsylvania liquor license owner possessed "property" or "rights to property" under the Internal Revenue Code (IRC) such that an IRS lien could attach. First, the court observed that the IRC itself created no property rights but merely attached federally-defined consequences to rights created under state law. *Id.* (quoting *U.S. v. Bess*, 357 U.S. 51, 55 (1958)). The court stated that "[w]hile state law creates legal interests and defines their incidents, "'the ultimate question whether an interest thus created and defined falls within a category stated by a Federal statute requires an interpretation of that statute, which is a Federal question.'" *21 West Lancaster*, 790 F.2d at 356 (quoting *In re Halprin*, 280 F.2d 407, 409 (3d Cir. 1960)).

The court observed that, notwithstanding state cases characterizing Pennsylvania liquor licenses as a "privilege" and thus restricting their leviability, *see In re Revocation of Liquor License No. R-2193*, 456 A.2d 709, 711 (Pa. Cmwlth. 1983); *1412 Spruce, Inc. v. Com., Pennsylvania Liquor Control Bd.*, 453 A.2d 382, 384 (Pa. Cmwlth. 1982) *aff'd*, 474 A.2d 280 (Pa. 1984), a license still has pecuniary value for its holder in the form of potentially increased business revenues. *See 21 West Lancaster*, 790 F.2d at 358. Moreover, it may be transferred and sold. *Id.* Thus, the court concluded that a Pennsylvania liquor license constitutes property or rights to property within the meaning of the relevant IRC provision and is therefore subject to a federal tax lien. *Id.*

Next, the court noted that the UCC allows attachment and enforcement of a security interest upon "collateral", which is defined as "property subject to a security interest." *Id.* (citing 13 Pa. Cons. Stat. Ann. § 9203, § 9105(a) (1984)). The court continued that because the

52

Pennsylvania Liquor Code stated that a liquor license is not property but a privilege, a liquor license could not be collateral that a creditor could hold a valid security interest in. *See id.*

The Third Circuit rejected the district court's theory that the liquor license had a "value enhancement component" that could be subject to a security interest. *See id.* at 359. The court found that "the distinction between the license and its value enhancement component is a highly metaphysical one." *Id.* The court concluded that allowing the licensee to validly transfer a security interest in the increased value to its business created by the license while prohibiting the licensee from validly assigning a security interest in the license itself would contradict the unambiguous import of Pennsylvania authority defining the *nature* of a liquor license. *See id.*

The court added that this created the anomalous result that although a liquor license is not property for purposes of a security interest under Pennsylvania state law, it is property for purposes of a federal tax lien. *Id.* The court also observed that this reasoning would lead to "harsh treatment" of the creditor who took steps reasonably believed to be necessary to perfect its interest in the license, but who will nonetheless be defeated by a subsequent tax claim. *See id.* However, the court observed that only the Pennsylvania legislature could alter that result by redefining the nature of a liquor license under state law. *Id.*

The Third Circuit in *In re Nejberger*, found that the bankruptcy estate had a property interest in a debtor's expired liquor license such that the trustee could request the state liquor board to consider an application for renewal. *See* 934 F.2d 1300, 1300-01 (3d Cir. 1991). The debtor, in September 1988, had filed an application to renew his liquor license pre-petition, which the state liquor board subsequently refused for failure to pay taxes due. *Id.* at 1301. The Pennsylvania Liquor Control Board had issued a liquor license to the debtor for a one year period effective October 31, 1987 to October 31, 1988. However, the state board, on March 9, 1989,

53

informed the debtor that it would hold the application in abeyance to give him a reasonable time to rectify the matter, but not for longer than October 31, 1989, one year after the date the license had expired. *See id.* On August 17, 1989, the debtor filed a Chapter 11 bankruptcy petition within that extension period and soon after filed an adversary proceeding to compel the state liquor board to renew the license. *Id.* About two weeks later, the state liquor board advised the debtor that it was terminating his application and closing the file in view of the fact that the extension period had expired. *Id.*

The bankruptcy court directed the state liquor board to grant the application for renewal. *Id.* It reasoned that the application would have been granted had the debtor paid the delinquent taxes as of the date of his bankruptcy petition. *Id.* It continued that the estate therefore retained a property interest in the license and, because the taxes due were prepetition claims against the estate, they could not be grounds to deny the license. *Id.* The district court agreed that the expectation created by the state liquor board's renewal grace period was an enforceable property interest of the bankruptcy estate. *Id.* However, the district court directed that the debtor could choose to resubmit an application which the state liquor board would then consider without regard to the unpaid taxes. *See id.* Subsequently, the Chapter 11 case was converted to a Chapter 7 case, and a Chapter 7 Trustee appointed. The state liquor board appealed, contending that the license expired on October 31, 1988 and was not property of the estate at the time of the bankruptcy petition. *Id.* The trustee, now a party to the appeal, responded among other things that the appeal was moot or should be remanded, and that the debtor did have an interest in renewal of the license that qualified as property under the bankruptcy statute. *Id.*

The Third Circuit observed that though property of the bankruptcy estate is broadly defined under §541, courts "must look to state law to determine if a property right exists and to

stake out its dimensions." *Id.* at 1301-02. The court found that "[t]he label, however, that state law affixes to a particular interest in certain contexts is not always dispositive. The principal question is whether the substance of the right or interest in question brings it within the scope of estate property under the Bankruptcy Act." *Id.* at 1302. The Third Circuit explained that Pennsylvania law stating that a liquor license was not property that could be subject to attachment and executions, citing 47 Pa. Stat. Ann. § 4-468(b.1); *Replogle v. Pennsylvania Liquor Control Bd.*, 523 A.2d 327 (Pa. 1987), *1412 Spruce, Inc. v. Pennsylvania Liquor Control Bd.*, 474 A.2d 280 (Pa. 1984), must be read in light of the finding in *21 West Lancaster*'s finding that "'[w]hile state law creates legal interests and defines their incidents, 'the ultimate question whether an interest thus created and defined falls within a category stated by a Federal statute, requires an interpretation of that statute which is a Federal question.'" *See Nejberger*, 934 F.2d at 1302 (quoting *21 West Lancaster*, 790 F.2d at 356). On the other hand, the Third Circuit observed that state courts had recognized that a liquor license has value, particularly in the licensee's right to transfer with state liquor board approval. *See Nejberger*, 934 F.2d at 1302 (citing *In re Estate of Feitz*, 167 A.2d 504, 507 (1961)).

The Third Circuit found that "[t]he reality is that in Pennsylvania a liquor license does have value" and concluded that "it is appropriately considered property of the estate within the broad definition of section 541 of the Bankruptcy Act." *See Nejberger*, 934 F.2d at 1302. The Court further found that though the debtor did not hold a license at the time of his petition because the license had expired, he did have an expectation of consideration for renewal under the state liquor statute that qualified as a property interest within the meaning of the Bankruptcy Act. *See id.* at 1303.

This Court has no difficulty finding here that Trustee had an interest in Debtor's Liquor License that could properly be transferred and sold in this bankruptcy proceeding pursuant to 11 U.S.C. § 363. The Court notes the broad scope of property of the bankruptcy estate under the Bankruptcy Code. Furthermore, *Nejberger* concluded that because a Pennsylvania liquor license had value, it was appropriately considered "property of the estate" under Section 541 of the Bankruptcy Code. *See id.* at 1302. The parties do not dispute that the New Jersey liquor license here similarly has value.

On the other hand, the question of whether Debtor's Liquor License or the proceeds resulting from its sale are subject to RELM's lien is one of New Jersey state law.

At the outset, this Court rejects RELM's argument that the fact that the Liquor License was sold under § 363 establishes a "law of the case" such that judicial estoppel would bar Trustee's and the State's argument that the Liquor License is not "property" subject to lien or attachment under New Jersey state law. Indeed, judicial estoppel is inapplicable in the instant situation. Judicial estoppel precludes a party from arguing a position inconsistent with a position that the party took in a previous proceeding. *In re Princeton-New York Investors, Inc.*, 255 B.R. 376, 386-87 (Bankr. D.N.J. 2000) (citing *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 419 (3d Cir. 1988), *cert. denied,* 488 U.S. 967 (1988)). In order for the doctrine to apply, a two-part inquiry must be satisfied: "First, is the position of the party against whom estoppel is sought inconsistent with a position it previously asserted in the proceedings? Second, if so, did that party assert either or both of the inconsistent positions in bad faith-i.e., with intent to play fast and loose with the court?" *Princeton-New York Investors*, 255 B.R. at 387 (quoting *National Utility Serv., Inc. v. Chesapeake Corp.*, 45 F.Supp.2d 438, 445 (D.N.J.1999)); *see Ryan Operations G.P. v. Santiam–Midwest Lumber Co.*, 81 F.3d 355, 361 (3d Cir. 1996). Moreover,

56

the party invoking judicial estoppel must prove that any inconsistent argument was due to intentional wrongdoing. *Princeton-New York Investors*, 255 B.R. at 387 (citing *Ryan Operations*, 81 F.3d at 362 ("An inconsistent argument sufficient to invoke judicial estoppel must be attributable to intentional wrongdoing.")) RELM was not a party in the settlement between Trustee and Lim Chew, nor was the nature of RELM's interest in the Liquor License was at issue there. Therefore, Trustee did not previously take a position on that issue that could be contrary with his present arguments. Because RELM cannot satisfy the first prong of the conjunctive test, the doctrine of judicial estoppel does not apply.

In order for N.J.S.A. § 12A:9-408 to apply, RELM argues that the Liquor License is a general intangible, security interests in which are governed by Revised Article 9. However, Revised Article 9's definition of "general intangible" begins with "any personal *property* [...]." N.J.S.A. § 12A:9-102(42) (emphasis added). Therefore, the Liquor License would have to be "personal property" to be a general intangible in which RELM could have a security interest.[5]

As noted previously, Comment 3 to § 12A:9-408 explains that "[n]either this section nor any other provision of this Article determines whether a debtor has a property interest." N.J.S.A. § 12A:9-408, cmt. 3. Instead, "*[o]ther law* determines whether a debtor has a property interest ("Rights in the collateral") and the nature of that interest." *Id.* (emphasis added). N.J.S.A. § 33:1-26 is that "other law" in this case, and it unambiguously establishes that liquor licenses and the rights thereunder are not property subject to lien or attachment with limited exceptions under New Jersey law. The New Jersey Supreme Court has likewise interpreted N.J.S.A. § 33:1-26 to say that liquor licenses, although transferable, are not property. *See Kalogeras v. 238 Broad*

---

[5] This Court also observes that the definition of the term "security interest" also provides that it is an "interest in personal *property*." N.J.S.A. § 12A:9-408, cmt. 3 (citing § 1-201(b)(35) (emphasis added)). Therefore, RELM's argument could be rejected on the related ground that it cannot take a "security interest," as that term is defined in Revised Article 9, in something that is not "property." However, this Court bases its holding on the finding that the Liquor License is not a general intangible subject to Revised Article 9.

*Ave., LLC*, 202 N.J. 349, 360, 362 (2010); *The Boss Co. v. Bd. of Comm'rs of the City of Atlantic City*, 40 N.J. 379, 387 (1963). Therefore, because the Liquor License was not personal property of Debtor, by definition, it could not be a general intangible. *See* § 9-102(42).

For these reasons, this Court finds that the Liquor License falls outside the scope of Revised Article 9. Moreover, this Court finds that N.J.S.A § 12A:9-408's anti-alienation provision does not repeal this clear statutory mandate. Nor will this Court find repeal by implication. Repeals by implication are not favored and will not be presumed unless the intention of the legislature to repeal is clear and manifest. *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 662 (2007); *In re Brown*, 505 B.R. 638, 648 (E.D. Pa. 2014).

Thus, the plain language of N.J.S.A. § 33:1–26 controls this analysis. N.J.S.A. § 33:1–26 unambiguously provides that:

> Under no circumstances [...] shall a license, or rights thereunder, be deemed property, subject to inheritance, sale, pledge, lien, levy, attachment, execution, seizure for debts, or any other transfer or disposition whatsoever, [other than for certain state tax liens and related obligations], except to the extent expressly provided by this chapter.

N.J.S.A. § 33:1–26. This is consistent with the long line of New Jersey case law that has recognized that "a liquor license, although transferable, is still to be considered a temporary permit or privilege, and not property, as it always has been even before our legislature so declared by statute, and this consideration is to continue to govern the relationship between state and local government and the licensee." *Kalogeras*, 202 N.J. at 362; *Boss Co.*, 40 N.J. at 387; *see Sea Girt Rest. & Tavern Owners Ass'n v. Bor. of Sea Girt*, 625 F. Supp. 1482, 1486 (D.N.J. 1986) *aff'd*, 802 F.2d 448 (3d Cir. 1986) *aff'd sub nom. Appeal of Avon Hotel Corp.*, 802 F.2d 445 (3d Cir. 1986) ("This clear legislative pronouncement that liquor licenses are not property has been consistently supported by case law, all of the cases holding that a license to sell

intoxicating liquor is not a contract nor is it a property right. Rather, it is a temporary permit or privilege to pursue an occupation which otherwise is illegal.") (citing *Butler Oak Tavern v. Alcoholic Bev. Control Div.*, 20 N.J. 373, 381 (1956); *Mazza v. Cavicchia*, 15 N.J. 498, 505 (1954); *G. & J.K. Enters., Inc. v. Div. of Alcoholic Bev. Control*, 205 N.J. Super. 77, 82 (N.J. Super. Ct. App. Div. 1985); *Gober v. Twp. Comm. of Pemberton Twp.*, 185 N.J. Super. 323, 335 (N.J. Super. Ct. Law Div. 1982)).

Next, this Court finds that the right to the proceeds from the sale of a liquor license is also governed by N.J.S.A. § 33:1–26 such that the proceeds are not property subject to lien or attachment.

In *In re Main St. Beverage Corp.*, 232 B.R. 303, 310 (D.N.J. 1998), the U.S. District Court for the District of New Jersey held that a private creditor had no valid security interest in the right to receive payment from the proceeds of the sale of the debtor's liquor license. The private creditor had loaned over $2.5 million to the debtor. *Id.* at 305. As security for the loan, the debtor granted the private creditor a first priority security interest in, among other assets, its right to payment of all proceeds arising from the sale or disposition of the debtor's interest in a liquor license. *Id.* After the private creditor perfected its security interest, the IRS filed notices of federal tax liens with respect to the debtor's unpaid payroll tax liabilities. *Id.* After filing for Chapter 11, the debtor defaulted under its confirmed plan, and the bankruptcy court ordered that the liquor license be sold at public auction and confirmed the sale. *See id.* After conducting a hearing as to the distribution of the sale proceeds, the bankruptcy court ordered 1) that the right to receive payment from the proceeds of an authorized sale of a liquor license is a general intangible under the New Jersey UCC; 2) that the private creditor had a valid security interest in the proceeds of the sale of the liquor license that was not prohibited by N.J.S.A. § 12A:33:1-26;

3) that the private creditor had a valid lien in the general intangible and sale proceeds; 4) that the IRS also had a perfected federal tax lien on the liquor license; and 5) that the IRS' lien was entitled to priority over the private creditor's security interest. *See id.* at 306. Following an unsuccessful motion to reconsider, the private creditor appealed. *See id.*

The IRS defended the correctness of the bankruptcy court's distribution by challenging its conclusion that the private creditor had a valid and perfected security interest in the right to receive payment from the sale proceeds at all, asserting the "first in time, first in right" principle did not apply because only the federal tax liens were valid. *See id.* at 307.

In order to address the merits of the bankruptcy court's conclusion, the court examined the nature of the property interest in a New Jersey liquor license under the state legislative scheme. *See id.* at 308. The court cited to *Boss Co.*'s statement that the New Jersey Supreme Court held that a New Jersey liquor license is "property" within the meaning and purposes of the Internal Revenue Code, 26 U.S.C. § 6321 which grants the IRS a tax lien "upon all property and rights to property" of a person who neglects or refuses to pay a federal tax liability after demand and that lien attaches to all property of the taxpayer and continues to attach to all property until assessments are satisfied in full. The district court also noted that the *Boss Co.* court made clear a liquor license is not "property" under New Jersey law and noted that the private creditor conceded that 33:1-26 prevented it from taking a valid security interest in the liquor license itself. *See Main St. Beverage*, 232 B.R. at 308-09. "A liquor license in New Jersey vests a personal right in the licensee to conduct a business otherwise illegal. As such, it is merely a temporary permit or privilege." *Id.* at 308 (quoting *Boss Co.*, 40 N.J. at 384). Therefore, the court characterized the issue as whether the bankruptcy court correctly determined that the debtor's right to receive payment from the proceeds of the sale of the liquor license does not

arise <u>under</u> the liquor license within the meaning of the term "rights thereunder" as used in

N.J.S.A. 33:1-26 such that the private creditor could take a security interest in that right. *See*

*Main St. Beverage*, 232 B.R. at 309.

Relying on *21 West Lancaster*, interpreting Pennsylvania Law, the court first rejected the

private creditor's argument that the bankruptcy court correctly determined that the debtor's right

to receive payment from the sale proceeds is a general intangible under the UCC separate and

distinct from the license itself. *See Main St. Beverage*, 232 B.R. at 309-10. The court found that

to accept that the right to proceeds does not arise under the license within the meaning of

N.J.S.A. 33:1-26's "rights thereunder" would seem to contradict the unambiguous import of New

Jersey authorities defining the nature of a liquor license as a matter of state law. *See id.* at 310.

The court agreed with *21 West Lancaster* that the distinction between the rights that is the license

and its value enhancement component was "a highly metaphysical one" and that none of the

New Jersey authorities cited supported the proposition that the right to receive payment from the

sale proceeds is separable from the license itself. *Main St. Beverage*, 232 B.R. at 310. The court

found that while *Boss Co.* recognized that a liquor license has economic value, it did not support

the contention that a licensee can grant a security interest in that economic value without running

afoul of N.J.S.A. 33:1-26. *Main St. Beverage*, 232 B.R. at 310.

The court observed that perhaps a licensee should be able to utilize the economic value of

his liquor license in a way that does not interfere with the regulatory agency's control over the

license as a matter of commercial law. *See id.* However, the court stated that "that is a matter

for the state legislature, which may choose to redefine the nature of a liquor license under state

law" as the Pennsylvania legislature did the year after *21 West Lancaster* was decided. *Main St.*

*Beverage*, 232 B.R. at 310, *citing In re Walkers Mill Inn, Inc.,* 117 B.R. 197, 199 (Bankr. W.D.

Pa. 1990) and the July 1, 1987 amendment of 47 Pa. Cons. Stat. Ann. § 4-468(d)). The court

determined that "until such time as the New Jersey legislature follows suit, this court must

decline [creditor's] invitation to recognize a new exception to N.J.S.A. 33:1-26." *Id.* For those

reasons, the court held that the private creditor had no valid security interest in the right to

receive payment of the sale proceeds of the debtor's liquor license and that the bankruptcy

court's conclusion to the contrary was erroneous. *Id.*

RELM argues that Revised Article 9 was the New Jersey legislature's response to *Main

Street Beverage*. However, in enacting Revised Article 9, the New Jersey legislature did not

"redefine the nature of a liquor license under state law" as *Main Street Beverage* suggested it

would be necessary to allow a licensee to grant security interests in the economic value of its

liquor license. That would have required amending N.J.S.A. 33:1-26, which defined the nature

of a liquor license under New Jersey law as not property when *Main Street Beverage* was

decided and so defines it today. *Compare In re Ciprian Ltd*, 473 B.R. 669, 673 (Bankr. W.D. Pa.

2012) ("Although previously identified as a privilege, the Pennsylvania Liquor Code now

characterizes a liquor license as 'a privilege between the board and the licensee. As between the

licensee and third parties, the license shall constitute property.' 47 P.S. § 4–468(d). Therefore, as

the license constitutes property, a security interest can be created.")

The court in *B & G Corp. v. Mun. Council of the Twp. of Wayne* supports the contention

that bifurcation of the rights associated with a liquor license is impermissible. In affirming the

ABC's denial of an application to transfer a liquor license where the petitioner argued that it had

obtained consent to transfer as the result of a levy against the license holder, the court reasoned:

"it is clear to us that under N.J.S.A. § 33:1-26 a right to consent to a license transfer is a right

inseparable from the license itself. The right to consent is created by and exists solely as a result

of the issuance of the license, and hence is clearly a 'right thereunder.'" *See* 235 N.J. Super 90,

95 (N.J. Super Ct. App. Div. 1989) (internal citations omitted). Although the issue in that case

was whether the right to consent could be bifurcated from the license itself, the reasoning is

applicable here. Like the licensee's right to consent to a liquor license transfer, Debtor's right to

proceeds from the sale of the Liquor License "is created by and exists solely as a result of the

issuance of the license itself;" therefore, it "is clearly a right thereunder." *See id.* The Court thus

finds that Debtor's right to the proceeds from the sale of the Liquor License cannot be bifurcated

from the Liquor License itself such that RELM would be permitted a lien upon the proceeds

resulting from the sale.

This Court acknowledges that a liquor license in New Jersey has been found to be an

interest in property for two limited federal purposes. First, the New Jersey Supreme Court in

*Boss Co.* concluded that "in light of the property characteristics incident to the legal interest

created by our statute [N.J.S.A. § 33:1-26] [...] the liquor license in New Jersey constitutes

'property' within the meaning of [IRC] 6321" such that an IRS lien could attach. *See* 40 N.J. at

387.

In so concluding, the court observed that the language of the N.J.S.A. 33:1-26 alone was

not dispositive, "for a state legislative pronouncement in and of itself is insufficient to determine

the existence or nonexistence of a property interest within the meaning of section 6321." *Id.* at

383. The court cited *In re Halprin*, 280 F.2d 407, 309 (3d Cir. 1960), which applied a two-step

inquiry in the application of section 6321, for the proposition that: "[s]tate law creates legal

interests and defines their incidents, but the ultimate question whether an interest thus created

and defined falls within a category stated by a federal statute requires an interpretation of that

statute, which is a federal question." *Boss Co.*, 40 N.J. at 384. The court found that the liquor

license has both personal value in the right of the licensee to sell intoxicating liquor and monetary value arising from the licensee's power to transfer the license to another with municipal approval. *See id.* The court determined that in light of the property characteristics incident to the legal interest created by N.J.S.A. 33: 1-26, a liquor license in New Jersey constitutes "property" within and for the purposes of section 6321, and that as far as the federal government is concerned, N.J.S.A. 33:1-26 could not immunize liquor licenses from the attachment of federal liens, citing *U.S. v. Bess*, 357 U.S. 51, 57 (1958) ("state law is inoperative to prevent the attachment of liens created by federal statutes in favor of the United States.")

Importantly, the court in *Boss Co.* stated that its decision in no way marked a departure from the principles which had guided New Jersey courts in liquor license litigation. 40 N.J. at 387. The court found that "[t]he liquor license, although transferable, is still to be considered a temporary permit or privilege, and not property, as it always has been, even before our Legislature so declared by statute, [...] and this consideration is to continue to govern the relationship between state and local government and the licensee." *Id.* at 387-88. The court continued, "the vitality of N.J.S.A. § 33:1-26 is in no way diminished and will continue to protect the liquor license from any device which would subject it to the control of person other than the licensee [...] be it by pledge, lien, levy, attachment, execution, seizure for debts or the like." *Id.* at 388.

Second, the U.S. District Court for the District of New Jersey in *Sea Girt* concluded that a New Jersey liquor license is property for purposes of federal due process analysis. 625 F. Supp. at 1487-88. The court observed that the clear legislative pronouncement that liquor licenses are not property has been consistently supported by case law which held that a license to sell intoxicating liquor is not a property right, but a temporary permit or privilege to pursue an

otherwise illegal occupation. *See id.* at 1486. However, the court determined that the precise question of whether a liquor license should be characterized as "property" for federal purposes despite a legislative pronouncement to the contrary had only been addressed before in *Boss Co. See Sea Girt*, 625 F. Supp. at 1487. In light of the New Jersey Supreme Court's reasoning in *Boss Co.* that held that a liquor license in New Jersey constitutes "property" within the meaning and purposes of section 6321 of the IRC, and the Seventh Circuit's reasoning in *Reed v. Village of Shorewood*, 704 F.2d 943, 948-49 (7th Cir. 1983), which found that a licensee's interest in renewal of an Illinois liquor license is a property right for purposes of the Fourteenth Amendment, the *Sea Girt* court concluded that a New Jersey liquor license is an interest in property for purposes of federal due process analysis. *See Sea Girt*, 625 F. Supp. at 1487-88. Like *Boss Co.,* the *Sea Girt* court noted that the liquor license has an economic value both as an income-producing asset and as an asset capable of being transferred in certain statutorily-proscribed circumstances. 625 F. Supp. at 1488.

 *Boss Co.* and *Sea Girt* both recognize that a New Jersey liquor license has economic value. That proposition is not being challenged by any party in this matter. However, neither *Boss Co.* nor *Sea Girt* support the notion that a private party may obtain a security interest in a liquor license. First, both cases recognize the long-standing principle that under New Jersey state law, liquor licenses are not property. Both cases found that an exception existed where the issue was whether the liquor license should be characterized as "property" for a specific federal purposes. However, the Bankruptcy Code is unlike the Internal Revenue Code or federal due process analysis because, under *Butner*, what is "property" for the "federal purpose" of the Bankruptcy Code is defined by state law. Here, that state law is N.J.S.A. 33:1-26 and it is unambiguous in its definition of liquor licenses and the rights thereunder as "not property."

RELM asks this Court to find that the case law regarding Federal Communications Commission ("FCC") licenses is analogous. *See, e.g., In re TerreStar Networks, Inc.*, 457 B.R. 254, 264 (Bankr. S.D.N.Y. 2011) (observing that since the FCC's issuance of its declaratory ruling in citing *In re Application of Walter O Cheskey, Tr.-in-Bankr. for N.C.P.T. Cellular, Inc. (Assignor) & Triad Cellular L.P. (Assignee)*, 9 F.C.C. Rcd. 986, 987 (1994), *aff'd* 13 F.C.C. Rcd. 10656 (1998), *pet. for rev. denied sub nom. Amarillo CellTelCo v. F.C.C.*, 1998 WL 796204 (D.C. Cir. Oct. 2, 1998), it appeared to be "settled law" that a creditor may perfect a lien in the private economic value of an FCC license to the extent that such lien does not violate the FCC's public right to regulate license transfers); *In re Ridgely Comm., Inc.*, 139 B.R. 374, 379 (Bankr. M.D. 1992) (recognizing a creditor's right to perfect a security interest in proceeds received by a debtor licensee from a private sale of the debtor licensee's FCC broadcast license). First, the court in *Main Street Beverage* explicitly rejected that argument. *See* 232 B.R. at 310 n.1 ("The court finds the cases involving Federal Communications Commission ("FCC") broadcasting licenses cited by [the creditor] Chrysler to be inapposite because the statute at issue in this case is a New Jersey statute defining the nature of a license created under New Jersey law.") Second, this Court finds that the FCC cases are not analogous. As the Division of Taxation noted, the ABC Act and the Federal Communications Act ("FCA") are similar in that they both prohibit the transfer or attachment of liens on their respective licenses and the rights thereunder. *See* N.J.S.A. § 33:1-26; 47 U.S.C. § 310(d) ("No […] license, or any rights thereunder, shall be transferred, assigned, or disposed of in any manner […] to any person" except upon application and approval by the FCC). However, the ABC Act goes further than the FCA in declaring that liquor licenses not only cannot be liened but are not property at all. Moreover, the FCC has adopted a policy that "[a] security interest in the proceeds of the sale of

the license does not violate Commission policy." *In re Tracy Broad. Corp.*, 696 F.3d 1051, 1055

(10th Cir. 2012), *cert. denied sub nom. Spectrum Scan, LLC v. Valley Bank & Trust Co.*, 133 S.

Ct. 2340 (2013) (quoting *In re Application of Walter O Cheskey*, 9 F.C.C. Rcd. at 987).[6] No

analogous authority from the New Jersey legislature or courts applying New Jersey law exist to

support permitting a security interest to attach to the proceeds of the sale of a liquor license.

This Court agrees with the district court in *Main Street Beverage* that the cases involving FCC

broadcasting licenses are inapposite because the statute at issue in this case is a New Jersey

statute defining the nature of a license created under New Jersey law. *See Main St. Bev.*, 232

B.R. at 310.

Therefore, the only cases in this District on point are the bankruptcy court decision in *In

re Chris-Don, Inc. (Chris-Don I)*, 308 B.R. 214 (Bankr. D.N.J. 2004) and the district court

decision reversing it in *In re Chris-Don, Inc. (Chris-Don II)*, 367 F. Supp. 2d 696 (D.N.J. 2005).

In *Chris-Don I*, the bankruptcy court determined that Revised Article 9 of the UCC

overrides restrictions on pledging collateral such that the secured creditor had a valid first

priority lien on the debtor's liquor license and was entitled to receive the proceeds from its sale.

308 B.R. at 215. There, the debtor's liquor license was sold by the Chapter 7 trustee and the

proceeds held pending a determination of the validity of liens attaching to the proceeds. *Id.* at

216. The trustee filed an adversary complaint seeking a determination of the extent, validity and

priority of the liens attaching to the proceeds from the sale. *Id.* Three parties asserted liens to

the proceeds. *Id.* The secured creditor's lien stemmed from the debtor's grant of a security

---

[6] In *In re Application of Walter O Cheskey*, the FCC determined that allowing a security interest in the proceeds of the sale of a license does not violate Commission policy. 9 F.C.C.R. at 987. The FCC observed that the Commission's policy against a licensee giving a security interest in a license was grounded in the Commission's statutory mandate to approve the qualifications of every applicant for a license. *See id.* The FCC reasoned that if a security interest holder were to foreclose on the collateral license, the license could transfer hands without the prior approval of the Commission. *See id.* In contrast, the FCC found that giving a security interest in the *proceeds* of the license's sale did not raise the same concerns because the creditor has no rights over the license itself and cannot take any action under its security interest until there has been a transfer yielding proceeds. *See id.*

interest in its business assets, including general intangibles, which the secured creditor perfected. *See id.* The New Jersey Division of Taxation and the State of New Jersey Department of Labor also asserted claims on the proceeds based on respective judgments obtained against the debtor which were docketed after the secured creditor perfected its lien. *See id.* The trustee, the secured creditor, and the State filed cross-motions for summary judgment. *Id.* The secured creditor asserted that it had a first priority security interest in the proceeds and was therefore entitled to the sale funds. *Id.* The State asserted, and the trustee agreed, that its liens were the only valid liens since state law precludes a licensee from granting a consensual security interest in a liquor license to a third party. *Id.*

The bankruptcy court first addressed whether the 2001 revisions to Article 9 of the UCC negated the anti-alienation provisions of the New Jersey ABC Act. The court noted that the revisions were enacted to include additional collateral, thereby increasing a debtor's options in procuring loans. *Id.* at 218. The bankruptcy court found that the statutes were not in conflict because N.J.S.A. § 12A:9-408(e) specifically provided that Revised Article 9 prevailed over inconsistent law. *See Chris-Don I,* 308 B.R. at 219. Further, the bankruptcy court found that the legislature's repeal of N.J.S.A. § 33:1-26 was specific, not implied, because 9–408(e) is a specific override whose enumerated exclusions, structured settlements and Workers Compensation Agreements, did not include the ABC Act. *See id.* Therefore, the court found that the plain language of the statute provided that the anti-alienation provisions of N.J.S.A. § 33:1–26 were overridden by N.J.S.A. § 12A:9–408. *Chris-Don I,* 308 B.R.at 219. The court also found that the comments 7 & 8 to N.J.S.A. § 12A:9–408 further reflected the legislature's intent to provide debtors more options in using licenses as collateral for loans. *See Chris-Don I,* 308 B.R. at 219-20. For those reasons, the court agreed with the secured creditor that the UCC

amendments distinguished that case from prior cases which held that a private creditor could not have a security interest in a debtor's liquor license and negated those provisions of N.J.S.A. § 33:1–26 that restrict the assignment of a security interest in a liquor license. *See Chris-Don I*, 308 B.R. at 220.

The court added that such a result would not interfere with the State's control over liquor licenses because, as the secured creditor conceded, it could not foreclose on the liquor license or compel its sale, and it was limited to asserting a lien on the proceeds of the sale if and when the liquor license was sold. *See id.* at 220-21 (citing N.J.S.A. § 12A:9–408(d)(6)).

Next, the court addressed whether the secured creditor had a security interest in the debtor's liquor license and, if so, whether that lien attached to the proceeds from the sale of the license. First, the court rejected the State's argument that a liquor license is not property of the licensee under statutory and case law, and therefore is not a general intangible, for the reasons it previously discussed. *See Chris-Don I*, 308 B.R. at 221. Therefore, the court found that the license was property of the debtor and a general intangible within the scope of the UCC. *Id.* The court observed that because the adoption of Revised Article 9 supersedes the ABC Act language that a liquor license is not property, cases in other jurisdictions holding that a liquor license is a general intangible were applicable. *See id.* (citing *In re O'Neill's Shannon Village*, 750 F.2d 679, 682–83 (8th Cir. 1984), *In re Genuario*, 109 B.R. 550, 552-53 (Bankr. D.R.I. 1989)). Thus, the court concluded that the license was property and the secured creditor's security interest in general intangibles included a valid security interest in the license. *Chris-Don I*, 308 B.R. at 221. The court continued to find that the security interest extended to the proceeds from the sale of the liquor license since the security agreement provided that the collateral securing the loan included the proceeds of the collateral. *Id.* The court found that since the secured creditor's lien

was first in time and exceeded the purchase price of the liquor license, no funds remained from the sale of the license to satisfy the State's claims even though the court found that all three creditors asserted valid liens on the sale proceeds. *See id.* Therefore, the court denied the trustee's motion for summary judgment against the secured creditor, granted the secured creditor's motion for summary judgment, and denied the State's motion for summary judgment. *Id.*

Almost exactly one year later, the district court in *Chris-Don II* reversed the bankruptcy court's order. 367 F. Supp. 2d at 697. The court found that the relevant question was whether a liquor license is a "general intangible" subject to N.J.S.A. § 12A:9–408(c) such that N.J.S.A. § 33:1–26's impairment of the creation of a security interest in the license would be ineffective under Revised Article 9. *Id.* at 699. The court found that based on the definition of "general intangible" under New Jersey law, N.J.S.A. § 12A:9-102(a)(42), a liquor license must first be found to be personal property for it to be a general intangible. *See id.* The court continued that because Revised Article 9 did not define "personal property," whether the debtor had a property interest in the liquor license and the nature of that interest was determined by "other law," citing N.J.S.A. § 12A:9-408 cmt 3. The District Court determined that the "other law" in this case was N.J.S.A. § 33:1–26. *See id.* at 699-700. The court noted that the contexts in which courts have held that a liquor license may be considered property, for purposes of federal due process analysis and for purposes of a federal tax lien, were specific and limited, citing *Sea Girt*, 625 F. Supp. at 1488 n.4 and *Boss Co.*, 40 N.J. at 387. *See Chris-Don II*, 367 F. Supp. 2d at 700.

The court observed that the legislature enacted Article 9, which by its own terms applies to personal property as defined by other law, against a backdrop of New Jersey law that provides that a liquor license is not property except in regard to state and federal tax liens and federal due

process requirements. *Id.* at 700-01. The court here noted that N.J.S.A. § 12A:9–408(c) renders ineffective statutes that restrict security interests in general intangibles. *Chris-Don II*, 367 F. Supp. 2d at 701. N.J.S.A. § 12A:9–102(a)(42) defines "general intangible" to include personal property. *Chris-Don II*, 367 F. Supp. 2d at 701. The court observed, however, that UCC Article 9 does not define "personal property." *Id.* The court found that in the case of liquor licenses issued in New Jersey, that definition is supplied by the ABC Law which "expressly and emphatically" defines such licenses as "not property." *Id.* Therefore, the court held that a liquor license remains unavailable as collateral for a security interest under New Jersey's current statutory scheme. *Id.* In so holding, the court found that N.J.S.A. § 12A:9–408(c) is not inconsistent with N.J.S.A. § 33:1–26 and that N.J.S.A. § 12A:9–408(c) does not override or repeal N.J.S.A. § 33:1–26. *Chris-Don II*, 367 F. Supp. 2d at 701.

In discussing the parties' competing public policy arguments, the court observed:

> We will not rely on such policy concerns to contradict the clear direction given by the legislature on this issue. The legislature may determine in the future that policy considerations support allowing third parties to hold security interests in liquor licenses. We merely hold that the legislature did not implement such a policy shift when it enacted the 2001 revisions to U.C.C. Article 9 in New Jersey.

*Id.* at 701-02.

Although "there is no such thing as 'the law of the district'" in the Third Circuit, *see Threadgill v. Armstrong World Indus., Inc.*, 928 F.2d 1366, 1371 (3d Cir. 1991); *In re Brown*, 244 B.R. 62, 64 (Bankr. D.N.J. 2000), the Court finds the analysis in *Chris-Don II* persuasive. As noted by the district court, the relevant question is whether the Liquor License is a "general intangible" subject to N.J.S.A. § 12A:9–408(c) such that N.J.S.A. § 33:1–26's prohibition on the creation of a security interest in the Liquor License would be ineffective. *See Chris-Don II*, 367 F. Supp. 2d at 699. Under New Jersey law, the Liquor License must first be found to be

"personal property" for it to be a general intangible. *See* N.J.S.A § 12A:9-102(42). N.J.S.A. § 33:1–26 establishes unequivocally that the Liquor License and the rights thereunder are not "property" and thus not "personal property" that can be subject to a security interest. Therefore, this Court holds that under New Jersey's current statutory scheme, a private creditor cannot obtain a security interest in any right associated with a liquor license, including the proceeds of its sale. *See Chris-Don II*, 367 F. Supp. 2d at 701.

Like the court in *Chris-Don II*, this Court does not rely on the parties' competing public policy arguments but instead determines that the clear direction from the legislature on this issue, as the ABC Act is presently written, does not allow third parties to hold security interests in liquor licenses or the proceeds from their sale. *See id.* at 701-02. Therefore, because RELM's lien does not attach to the proceeds of the sale Debtor's Liquor License, RELM's claim shall be treated as a general unsecured claim in the amount of $378,779.59.

CONCLUSION

For the foregoing reasons, the Trustee's Motion to Reclassify Alleged Secured Claim of RELM, LLC to a general unsecured claim is GRANTED.

An order shall be submitted in accordance with this Opinion.

_____
ROSEMARY GAMBARDELLA
UNITED STATES BANKRUPTCY JUDGE

DATED: November 7, 2014